



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

$150

|  |  |
|---|---|
| GENE ROMERO<br>600 East Eighth Street<br>Kansas City, Missouri 64106, | : |
| | : |
| | : |
| JAMES T. BEVER<br>1206 North Main Street<br>Hutchinson, Kansas 67501, | : |
| | : |
| ROGER T. BOYD<br>581 Alford Road<br>Ellensburg, Washington 98926, | : |
| | : |
| RICHARD A. CARRIER<br>35325 Farm Market 1736<br>Hempstead, Texas 77445, | : |
| | : |
| PAUL R. COBB<br>10895 S.W. 38th Drive<br>Davie, Florida 33328, | : |
| | : |
| CRAIG K. CREASE<br>12013 West 74th Street<br>Shawnee, Kansas 66216, | : |
| | : |
| SYLVIA CREWS-KELLY<br>2623 Robertson Trail<br>Lutz, Florida 33549, | : |
| | : |
| DWIGHT F. ENGLISH<br>1520 Smith Drive<br>Lebanon, Tennessee 37087, | : |
| | : |
| DOUGLAS F. GAFNER<br>3160 South Pond Court<br>Oshkosh, Wisconsin 54904, | : |
| | : |
| RONALD W. HARPER<br>1354 Wrightsboro Road, N.W.<br>Thomson, Georgia 30824, | : |

Civil Action No. 01-cv-6764

**COMPLAINT - CLASS ACTION**

FILED

DEC 2 0 2001

MICHAEL E. KUNZ, Clerk

By _____ Dep. Clerk

MICHAEL P. KEARNEY                    :
14228 South Arapahoe Drive
Olathe, Kansas 66062,
                                      :

THOMAS A. KEARNEY                     :
8548 West Fortieth Street
Lyons, Illinois 60534,
                                      :

LARRY H. LANKFORD, Sr.                :
925 Mallock Road
White Lake, Michigan 48386,
                                      :

DAVID C. LAWSON                       :
Route 2
St. Matthews, South Carolina 29135,
                                      :

NATHAN R. LITTLEJOHN II               :
13294 West 112th Terrace
Overland Park, Kansas 66210,
                                      :

REBECCA R. MASLOWSKI                  :
4260 Admire Road
Dover, Pennsylvania 17315,
                                      :

CRAIG A. MILLISON                     :
3412 East Market Street
York, Pennsylvania 17402,
                                      :

JAMES E. MOOREHEAD                    :
1875 Cassingham Circle
Ocoee, Florida 34761,
                                      :

EDWARD T. MURRAY III                  :
1020 Olde Hickory Road
Lancaster, Pennsylvania 17601,
                                      :

CAROLYN L. PENZO                      :
4825 Atlanta Highway
Alpharetta, Georgia 30004,
                                      :

CHRISTOPHER L. PERKINS                :
156 Mount Carmel Road
Newnan, Georgia 30263,
                                      :

RICHARD E. PETERSON                        :   .
581 Graystone Place                        :
Evans, Georgia  30809,                     :
                                           :
JAMES P. PILCHAK                           :
10315 Michael Street                       :
Taylor, Michigan  48180,                   :
                                           :
PAULA REINERIO                             :
1102 Zblewski Drive                        :
Plover, Wisconsin  54467,                  :
                                           :
PAULA M. SCHOTT                            :
1084 Woodlyn Farm Way                      :
Lancaster, Pennsylvania   17601,           :
                                           :
DONALD L. TRGOVICH                         :
10760 E. Placita Los Reyes                 :
Tucson, Arizona  85748,                    :
                                           :
RICHARD S. WANDNER                         :
10434 N.W. Sixth Court                     :
Coral Springs, Florida  33071,            :
                                           :
TIMOTHY WEISMAN                            :
3703 75th Drive East                       :
Sarasota, Florida  34243,                  :
                                           :
ERNIE P. WENDT                             :                                   :
32 Riverview Drive                         :
Hadley, New York  12835,                   :
                                           :
ANTHONY T. WIKTOR                          :
56 Cobbs Lake                              :
Lake Ariel, Pennsylvania  18436,           :
                                           :
JOHN W. WITTMAN                            :
1491 Radcliff Lane                         :
Aurora, Illinois 60504, and                :
                                           :
RALPH J. WOLVERTON                         :
104 Cedar Dale Drive                       :
Papillon, Nebraska 68046,                  :
                                           :
            *Plaintiffs*,                  :

v.                                                    :
                                                      :
THE ALLSTATE CORPORATION,                             :
Allstate Plaza                                        :
3075 Sanders Road                                     :
Northbrook, Illinois  60062,                          :
                                                      :
ALLSTATE INSURANCE COMPANY,                           :
Allstate Plaza                                        :
3075 Sanders Road                                     :
Northbrook, Illinois  60062,                          :
                                                      :
AGENTS PENSION PLAN                                   :
2775 Sanders Road, Suite E5                           :
Northbrook, Illinois  60062,                          :
                                                      :
ADMINISTRATIVE COMMITTEE,                             :
in its capacity as administrator of the              :
Agents Pension Plan,                                  :
2775 Sanders Road, Suite E5                           :
Northbrook, Illinois  60062,                          :
                                                      :
                    *Defendants.*                     :
_____:

# I.
## INTRODUCTION

1.      This action arises out of the unlawful efforts of Allstate Insurance Company and its parent, The Allstate Corporation (referred to collectively herein as "Allstate"), to pull the rug out from under upwards of 15,000 insurance sales agents – comprising its entire work force of "captive" employee agents – who were employed by Allstate during the 1990's.  In order to induce these agents to devote their careers to selling insurance and financial services products on behalf of the company, Allstate made them participants in the Agents Pension Plan (the "Pension Plan") after one year of service.  Agents became fully vested after five years.  One of the most attractive features of the Pension Plan was its early retirement provisions, under which any agent having at least twenty

years of "continuous service" with Allstate could receive early retirement benefits at age 55 – the amount of which were enhanced or "beefed-up" in order to create a further incentive for early retirement.

2.      Allstate, however, decided to change the rules in the middle of the game. First, in November 1991, it purported to amend the Pension Plan retroactively to phase out the "beef-up" over the next eight years. Then, in a subsequent series of amendments enacted in December 1994, Allstate "readopted" the November 1991 amendments (which appear to have been procedurally defective) and attempted to amend the Pension Plan further to exclude a particular form of "service" – that is, service in a capacity Allstate denominated as "exclusive agent" – from being counted as "service" for purposes of accruing additional retirement benefits and determining eligibility for early retirement benefits.

3.      Over the course of the six years following adoption of the December 1994 amendments, Allstate instituted a series of measures under which almost all of its existing employee agents were pressured or coerced into terminating their employment contracts and becoming so-called "exclusive agents." Those agents who "converted" to such status performed the exact same jobs that they had always performed as employee agents and were, in reality, subject to no less control than they had been subject to prior to their conversion. But by characterizing them as so-called "independent contractors" and by amending the Pension Plan to deny them credit for the service they gave Allstate in that capacity, Allstate was able, in effect, to eliminate the early retirement provisions of the Pension Plan in their entirety.

4.      In phasing out the "beef-up" and altering eligibility requirements for obtaining early retirement benefits, Allstate violated the Employee Retirement Income Security Act of 1974, as

-2-

amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and, in particular, section 204(g)(2) of the statute, 29 U.S.C. § 1054(g)(2), which prohibits any plan amendment that has the effect of "cutting back" on early retirement benefits or subsidies. The 32 plaintiffs named herein – all of whom are former employee agents of Allstate who either "converted" to "exclusive agent" status or retired from the service of the company – have brought this suit on behalf of themselves and thousands of similarly-situated agents to vindicate their rights under ERISA.

## II.
## JURISDICTION AND VENUE

5.      This is a civil action over which original jurisdiction is vested in this Court by 28 U.S.C. §§ 1331 and 1343(a). This Court also is vested with exclusive subject matter jurisdiction over plaintiffs' claims pursuant to 29 U.S.C. § 1132(e)(1) and (f).

6.      This Court has personal jurisdiction over defendants pursuant to 29 U.S.C. § 1132(e)(2) as each of the defendants may be found in the Commonwealth of Pennsylvania and has the requisite contacts with the United States and the Commonwealth of Pennsylvania.

7.      Venue is appropriate in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) as this action is brought in a judicial district in which a defendant resides or may be found at the time the action is commenced. Further, many of the plaintiffs and class members reside in the Commonwealth of Pennsylvania, including counties comprising the Eastern District of Pennsylvania.

## III.
## THE PARTIES

**A.      Plaintiffs**

**General allegations as to all plaintiffs**

8.      Each of the plaintiffs in this action was employed by Allstate as an insurance agent pursuant to a standardized R830 Allstate Agent Compensation Agreement ("R830 contract") and/or a R1500 Allstate Employment Agreement ("R1500 contract") on or before December 1990.

9.      Upon termination of his or her employment contract, each of the plaintiffs named herein either retired from the service of Allstate (collectively, the "retired agent plaintiffs") or continued to provide compensated service to Allstate as a so-called "exclusive agent independent contractor" under a variant of the company's standardized R3001 Neighborhood Exclusive Agency Agreement ("R3001 contract").

10.      At all pertinent times, each of the plaintiffs named herein was an "employee" of Allstate within the meaning of ERISA (29 U.S.C. § 1002(6)) and a vested "participant" in and/or "beneficiary" of the Pension Plan within the meaning of ERISA (29 U.S.C. § 1002(7) and (8)).

11.      As of December 31, 1991, each of the plaintiffs named herein was under the age of fifty-five.

12.      Many former employee agents of Allstate, including the plaintiffs named herein, have pursued all administrative remedies available to them under the Pension Plan by writing to the Administrator protesting and appealing the decision of Allstate to deny them the benefits to which they are and had been entitled under the Pension Plan. These ongoing efforts have been unsuccessful and any other efforts would be futile in view of the fact that in the case of each employee agent, the

decision to deny pension benefits was a policy decision authorized at the highest level of Allstate's management and was the product of careful planning and deliberation.

**Specific allegations as to individual plaintiffs**

13.     Plaintiff Gene R. Romero is a resident of the State of Missouri who was born on September 28, 1948, and who, as of May 31, 2000, was employed by Allstate at a sales office located in Overland Park, Kansas. Plaintiff Romero had at least thirteen (13) years of continuous service with Allstate as a "captive" insurance agent before he retired from the company's service as a result of its "Preparing for the Future" Group Reorganization Program ("Mass Termination Program").

14.     Plaintiff James T. Bever is a resident of the State of Kansas who was born on April 10, 1959, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Hutchinson, Kansas. Plaintiff Bever has at least twenty (20) years of continuous service with Allstate. Plaintiff Bever remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

15.     Plaintiff Roger T. Boyd is a resident of the State of Washington who was born on February 19, 1945, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Ellensburg, Washington. Plaintiff Boyd had at least twelve (12) years of continuous service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

16.     Plaintiff Richard A. Carrier is a resident of the State of Texas who was born on March 28, 1958, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Woodforest, Texas. Plaintiff Carrier has at least twenty (20) years of continuous service with

Allstate. Plaintiff Carrier remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

17. Plaintiff Paul R. Cobb is a resident of the State of Florida who was born on August 16, 1947, and who, as of May 31, 2000, was employed by Allstate at a sales office located in Pembroke Pines, Florida. Plaintiff Cobb has at least sixteen (16) years of continuous service with Allstate. Plaintiff Cobb remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

18. Plaintiff Craig K. Crease is a resident of the State of Kansas who was born on February 16, 1952, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Shawnee, Kansas. Plaintiff Crease has at least eighteen (18) years of continuous service with Allstate. Plaintiff Crease remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

19. Plaintiff Sylvia Crews-Kelly is a resident of the State of Florida who was born on June 14, 1946, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Tampa, Florida. Plaintiff Crews-Kelly had more than nineteen (19) years continuous of service with Allstate before she retired from the company's service as a result of the Mass Termination Program.

20. Plaintiff Dwight F. English is a resident of the State of Tennessee who was born on May 8, 1947, and who, as of April 30, 2000, was employed by Allstate at a sales office located in Lebanon, Tennessee. Plaintiff English had more than eleven (11) years of continuous service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

21. Plaintiff Douglas F. Gafner is a resident of the State of Wisconsin who was born on August 12, 1943, and who, as of June 30, 2000, was employed by Allstate at a sales office located

-6-

in Oshkosh, Wisconsin. Plaintiff Gafner had more than thirty (30) years of service with Allstate, including more than nineteen (19) years of continuous service as an agent, before he retired from the company's service as a result of the Mass Termination Program.

22.     Plaintiff Ronald W. Harper is a resident of the State of Georgia who was born on September 9, 1951, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Thomson, Georgia.  Plaintiff Harper has more than eleven (11) years of continuous service with Allstate.  Plaintiff Harper remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

23.     Plaintiff Michael P. Kearney is a resident of the State of Kansas who was born on April 11, 1955, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Olathe, Kansas. Plaintiff M. Kearney has more than seventeen (17) years of continuous service with Allstate.  Plaintiff M. Kearney remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

24.     Plaintiff Thomas A. Kearney is a resident of the State of Illinois who was born on December 13, 1950, and who, as of June 30, 2000, was employed by Allstate at a company-owned sales office located in Chicago, Illinois.  Plaintiff T. Kearney had more than twenty-one (21) years of continuous service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

25.     Plaintiff Larry H. Lankford Sr. is a resident of the State of Michigan who was born on October 8, 1946, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Wyandotte, Michigan.  Plaintiff Lankford had more than twenty-eight (28) years of continuous

service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

26.    Plaintiff David C. Lawson is a resident of the State of South Carolina who was born on June 20, 1943, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Orangeburg, South Carolina.  Plaintiff Lawson has more than fifteen (15) years of continuous service with Allstate.  Plaintiff Lawson remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

27.    Plaintiff Nathan R. Littlejohn, II is a resident of the State of Kansas who was born on November 30, 1948, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Shawnee, Kansas.  Plaintiff Littlejohn has more than ten (10) years of continuous service with Allstate.  Plaintiff Littlejohn remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

28.    Plaintiff Rebecca R. Maslowski is a resident of the Commonwealth of Pennsylvania who was born on April 17, 1950, and who, as of June 30, 2000, was employed by Allstate at a sales office located in York, Pennsylvania.  Plaintiff Maslowski has more than seventeen (17) years of continuous service with Allstate.  Plaintiff Maslowski remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

29.    Plaintiff Craig A. Millison is a resident of the Commonwealth of Pennsylvania who was born on November 14, 1947, and who, as of June 30, 2000, was employed by Allstate at a sales office located in York, Pennsylvania.  Plaintiff Millison has more than fourteen (14) years of continuous service with Allstate.  Plaintiff Millison remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

30. Plaintiff James E. Moorehead is a resident of the State of Florida who was born on October 6, 1946 , and who, as of April 30, 2000, was employed by Allstate at a sales office located in Orlando, Florida. Plaintiff Moorehead had more than sixteen (16) years of continuous service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

31. Plaintiff Edward T. Murray III is a resident of the Commonwealth of Pennsylvania who was born on August 3, 1956, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Columbia, Pennsylvania. Plaintiff Murray has more than sixteen years (16) years of continuous service with Allstate. Plaintiff Murray remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

32. Plaintiff Carolyn Penzo is a resident of the State of Georgia who was born on September 25, 1947, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Alpharetta, Georgia. Plaintiff Penzo has more than thirteen (13) years of continuous service with Allstate. Plaintiff Penzo remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

33. Plaintiff Christopher L. Perkins is a resident of the State of Georgia who was born on March 3, 1959, and who, as of May 30, 2000, was employed by Allstate at a sales office located in Newnan, Georgia. Plaintiff Perkins had more than sixteen (16) years of continuous service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

34. Plaintiff Richard E. Peterson is a resident of the State of Georgia who was born on April 15, 1949, and who, as of March 31, 2000, was employed by Allstate at a sales office located

in Martinez, Georgia.  Plaintiff Peterson has more than seventeen (17) years of continuous service with Allstate.  Plaintiff Peterson remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

35.    Plaintiff James P. Pilchak is a resident of the State of Michigan who was born on December 17, 1945, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Taylor, Michigan.  Plaintiff Pilchak had more than twenty-eight (28) years of continuous service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

36.    Plaintiff Paula Reinerio is a resident of the State of Wisconsin who was born on October 29, 1954, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Wisconsin Rapids, Wisconsin.  Plaintiff Reinerio had more than ten (10) years of continuous service with Allstate before she retired from the company's service as a result of the Mass Termination Program.

37.    Plaintiff Paula M. Schott is a resident of the Commonwealth of Pennsylvania who was born on December 9, 1942, and who, as of May 30, 2000, was employed by Allstate at a sales office located in Lancaster, Pennsylvania.  Plaintiff Schott had at least eighteen (18) years of continuous service with Allstate before she retired from the company's service as a result of the Mass Termination Program.

38.    Plaintiff Donald L. Trgovich is a resident of the State of Arizona who was born on December 15, 1943, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Tucson, Arizona.  Plaintiff Trgovich had more than seventeen (17) years of continuous service

-10-

with Allstate before he retired from the company's service as a result of the Mass Termination Program.

39.     Plaintiff Richard S. Wandner is a resident of the State of Florida who was born on May 14, 1948, and who, as of March 31, 2000, was employed by Allstate at a sales office located in North Miami Beach, Florida.    Plaintiff Wandner had more than seventeen (17) years of continuous service with Allstate before he retired from the company's service as a result of the Mass Termination Program.

40.     Plaintiff Ernest P. Wendt is a resident of the State of New York who was born on December 4, 1936, and who, as of December 31, 1999, was employed by Allstate at a neighborhood sales office located in Sleepy Hollow, New York.    Plaintiff Wendt had more than twenty-seven (27) years of continuous service with Allstate before he retired from the company's service in December 1998.

41.     Plaintiff Timothy Weisman is a resident of the State of Florida who was born on February 13, 1960, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Bradenton, Florida.    Plaintiff Weisman has more than twelve (12) years of continuous service with Allstate.    Plaintiff Weisman remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

42.     Plaintiff Anthony T. Wiktor is a resident of the Commonwealth of Pennsylvania who was born on October 24, 1957, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Hamlin, Pennsylvania.    Plaintiff Wiktor has more than seventeen (17) years of continuous service with Allstate.    Plaintiff Wiktor remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

-11-

43.     Plaintiff John W. Wittman is a resident of the State of Illinois who was born on December 2, 1950, and who, as of April 30, 2000, was employed by Allstate at a sales office located in Downers Grove, Illinois. Plaintiff Wittman has more than twenty-seven (27) years of continuous service with Allstate. Plaintiff Wittman remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

44.     Plaintiff Ralph J. Wolverton is a resident of the State of Nebraska who was born on February 4, 1954, and who, as of June 30, 2000, was employed by Allstate at a sales office located in Papillion, Nebraska. Plaintiff Wolverton has more than eighteen (18) years of continuous service with Allstate. Plaintiff Wolverton remains in the service of the company under the Allstate R3001S Exclusive Agency Agreement.

**B.     Defendants**

45.     Defendant The Allstate Corporation is a publicly-traded Delaware corporation, having its principal place of business in Northbrook, Illinois. The Allstate Corporation conducts business throughout the United States and abroad through its various subsidiaries and affiliates. The Allstate Corporation is an "employer" within the meaning of ERISA (29 U.S.C. § 1002(5)).

46.     Defendant Allstate Insurance Company is an Illinois corporation, having its principal place of business in Northbrook, Illinois. Allstate Insurance Company conducts business throughout the United States and abroad, whether through an affiliate or subsidiary or otherwise. Allstate Insurance Company is a wholly-owned subsidiary of The Allstate Corporation and/or one or more of its subsidiaries and affiliates. The Allstate Insurance Company is an "employer" and a "plan sponsor" within the meaning of ERISA (29 U.S.C. § 1002(5) and (16)).

47. At all times material hereto, defendants Allstate Insurance Company and The Allstate Corporation constituted a "single employer" of the plaintiffs and other similarly situated persons. Among other things, the operations of Allstate Insurance Company and The Allstate Corporation are interrelated and they share common directors, officers and personnel. The Allstate Corporation was directly and integrally involved in, and exercised *de facto* control over, among other things, financing decisions, funding and personnel, culminating in the decisions at issue in this case. Additionally, the officers and directors of The Allstate Corporation were actively involved in decisionmaking concerning whether plaintiffs and other similarly-situated individuals would be eligible to participate in or receive retirement benefits from the Pension Plan.

48. Defendant Agents Pension Plan is an "employee benefit plan" within the meaning of ERISA (29 U.S.C. § 1002(3)) and a "defined benefit plan" (29 U.S.C. § 1002(35)), sponsored, established or maintained by Allstate pursuant to a written instrument. The Pension Plan which, prior to 1978, was known as the Agents Supplementary Pension Plan of Allstate Insurance Company, is a "qualified" plan under section 401(a) of the Internal Revenue Code, 26 U.S.C. § 401(a), that is covered under Title I of ERISA.

49. Defendant Administrative Committee of the Agents Pension Plan (the "Administrator") exercises discretionary authority or control over the management of the Pension Plan and has discretionary authority or responsibility in the administration of the Pension Plan. The Administrator is also a named administrator and fiduciary of the Pension Plan for administrative purposes under section 402(a)(2) of ERISA (29 U.S.C. § 1102(a)(2)). The Pension Plan's governing documents provide that the Administrator shall administer the Pension Plan and shall have the power to construe and interpret the Plan's terms.

-13-

## IV.
## FACTUAL ALLEGATIONS

50.    Prior to 1990, Allstate had a workforce comprised of more than 15,000 "captive" insurance sales agents, nearly all of whom had been hired as "employee agents." As employees of Allstate, these agents were entitled to a "superior" package of employee benefits, which the company touted as the best the industry had to offer. These benefits included, among others, retirement benefits under the Pension Plan which, according to Allstate, would provide employee agents with a "guaranteed income" and long-term "financial security."

51.    Participation in the Pension Plan was mandatory and automatic on the part of all full-time employee agents. Thus, upon vesting, any employee agent who retired from the service of Allstate on or after age 63 was entitled to receive a "normal" retirement benefit based on the annual eligible compensation earned by the agent. However, one of the most attractive features of the Pension Plan was the "early retirement" benefit available to agents who retire before age 63 with at least 20 years of continuous "credited service" with the company. The Pension Plan expressly provided that "[a]ll service" with Allstate "shall count as Credited Service" for purposes of accruing retirement benefits, including early retirement.

52.    In addition, any agent with at least 20 years of continuous "credited service" who retired in accordance with Allstate's early retirement policy was entitled to an additional financial incentive in the form of a "beefed-up" early retirement benefit.[1] By virtue of this so-called "special

---

[1]    Allstate's one-sentence "voluntary early retirement policy" provides as follows:

An employee who has 20 or more years of continuous service may request early retirement at any time after reaching age 55.

increase in compensation," the early retirement benefit was increased by including the amount of compensation that the agent would have earned (based on the amount earned in the calendar year preceding retirement) if he or she had worked until age 63. Thus, for instance, if an agent with twenty years of continuous "credited service" retired at age 55, he or she would be eligible for a "beefed-up" early retirement benefit which assumed that he or she continued to work for the next eight years – even though the agent had, in fact, retired and thus would have no earnings from Allstate during those future years.

53.    By 1990, Allstate's management apparently had concluded that the "superior" package of benefits it was providing to employee agents had become too costly to maintain. Accordingly, in an effort to phase-out the sizeable expenses associated with providing such benefits, Allstate introduced the Neighborhood Exclusive Agency ("NEA") program, in part, to further its goal of ridding itself of much of the cost of maintaining a sales force comprised of more than 15,000 employees. Under the NEA program, which followed on the heels of the Neighborhood Office Agent ("NOA") program introduced just six years earlier, Allstate sought to transfer yet more expenses onto its "captive" agent sales force. These efforts included, among other things, hiring virtually all of its new agents under a variant of the standardized R3001 contract which denominated them as "independent contractors" while, at the same time pressuring its then existing employee agents to relinquish their employee benefits by "converting" to the R3001 contract.

54.    Approximately a year later, Allstate sought to amend the Pension Plan in November 1991 by changing the definition of the term "Agent," which prior to that time had been defined as "any employee who either is classified as an Agent under the Company's personnel policy or whose principal compensation is paid in the form of commissions pursuant to an agreement with Allstate."

-15-

Under the purported amendments, however, Allstate deleted the reference to any "employee . . . whose principal compensation is paid in form of commissions pursuant to an agreement with his Employer," and limited the term "Agent" only to an "employee who is classified as an Agent under the Company's human resources policy." In denominating signatories to the R3001 contract as "exclusive agent independent contractors" and in drastically narrowing the number of "Agents" covered by the Pension Plan, Allstate sought to minimize its obligation to make further contributions to the Plan.

55.    At the same time that it was using the NEA program as a means to reduce expenses associated with its early and normal retirement benefits program, Allstate also cut back those benefits by phasing out the "beef-up." To achieve this result, Allstate purported to amend the Pension Plan in November 1991 (retroactive to January 1, 1989) by adding a "sunset" provision reducing "beefed-up" benefits for those employee agents who obtained eligibility on or after January 1, 1991, and eliminating it entirely for employee agents who become eligible for early retirement after December 31, 1999. The Pension Plan thus purportedly was amended so that the "beef-up" would continue until the earlier of the date the agent reaches age 63 or December 31, 1999. The following chart illustrates the manner in which the "beef-up" was to be phased out:

| Year of Retirement (assuming retirement at year end) | Maximum Number Years of "Beef Up" |
|---|---|
| 1990 | Up to 8 years |
| 1991 | Up to 8 years |
| 1992 | Up to 7 years |
| 1993 | Up to 6 years |
| 1994 | Up to 5 years |
| 1995 | Up to 4 years |
| 1996 | Up to 3 years |
| 1997 | Up to 2 years |

-16-

|             |        |
|-------------|--------|
| 1998        | 1 year |
| 1999 and later | None |

In other words, before the amendments purportedly adopted in November 1991, if an employee agent with twenty years or more of continuous service retired at the age of 55, he or she would have been eligible to receive the full eight-year "beef up" – that is, until age 63. However, under the November 1991 amendments, an eligible employee agent who retired at age 55 on December 31, 1996, would be eligible to receive only three years of "beefed up" credit (*i.e.*, through December 31, 1999), while an employee agent who retired at age 55 two years later would be eligible for only one additional credited year of service and any employee agent who took early retirement on or after December 31, 1999, received no "beef-up."

56.    Allstate also purported to alter the Pension Plan's definition of the term "Credited Service" to provide that only "an Agent's employment [by Allstate] as an employee shall count as Credited Service."

57.    In a series of amendments that followed, all of which purported to be effective as of December 30, 1994 (the "December 1994 amendments"), that is, some three years after the November 1991 amendments were adopted, Allstate attempted once again to amend the Pension Plan, including the provisions pertaining to early retirement. In so doing, the Pension Committee not only "readopted" the November 1991 amendments (which were procedurally defective because Allstate failed to comply with the requirements of section 204(h) of ERISA, 29 U.S.C. § 1054(h)) retroactively to January 1, 1989, it added several new amendments that were intended to make it more difficult for agents to earn additional retirement benefits, including attaining eligibility for early retirement.

-17-

58.     One of these amendments took the form of a new "Appendix A" to the Pension Plan providing that, under Allstate's "early retirement policy," any "request of an employee for Voluntary Early Retirement will be denied if," upon termination of an agent's employment contract with Allstate, he or she enters into an agreement to perform duties or services that are "substantially similar" to those performed as an employee.

59.     The manifest purpose of the December 1994 amendments was to retroactively deny credit to employee agents who had converted to the R3001 contract for the service provided to Allstate under that contract and, thereby, to prevent them from becoming eligible for additional retirement benefits, including early retirement. As set forth in ¶ 54 above, before the December 1994 amendments, the Pension Plan obligated Allstate to count "all service" with the company – whether as an employee agent or as a so-called "Exclusive Agent" – as "credited service" for purposes of accruing retirement benefits.

60.     Furthermore, in a case brought by a former employee agent alleging that Allstate had wrongfully denied "beefed-up" early retirement benefits upon conversion to so-called "independent contractor" status under the R3001 contract, the company and plan administrator had taken the position (prior to the December 1994 amendments) that the agent remained "in the service" of Allstate and, hence, that his conversion to the R3001 contract did not constitute a "retirement" within the meaning of the Pension Plan.   As the United States District Court for the Middle District of Florida explained in adopting this interpretation:

> Allstate consistently has defined "retirement" for purposes of applying the Company's voluntary Early Retirement Policy to mean not only that the agent ceases to be an employee, *but that he or she also ceases providing any kind of compensated service to Allstate.* It was this interpretation that led Allstate . . . to take the position that ["employee agents"] who elected to

become [exclusive agents] had not "retired" and were not eligible for early retirement benefits under the Plan, i.e., *that they were still "in the service" of Allstate*.

*Scott v. Administrative Committee of the Allstate Agents Pension Plan*, 1995 U.S. Dist. LEXIS 20564 at *27 (M.D. Fla. Sept. 15, 1995) (emphasis added) (copy attached), *rev'd on other grounds*, 113 F.3d 1193 (11th Cir. 1997). The district court's interpretation finds support in a publication entitled "Benefits Bottom Line," wherein Allstate announced – under the caption "Exclusive Agents: Defining Retirement" – the justification for refusing to pay early retirement benefits to employee agents who converted to the R3001 contract:

> Conversion to Exclusive Agent status does not result in an Agent leaving the service of Allstate. *On the contrary, the Agent is continuing to provide the same service to Allstate*, and receiving income from the sale of Allstate Products. *An Agent's career with Allstate has not terminated merely by converting to the new program*, although the legal relationship between the parties has changed.

(Emphasis added). Similarly, in a letter dated July 5, 1990, Donald E. Viken, the Plan Administrator at the time, advised an employee agent as follows:

> Plan benefit payments are not available until an agent's active working career and income from selling Allstate products has ceased, and thus is no longer in the service of Allstate . . . An agent's active Allstate working career is not terminated by NEA status; it continues, although the legal relationship changes.

61.     Logically, if agents who converted to R3001 status under the NEA program remained "in the service" of Allstate and if, as the Pension Plan required, all "service" with Allstate was to be counted as "Credited Service," those agents could continue to accumulate service toward eligibility for early retirement benefits after the time of conversion. Accordingly, Allstate understood that it would not be able to achieve the cost savings that it had envisioned under the NEA program unless

-19-

it also amended the Pension Plan for the purpose of denying R3001 agents the ability to become eligible for additional retirement benefits, including early retirement.

62.    While Allstate and the Administrator have failed to treat agents who have converted to the R3001 contract as being "in the service" of the company under the Pension Plan at all times since the December 1994 amendments were adopted, those amendments initially affected only the small group of employee agents who had voluntarily "converted" to the NEA program. Indeed, despite intensive and repeated efforts by Allstate to persuade them to terminate their employment contracts and enter into the R3001 contract by hyping the supposed advantages of that program, only about 150 out of its 15,000 employee agents did so during the first three years that the program was in effect – that is between 1990 and 1993. During the next six years, however, that number grew to upwards of 7,000 as Allstate continued to hire new agents under the R3001 contract and resorted to extreme measures to pressure and coerce virtually its entire employee agent work force to either convert to the NEA program or leave the service of the company.

63.    The first such measure was adopted in January 1996 when Allstate announced that it was terminating the employment contracts of all 1,600 employee agents based in California as of April 30, 1996. Allstate forced these California agents to choose between executing an R3001 contract and losing their benefits as employees or severing their relationship with Allstate entirely in exchange for an "enhanced" severance payment. Faced with these unattractive alternatives, and in view of the substantial financial investments most of the California agents had made in their agencies while employed by Allstate, a large number of them effectively had no option but to enter into the R3001 contract so as to remain in the service of the company as so-called "exclusive agents."

-20-

64.     About two years after the mass termination of all of its employee agents in California, Allstate embarked on a nationwide effort designed to pressure, intimidate and coax its other employee agents to convert to the R3001 contract by, among other things:

- threatening to terminate their employment contracts;

- refusing to reimburse them for office expenses that had previously been paid for by Allstate;

- forcing many of them to accept reduced commissions and, thereby, to forego retirement and other benefits generated thereby;

- refusing to provide the updated computer technology that most R3001 agents received;

- threatening to relocate their agencies to an unsuitable or more distant site such as a warehouse or high-rise building without any signage;

- withholding the ministerial and administrative tasks that the company was contractually obligated to perform;

- threatening to allow a R3001 agent to open a competing office across or down the street;

- terminating certain employee agents as an "example" to others who were unwilling to convert to the R3001 contract;

- imposing harassing and burdensome requirements upon them, including requirements that their offices remain open on evenings and weekends, that they meet unrealistic production quotas, that they submit detailed reports and that that they attend mandatory training sessions; and

- making false and misleading statements about the financial benefits of the NEA program.

Using these tactics, Allstate was able to pressure about 2,000 more employee agents to convert to the R3001 contract between January 1998 and November 1999. By the same token, a large number

-21-

of agents took early retirement or simply left the company during that period rather than accepting the increasingly burdensome working conditions that were foisted upon them by Allstate.

65.     Apparently impatient with the pace at which the remaining employee agents were "voluntarily" surrendering their benefits by converting to so-called "independent contractor" status, Allstate decided to dictate that result through more coercive and efficient measures. To this end, Allstate announced in November 1999 that it was instituting a "group reorganization" under which the overwhelming majority of its 7,400 or so employee agents would have their employment contracts terminated by June 30, 2000, with certain variations ("Mass Termination Program"). These employee agents then would be permitted to remain with Allstate only if they signed a standardized, non-negotiable release and a variant of the R3001 contract, thereby becoming what Allstate termed an "exclusive agent independent contractor." This Mass Termination Program was the central feature of a "field realignment" designed to save the company approximately $325 million in annual expenses – the majority of which consisted of savings arising out of eliminating the cost of providing pension and other benefits to Allstate's employee agents.[2]

66.     As part of the Mass Termination Program, Allstate presented its employee agents with the same ultimatum it had presented to its California agents some four years earlier: execute the R3001 contract and, thereby, relinquish their pension and other employee benefits or sever their long-term relationship with the company entirely. Faced with this ultimatum, approximately 4,000

---

[2]     The Mass Termination Program is more fully described in the operative complaint styled *Gene R. Romero, et al. v. Allstate Insurance Company, et al.*, No. 01-CIV-3894, a related case filed in this Court.

-22-

employee agents effectively were left with no option but to remain in the service of Allstate by executing the R3001S contract, with the other 2,400 or so severing their ties with the company.

67.    At no time did Allstate ever inform its "employee agents" that, under the Pension Plan, any service they might provide under a variant of the R3001 contract "counted" in determining their eligibility for early retirement benefits. Indeed, to the contrary, Allstate instructed its employee agents that such service would not count under the Pension Plan and, true to its word (but in violation of law), Allstate has failed to count such service in the case of any of the approximately 7,000 agents who have converted to the R3001 contract since it amended the Pension Plan in December 1994.

68.    During the last decade, Allstate always told its "employee agents" that conversion was in their interest because it would afford them "entrepreneurial freedom." As Allstate was well aware, that statement was incorrect. For example, under the R3001 contract, Allstate has retained the right to restrict agents' "entrepreneurial freedom" in the same manner as it had prior to their conversion and to control nearly every aspect of the manner and means through which they solicit, market and sell products and services to the public on Allstate's behalf.

69.    Since their conversion to the R3001 contract, Allstate has, in fact, exercised at least as much control over agents who had converted to so-called "independent contractor" status as it did when those agents enjoyed the status as employees by, among other things:

- requiring that they obtain approval from Allstate before engaging in any other form of business activity;

- prohibiting them from selling insurance on behalf of Allstate's competitors;

- dictating the specific hours that their agencies must be open;

-23-

- imposing a dress code on them and their staffs;

- requiring that they obtain approval from Allstate before hiring any support staff employee;

- requiring that they attend company meetings;

- compelling them to replace their own telephone and computer systems with new systems leased from Allstate and linked to its centralized system, thereby enabling Allstate to monitor the details of their performance;

- prohibiting them from using any software on those computer systems other than that supplied by Allstate or from communicating with clients and potential clients on web sites not approved by Allstate;

- requiring them to forward their incoming calls to Allstate customer service centers, thereby enabling Allstate to confiscate their business;

- ordering them to solicit new client "leads";

- refusing to allow them to use the word "Allstate" on agency "web pages" without the company's approval;

- mandating that any display advertisement they wish to place in the Yellow Pages conform with Allstate's specifications, including the omission of any reference to Allstate; and

- imposing unobtainable production quotas upon them and threatening them with termination if those quotas are not reached.

70.     Apparently recognizing that agents who converted to the R3001 contract were still common law employees and not truly independent contractors, Allstate amended the Pension Plan in yet another effort to deny them eligibility for benefits under that plan. In particular, in 1996, Allstate added a new provision to the Pension Plan making "Employee" a defined term and excluding from that term any person who provides services to Allstate under an R3001 contract (the "1996 amendment").

-24-

**IV.**
**CLASS ALLEGATIONS**

71.    As set forth below, plaintiffs seek certification of three separate classes. In the case of each proposed class, certification is warranted because it satisfies the threshold requirements of Fed. R. Civ. P. 23(a) and the additional requirements of Fed. R. Civ. P. 23(b)(2) and (3).

**A.    Allegations Relating To The Converted Agent Class**

72.    With respect to their claims for cutback of early retirement benefits in violation of section 204(g)(1) and (2)(A) of ERISA, 29 U.S.C. § 1054(g), the named converted agent plaintiffs – that is, Bever, Carrier, Cobb, Crease, Harper, M. Kearney, Lawson, Littlejohn, Maslowski, Millison, Murray, Penzo, Peterson, Weisman, Wiktor, Wittman and Wolverton – seek certification pursuant to Rule 23, Fed. R. Civ. P., of the following presently ascertainable class: all persons (a) who provided less than twenty years of continuous service to Allstate as employee agents prior to June 30, 2000; and (b) who, upon being instructed that they could no longer remain in the service of Allstate unless they became "exclusive agent independent contractors," signed a R3001S contract and continued to provide compensated service to Allstate pursuant to that contract (collectively, the "converted agent class").

73.    *Numerosity.* The number of individuals in the class is in excess of 4,000. It would be impracticable to bring all, or even a substantial percentage of, such individuals before the Court as individual plaintiffs through joinder.

74.    *Typicality.* The claims of named converted agent plaintiffs are typical of the claims of all members of the converted agent class because, among other reasons: (a) the relationship between each of them and Allstate is governed by the same or substantially the same R3001 contract;

-25-

and (b) they all assert claims based upon allegations that Allstate has denied them early retirement benefits to which they are or may become eligible under ERISA by refusing to count the service they have provided Allstate under the R3001 contract as "service" within the meaning of the Pension Plan.

75.   *Adequacy of Representation.*  The named converted agent plaintiffs are adequate representatives of the converted agent class because: (1) they are willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (2) their interests are not in any way antagonistic to those of the other converted agent class members; and (3) they have retained counsel experienced in litigating major class actions in the field of employee benefits and other complex litigation.

76.   *Commonality and Predominance.* There are numerous questions of law and fact common to the converted agent class that predominate over any individual question, including: (a) whether, under the terms of the Pension Plan and Allstate's prior interpretation of that plan, compensated service (including service as an "exclusive agent independent contractor") provided to Allstate counted as "service" for purposes of determining eligibility for early retirement benefits; (b) whether agents who provide service to Allstate under the R3001 contract are "employees" of Allstate within the meaning of ERISA (29 U.S.C. § 1002(6)); and (c) whether in amending the Pension Plan to preclude service as a so-called "exclusive agent" from counting as service for purposes of determining eligibility for such benefits, Allstate violated the "anti-cutback" rule embodied in section 204(g)(2) of ERISA, 29 U.S.C. § 1054(g)(2), and section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. § 411(d)(6).

77.   *Propriety Of Class Certification Under Fed. R. Civ. P. 23(b)(2).* Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Allstate has acted and/or refused to act on grounds generally applicable to the class, thereby making declaratory and final injunctive relief appropriate. Such generally applicable grounds consist of Allstate's conduct in refusing to count compensated service provided by members of the converted agent class to Allstate under their contract as "service" for purposes of determining eligibility for early retirement benefits under the Pension Plan.

78.   *Propriety Of Class Certification Under Fed. R. Civ. P. 23(b)(3).* Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3). As set forth in ¶ 76 above, questions of law and fact common to the class predominate over questions affecting only individual members. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Inasmuch as all members of the class allege that they were subjected to the same unlawful decision to refuse to count service under the R3001 contract as "service" under the Pension Plan, requiring each class member to pursue his or her claim individually would entail needless duplication, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

**B.    Allegations Relating To The Retired Agent Class**

79.   With respect to their claims for breach of fiduciary duty based on violations of section 404(a) of ERISA, 29 U.S.C. § 1104(a), the named retired agent plaintiffs – that is, Romero, Boyd, Crews-Kelly, English, Gafner, T. Kearney, Lankford, Moorehead, Perkins, Pilchak, Reinerio, Schott, Trgovich and Wandner – seek certification pursuant to Fed. R Civ. P. 23 of the following presently ascertainable class:  all persons  (a) who provided less than twenty years of continuous

-27-

service to Allstate as "employee agents" prior to January 1, 2001; and (b) who, upon being instructed that they could no longer remain in the service of Allstate unless they signed the R3001S contract and became "exclusive agent independent contractors," elected to retire from the service of Allstate by December 31, 2000 (collectively, the "retired agent class").

80.   *Numerosity.* The number of individuals in the class is in excess of 2,500. It would be impracticable to bring all, or even a substantial percentage of, such individuals before the Court as individual plaintiffs through joinder.

81.   *Typicality.* The claims of named retired agent plaintiffs are typical of the claims of all members of the retired agent class because, among other reasons: (a) they all assert claims based upon allegations that Allstate and/or the Administrator breached their fiduciary obligations to them by misrepresenting that service provided under the R3001 contract does not count as "service" for purposes of determining eligibility for early retirement benefits under the Pension Plan; (b) they all assert that the Administrator breached its fiduciary obligations to them in failing to correct a misrepresentation that it knew or should have known was false and materially misleading; and (c) they all relied upon the aforementioned misrepresentations in declining to execute the R3001 contract.

82.   *Adequacy of Representation.* The named retired agent plaintiffs are adequate representatives of the retired agent class because: (1) they are willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (2) their interests are not in any way antagonistic to those of the other retired agent class members; and (3) they have retained counsel experienced in litigating major class actions in the field of employee benefits and other complex litigation.

83.    *Commonality and Predominance.*  There are numerous questions of law and fact common to the retired agent class that predominate over any individual questions, including: (a) whether, under the terms of the Pension Plan and Allstate's prior interpretation of that plan, compensated service (including service as an "exclusive agent independent contractor") provided to Allstate counted as "service" for purposes of determining eligibility for early retirement benefits; (b) whether agents who provide service to Allstate under the R3001 contract are "employees" of Allstate within the meaning of ERISA (29 U.S.C. § 1002(6)); (c) whether, in stating that service provided under the R3001 contract does not count as "service" for purposes of determining eligibility for early retirement benefits under the Pension Plan, Allstate and/or the Administrator made a material misrepresentation in breach of their fiduciary obligations; and (d) whether, in failing to correct such misrepresentation, the Administrator committed a misrepresentation by remaining silent when it had a duty to speak.

84.    *Propriety of Class Certification Under Fed. Civ. P. 23(b)(2).*  Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Allstate and the Administrator have acted and/or refused to act on grounds generally applicable to the class, thereby making declaratory and final injunctive relief appropriate.  Such generally applicable grounds consist of the conduct of Allstate and/or the Administrator in:  (a) making misrepresentions regarding whether or not "service" provided under the R3001 contract counts as "service" for purposes of determining eligibility for early retirement benefits under the Pension Plan; and (b) failing to correct such misrepresentation.

85.    *Propriety Of Class Certification Under Fed.. R.. Civ. P. 23(b)(3).*  Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3). As set forth in ¶ 83 above, questions of law and fact common to the class predominate over questions affecting only individual members.  Moreover,

a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Inasmuch as all members of the class allege that they relied upon the same material misrepresentations and omissions concerning the issue whether service provided under the R3001 contract counts as "service" under the Pension Plan, requiring each class member to pursue his or her claim individually would entail needless duplication, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

C.     **Allegations Relating To The Beef-Up Class**

86.     With respect to their claims related to the elimination of the "beef-up" in violation of section 204(g) and (h) of ERISA, 29 U.S.C. § 1054(g) and (h), all of the named plaintiffs seek certification pursuant to Fed. R. Civ. P. 23 of the following presently ascertainable class: all persons who (a) were hired by Allstate as an employee agent prior to January 1, 1992, pursuant to an R830 or R1500 contract; (b) remained in Allstate's service as an employee agent after December 31, 1991; and (c) had not attained the age of fifty-five as of December 31, 1991 (collectively, the "beef-up class").

87.     *Numerosity.* The number of individuals in the beef-up class is in excess of 10,000. It would be impracticable to bring all, or even a substantial percentage of, such individuals before the Court as individual plaintiffs through joinder.

88.     *Typicality.* The claims of the named plaintiffs are typical of the claims of all members of the beef-up class because, among other reasons: they all assert claims based upon allegations that: (1) Allstate has denied them "beefed-up" early retirement benefits and/or the opportunity to obtain "beefed-up" early retirement benefits by amending the Pension Plan to phase-out and ultimately to eliminate such benefits in violation of the "anti-cutback" rule embodied in

-30-

section 204(g)(2) of ERISA, 29 U.S.C. § 1054(g)(2), and section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. § 411(d)(6); and (2) Allstate purported to amend the Pension Plan in order to phase out and eliminate the "beef-up" even though participants and beneficiaries did not receive written notice of the amendment as required by section 204(h)(1) of ERISA, 29 U.S.C. § 1054(h)(1).

89.    *Adequacy of Representation.* The named plaintiffs are an adequate representative of the beef-up class because:  (1) they are willing and able to represent the proposed class and have every incentive to pursue this action to a successful conclusion; (2) their interests are not in any way antagonistic to those of the other beef-up class members; and (3) they have retained counsel experienced in litigating major class actions in the field of employee benefits and other complex litigation.

90.    *Commonality and Predominance.*  There are numerous questions of law and fact common to the beef-up class that predominate over any individual question, including whether, in amending the Pension Plan in 1991 to phase out and ultimately eliminate "beefed-up" early retirement benefits even though participants and beneficiaries did not receive written notice of the amendment, Allstate violated section 204(h)(1) of ERISA, 29 U.S.C. § 1054(h)(1), and the "anti-cutback" rule embodied in section 204(g)(2) of ERISA, 29 U.S.C. § 1054(g)(2), and section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. § 411(d)(6).

91.    *Propriety Of Class Certification Under Fed. R. Civ. P. 23(b)(2).*  Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Allstate has acted and/or refused to act on grounds generally applicable to the class, thereby making declaratory and final injunctive relief appropriate.  Such generally applicable grounds consist of Allstate's conduct in amending the Pension Plan in 1991 to phase out and ultimately to eliminate the "beef-up" even though participants

-31-

and beneficiaries did not receive written notice of the amendment as required by section 204(h) of ERISA, 29 U.S.C. § 1104(h), in violation of the "anti-cutback" rule embodied in section 204(g)(2) of ERISA, 29 U.S.C. § 1104(g)(2), and section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. § 411(d)(6)..

92.    *Propriety Of Class Certification Under Fed. R. Civ. P. 23(b)(3).* Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3). As set forth in ¶ 90 above, questions of law and fact common to the class predominate over questions affecting only individual members. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Inasmuch as all members of the beef-up class allege that they were subjected to the same unlawful decision to amend the Pension Plan to phase out and ultimately to eliminate the "beef-up" even though participants and beneficiaries did not receive written notice of the amendment, requiring each class member to pursue his or her claim individually would entail needless duplication, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

## COUNT I

**Cutback Of Early Retirement Benefits In Violation Of
Section 204(g) Of ERISA (29 U.S.C. § 1054(g))**

**(On Behalf Of The Converted Agent Plaintiffs
And The Converted Agent Class)**

93.    The converted agent plaintiffs restate and reallege the allegations contained in paragraphs 1 to 92 of this Complaint as though set forth here in full.

94.    Each of the converted agent plaintiffs provided compensated service to Allstate as an "employee agent" prior to July 1, 2000.

-32-

95.    Since the termination of their employment contracts, each of the converted agent plaintiffs has continued to provide compensated service to Allstate as an "exclusive agent independent contractor" pursuant to a R3001S contract.

96.    Under the Pension Plan, any employee agent who completes twenty years of continuous "service" with Allstate and who attains the age of 55 is entitled to receive early retirement benefits in the event he or she retires before reaching normal retirement age.

97.    Under Allstate's own interpretation of the Pension Plan (as well as its interpretation of the November 1991 amendments to that plan), and under section 402(e) of the Internal Revenue Code, 26 U.S.C. § 402(e), any converted agent of Allstate who provides any kind of compensated service to Allstate following the termination of his or her employment contract with Allstate remains "in the service of Allstate" for purposes of determining eligibility for early retirement benefits.

98.    The express terms of the Pension Plan (prior to the December 1994 amendments) state that "[a]ll service" with Allstate "shall count as Credited Service." Accordingly, under the Pension Plan, any converted agent of Allstate who, following the termination of his employment contract with Allstate, continues to provide compensated "service" to Allstate under a contract creating an "exclusive agent independent contractor" relationship continues to accumulate "service" for purposes of determining eligibility for early retirement benefits.

99.    Under the December 1994 amendments to the Pension Plan, Allstate purported to alter the eligibility requirements for obtaining early retirement benefits by only counting "service" that converted agents performed in their capacity as Allstate "employees" toward the fulfillment of those requirements and excluding any "service" they might have performed in their

-33-

capacity as "independent contractors" of Allstate. In imposing requirements that made it more difficult to meet the eligibility requirements for obtaining early retirement benefits, the December 1994 amendments violated the "anti-cutback" rule embodied in section 204(g)(2) of ERISA, 29 U.S.C. § 1054(g)(2), and section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. § 411(d)(6).

100. Alternatively, even if "service" provided to Allstate as an "independent contractor" never counted as "service" for purposes of determining eligibility for early retirement benefits under the Pension Plan, the converted agent plaintiffs are not independent contractors. Since those plaintiffs began providing service to Allstate under the R3001 contract, Allstate has retained the right to control the manner and means through which they perform their jobs as "captive" agents. Moreover, since the time they converted to the R3001 contract, Allstate has actually exercised at least as much control over the converted agent plaintiffs as it did prior to the purported termination of their employment status. Accordingly, at all pertinent times, all of the converted agent plaintiffs have been "employees" of Allstate within the meaning of ERISA (29 U.S.C. § 1002(6)).

101. By amending the Pension Plan to no longer count all "service" which the converted agent plaintiffs provide, for purposes of determining eligibility for early retirement, Allstate has caused the Pension Plan to violate the "anti-cutback" rule embodied in section 204(g) of ERISA, 29 U.S.C. § 1054(g), and section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. § 411(d)(6).

## COUNT II

### Breach Of Fiduciary Duty In Violation Of
### Section 404(a) Of ERISA (29 U.S.C. § 1104(a))

### (On Behalf Of The Retired Agent Plaintiffs
### And The Retired Agent Class)

102.    The former agent plaintiffs restate and reallege the allegations contained in paragraphs 1 to 101 of this Complaint as though set forth here in full.

103.    At all pertinent times, the Administrator had the authority to determine all questions arising under the provisions of the Pension Plan, including the authority to determine the rights and eligibility of the participants and any other persons, and to remedy ambiguities, inconsistencies or omissions.  The Administrator had discretionary authority to interpret the terms of the Pension Plan and to determine eligibility for and entitlement to benefits in accordance with the terms of the Pension Plan.

104.    At all pertinent times, the Administrator was a "fiduciary" of the Pension Plan within the meaning of ERISA (29 U.S.C. § 1002(21)) because it exercised discretionary authority or control over the management of the Pension Plan and/or had discretionary authority or control in the administration of the Pension Plan.

105.    At all pertinent times, Allstate was a "fiduciary" of the Pension Plan within the meaning of ERISA (29 U.S.C. § 1002(21)) because it appoints and/or exercises supervision or control over the Administrator.

106.    In their respective capacities as fiduciaries of the Pension Plan, Allstate and the Administrator were obligated not to misinform plan participants concerning the availability of benefits under the Pension Plan, whether through material misrepresentations, failure to correct

-35-

misrepresentations which they knew or should have known were false and materially misleading, or through incomplete, inconsistent and contradictory disclosures.

107.    At both the time it announced the mass termination of its California "employee agents" and the time it announced its nationwide Mass Termination Program, Allstate informed employee agents subject to those announcements that it would be terminating their employment contracts by April 30, 1996, and June 30, 2000, respectively, and that it would terminate its relationship with them entirely unless they entered into a variant of the R3001 contract.

108.    At the time Allstate offered the former agent plaintiffs the "choice" of continuing to provide compensated "service" to Allstate under an R3001 contract or of having their relationship with Allstate unilaterally terminated, and with the intention of influencing that choice, Allstate and/or the Administrator represented to those retired agent plaintiffs that they would be "exclusive agent independent contractors" under the arrangement created by the R3001 contract and, hence, would not be able to accumulate additional "service" for purposes of: (a) determining eligibility for early retirement benefits and "beefed-up" benefits under the Pension Plan; and (b) eligibility to receive any pension benefits to which they were not already entitled as of the date their employment contract was terminated.

109.    The representation by Allstate and/or the Administrator that former "employee agents" of Allstate who continued to provide compensated "service" to Allstate under the R3001 contract would no longer be eligible to accumulate "service" for purposes of eligibility for early retirement benefits and "beefed-up" benefits under the Pension Plan was materially false and misleading. Under the Pension Plan (prior to the unlawful and invalid December 1994 amendments), all "service" provided to Allstate under the R3001 contract, including service as a

-36-

so-called "exclusive agent independent contractor," constitutes "service" for purposes of determining eligibility for early retirement benefits. Alternatively, even if only service as an "employee" counts as "service" under the Pension Plan, the converted agent plaintiffs are "employees" of Allstate within the meaning of 29 U.S.C. § 1002(6) and, under the Pension Plan (exclusive of the unlawful and invalid 1996 amendments), service provided to Allstate by an "employee" within the meaning 29 U.S.C. § 1002(6) constitutes "service" for purposes of determining eligibility for early retirement benefits and accruing additional pension benefits.

110.    At the time Allstate and/or the Administrator represented that former "employee agents" who continued to serve Allstate under the R3001 contract would no longer be able to accumulate service toward eligibility for early retirement benefits or accrue additional benefits under the Pension Plan, Allstate and/or the Administrator knew or should have known of the falsity of that representation.

111.    In the alternative, the Administrator was aware of Allstate's representation that plaintiffs who continued to provide compensated service to Allstate under the R3001 contract would no longer be able to accumulate additional "service" for purposes of eligibility for early retirement benefits or otherwise accrue additional benefits under the Pension Plan, and knew or should have known of the falsity of that representation.

112.    Though the Administrator had a duty to correct the aforementioned misrepresentation, the Administrator failed to do so and, instead, took actions that were consistent with Allstate's representation that the agents were no longer able to accumulate additional "service" for purposes of eligibility for early retirement benefits under the Pension Plan or otherwise to accrue additional pension benefits.

-37-

113.    In foreseeable reliance upon the aforementioned affirmative misrepresentation by Allstate and/or the Administrator and upon the aforementioned misrepresentation by conduct and omission of the Administrator, the retired agent plaintiffs retired from the service of Allstate. Had the retired agent plaintiffs known that any service they provided to Allstate would count for purposes of determining eligibility for early retirement benefits, they would not have ceased providing service to Allstate.

114.    In making material misrepresentations relating to the availability of benefits under the Pension Plan and inducing the retired agent plaintiffs to rely on those misrepresentations, Allstate and the Administrator have violated their respective fiduciary obligations under section 404(a) of ERISA, 29 U.S.C. § 1104(a).

115.    As a result of the unlawful conduct of Allstate and the Administrator as set forth in this Count, the retired agent plaintiffs have suffered losses, including but not limited to, termination of their employment status, loss of income and loss of benefits.

## COUNT III

### Cutback Of "Beefed-Up" Early Retirement Benefits In Violation Of Section 204(g)(2) Of ERISA (29 U.S.C. § 1054(g)(2))

### (On Behalf Of All Plaintiffs And The Beef-Up Class)

116.    Plaintiffs restate and reallege the allegations contained in paragraphs 1 to 115 of this Complaint as though set forth here in full.

117.    Under the Pension Plan (prior to the unlawful and invalid amendments purportedly adopted in November 1991), any employee agent who completes twenty years of

"service" with Allstate is entitled to receive "beefed-up" early retirement benefits upon reaching 55 years of age.

118.    In purporting to adopt the November 1991 amendments to the Pension Plan and in "readopting" such amendments in December 1994, Allstate purported to phase out and ultimately eliminate the "beef-up" by December 31, 1999.  By amending the Pension Plan to phase out and eliminate "beefed-up" early retirement benefits for agents who have met or may in the future meet the eligibility requirements for early retirement, Allstate caused the Pension Plan to violate the "anti-cutback" rule embodied in section 204(g)(2) of ERISA, 29 U.S.C. 1054(g)(2), and section 411(d)(6) of the Internal Revenue Code, 26 U.S.C. 411(d)(6).

**COUNT IV**

**Failure To Provide Written Notice Of Amendments
Eliminating "Beefed-Up" Early Retirement Benefits In Violation
Of  Section 204(h)(1) Of ERISA (29 U.S.C. § 1054(h)(1))**

**(On Behalf Of All Plaintiffs And The Beef-Up Class)**

119.    Plaintiffs restate and reallege the allegation contained in paragraphs 1 to 118 of this Complaint as though set forth here in full.

120.    The November 1991 amendments, under which Allstate purported to phase out and ultimately eliminate "beefed-up" early retirement benefits, caused a significant reduction in early retirement benefits or subsidies that agents accrued under the Pension Plan.

121.    Allstate or the Plan Administrator failed to provide the plan participants and beneficiaries with written notice of the amendment that purported to phase out and eliminate the "beef-up" at least fifteen days before the purported effective date of such amendments.  As a result, the amendment is without legal effect and Allstate and the Administrator are precluded

-39-

from administering the Pension Plan in accordance with the amendment until the requisite notice has been provided pursuant to section 204(h) of ERISA, 29 U.S.C. § 1054(h).

122. In failing to provide written notice to participants and beneficiaries of the amendment purporting to phase out and eliminate the "beef-up" at least fifteen days before the purported effective date of such amendments, Allstate and the Administrator violated section 204(h)(1) of ERISA, 29 U.S.C. § 1054(h)(1).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectively pray:

A. That this case be certified as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the proposed plaintiff classes, and that plaintiffs' counsel of record be designated as class counsel;

B. That the practices of Allstate and the Administrator complained of herein be determined and adjudged to be in violation of the rights of plaintiffs and class members under ERISA, pursuant to 29 U.S.C. § 1132(a)(3);

C. That the Court issue a permanent injunction pursuant to 29 U.S.C. § 1132(a)(3) and 28 U.S.C. §§ 2201-2202 compelling Allstate and the Administrator to:

(1) count any periods of service that the converted agent plaintiffs have provided to Allstate under the R3001 contract as "service" for purposes of determining their eligibility for early retirement benefits; and

(2) repeal the November 1991 and December 1994 plan amendments relating to early retirement and the "beef-up" retroactively to the dates those amendments were adopted,

-40-

as a remedy for the statutory violations described in Counts I, III, and IV;

D.      That the Court enter judgment in favor of plaintiffs and all class members against: (1) the Pension Plan and the Administrator pursuant to 29 U.S.C. § 1132(a)(3) for lost benefits and future benefits in an amount to be proven at trial; and (2) Allstate pursuant to 29 U.S.C. § 1132(a)(3) for lost benefits, future benefits, back pay (including interest or an appropriate inflation factor), front pay and/or lost investment capital, all in amounts to be determined at trial, as a remedy for the violations of fiduciary obligations described in Count II;

E.      That plaintiffs and class members be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable;

F.      That plaintiffs and class members be granted their attorneys' fees, experts' fees and the costs and expenses of this litigation; and

G.      That the Court retain jurisdiction over Allstate, the Pension Plan and the Administrator until such time as it is satisfied that the remedied the practices complained of are remedied and are determined to be in full compliance with the law.

Respectfully submitted,

_____
Steven H. Doto (ID No. 48486)
ZEVNIK HORTON LLP
620 Chestnut Street
Tenth Floor
Philadelphia, Pennsylvania 19106
Telephone:    (215) 440-8450
Facsimile:    (215) 440-8459

Michael Lieder (DC Bar No. 412029)
Daniel Wolf (DC Bar No. 429697)
SPRENGER & LANG, PLLC
1614 Twentieth Street, N.W.
Washington, D.C.  20009
Telephone:    (202) 265-8010
Facsimile:    (202) 332-6652

Paul Anton Zevnik (PA Bar No. 140986)
Michael J. Wilson (DC Bar No. 421274)
ZEVNIK HORTON LLP
Ninth Floor
Washington, D.C.  20004
Telephone:      (202) 824-0950
Facsimile:      (202) 824-0955

Thomas W. Osborne
Mary Ellen Signorille
AARP Foundation Litigation
601 E Street, N.W.
Washington, D.C.  20049
Telephone:      (202) 434-2060
Facsimile:      (202) 434-6424

Susan Coler (MN Bar No. 217621)
SPRENGER & LANG, PLLC
325 Ridgewood Avenue
Minneapolis, Minnesota 55403
Telephone:      (612) 871-8910
Facsimile:      (612) 871-9270

*Counsel for Plaintiffs and the Class*

-42-