

# THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

GENE R. ROMERO, et al., )
)
*Plaintiffs,* )  **FILED**  ) Civil Action No. 01-CV-6764
)
v. )  APR 1 0 2002 )
)  MICHAEL E. KUNZ, Clerk ) CLASS ACTION
THE ALLSTATE CORPORATION, et al., )
By _____ Dep. Clerk )
*Defendants.* )
)

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS COMPLAINT

Respectfully submitted,

Steven H. Doto (PA Bar No. 48486)
ZEVNIK HORTON LLP
620 Chestnut Street
Tenth Floor
Philadelphia, Pennsylvania 19106
Telephone: (215) 440-8450
Facsimile: (215) 440-8459

Michael Lieder (DC Bar No. 412029)
Daniel Wolf (DC Bar No. 429697)
Susan Coler (MN Bar No. 217621)
Mark Amadeo (WI Bar No. 1026975)
SPRENGER & LANG, PLLC
1614 Twentieth Street, N.W.
Washington, D.C. 20009
Telephone: (202) 265-8010
Facsimile: (202) 332-6652

Paul Anton Zevnik (PA Bar No. 140986)
Michael J. Wilson (DC Bar No. 421274)
ZEVNIK HORTON LLP
Ninth Floor
Washington, D.C. 20004
Telephone: (202) 824-0950
Facsimile: (202) 824-0955

Thomas W. Osborne (DC Bar No. 428164)
Mary Ellen Signorille (DC Bar No. 942474)
AARP Foundation Litigation
601 E Street, N.W.
Washington, D.C. 20049
Telephone: (202) 434-2060
Facsimile: (202) 434-6424

*Counsel for Plaintiffs and the Class*

Table of Contents

FACTUAL ALLEGATIONS..............................................................................1

    ARGUMENT....................................................................................6

I.       The Claims are Not Time Barred as a Matter of Law..........................................6

        A.     Count I Is Not Time Barred...........................................................6

        B.     Neither Count III Nor Count IV Is Time Barred......................................14

II.      The Doctrine Of *Res Judicata* Does Not Bar Counts III And IV...........................16

III.    Plaintiffs Have Alleged A Reduction In Accrued Benefits Within
The Meaning Of Section 204 Of ERISA...................................................20

IV.    Plaintiffs Need Not Allege That They Suffered Substantive
Harm In Order To Assert A Claim For Failure To Give Prior
Notice In Accordance With Section 204(h)...............................................23

V.     Plaintiffs Have Adequately Alleged A Claim for Breach Of Fiduciary Duty...............25

        A.     Plaintiffs Have Alleged Actionable Misrepresentations And Omissions...........25

        B.     The Relief Plaintiffs Seek Is Equitable In Nature....................................27

    CONCLUSION.............................................................................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abels v. Titan International*, 85 F. Supp. 2d 924 (S.D. Iowa 2000) ...................................21

*Ahng v. Allsteel, Inc.*, 96 F.3d 1033 (7th Cir. 1996) .........................................................20

*Allred v. First Nationwide Financial Corp.*, 1994 U.S. Dist. LEXIS 21538 (N.D. Cal. May 2, 1994) .......................................................................................................23,24

*Allred v. First Nationwide Financial Corp.*, 1996 U.S. App. LEXIS 25695 (9th Cir. Sept. 27, 1996) .......................................................................................................24

*Bellas v. CBS, Inc.*, 221 F.3d 517 (3d Cir. 2000)................................................................22

*Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990)..............................................21

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir. 1993) ..................................................................................................................................26

*Bunnion v. Consolidated Rail Corp.* 108 F. Supp. 2d 403 (E.D. Pa. 1999), *aff'd mem.*, 230 F 3d 1348 (3d Cir 2000) ..................................................................................25

*Collins v. E.I. DuPont De Nemours & Co.*, 34 F.3d 172 (3d Cir. 1994) ...........................16

*Copeland v. Geddes Federal Savings Loan Associate Retirement Income Plan*, 62 F. Supp. 2d 673 (N.D.N.Y. 1999)........................................................................................25

*Corcoran v. Bell Atlantic Corp.*, 1997 U.S. Dist. LEXIS 14662 (E.D. Pa. Sept. 23, 1997), *aff'd*, 159 F.3d 1350 (3d Cir. 1998) .......................................................................22

*Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226 (3d Cir. 1994) ............30

*Davidson v. Canteen Corp.*, 957 F.2d 1404 (7th Cir. 1992).............................................25

*Devito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F. Supp. 258 (S.D.N.Y. 1997) ......................................................................................................... *passim*

*DiCioccio v. Duquesne Light Co.*, 911 F. Supp. 880 (W.D. Pa. 1995) .............................25

*Frazier v. Hairston*, 2001 U.S. Dist. LEXIS 12848 (E.D. Pa. Aug. 23, 2001)....................8

*Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137 (3d Cir. 1993)........................................20

*Gluck v. Unisys Corp.*, 960 F.2d 1168 (3d Cir. 1992) ....................................................7, 11

*Great-West Life Annuity Ins. Co. v. Knudson*, 122 S. Ct. 708 (2002) ..............................28

*Hein v. Federal Deposit Ins. Corp.*, 88 F.3d 210 (3d Cir. 1996) ......................................27

*Henglein v. Colt Industrial Operating Corp.*, 260 F.3d 201 (3rd Cir. 2001) ......................9

*Howe v. Varity Corp.*, 36 F.3d 746 (8th Cir. 1994), aff'd 516 U.S. 489, 116 S. Ct. 1065............................................................................................................................30

*Huck v. Dawson*, 106 F.3d 45 (3d Cir. 1997) ......................................................17

*International Union of Electronic, Electric, Salaried, Machine and Furniture Workers v. Murata Erie N. Am.*, 980 F.2d 889 (3rd Cir. 1992) ..............................9, 13

*Jordan v. Federal Express Corp.*, 116 F.3d 1005 (3d. 1997)............................................28

*Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166 (3d Cir. 1997) ................................26

*Kiefer v. Ceridian Corp.*, 976 F. Supp. 829 (D. Minn. 1997).................................. *passim*

*Koenig v. Intercontinental Life Corp.*, 880 F. Supp. 372  (E.D. Pa. 1995) ......................25

*Laurenzano v. Blue Cross & Blue Shield of Massachusetts Inc. Retirement Income Trust*, 134 F. Supp. 2d 189 (D. Mass. 2001)........................................... *passim*

*Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960 (3d Cir. 1991)............................................17

*Meagher v. International Association of Machinists and Aerospace Workers Pension Plan*, 856 F.2d 1418 (9th Cir. 1988)................................................................9

*Menhorn v. Firestone TireRubber Co.*, 738 F.2d 1496 (9th Cir. 1984)..............................12

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ..............................................27, 28, 30

*Michael v. Riverside Cement Co. Pension Plan*, 266 F.3d 1023 (9th Cir. 2001) ..............21

*Philadelphia Fraternal Order of Correctional Officers v. Rendell*, 1996 U.S. Dist. LEXIS 7621 (E.D. Pa. May 31, 1996), *aff'd mem.*, 1997 U.S. App. LEXIS 33407 (3d Pa. Oct 21, 1997) ...................................................................................16

*Pickering v. USX Corp.*, 809 F. Supp. 1501 (D. Utah 1992)............................................25

*Production and Maintenance Employees Local 504, Laborers' International Union of North America v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir. 1992)..........24, 25

*Ream v. Frey*, 107 F.3d 147 (3d Cir. 1997) ......................................................28

*Reich v. Continental Casualty Co.*, 33 F.3d 754, 7th Cir. 1994) .......................................29

*Resner v. ARC Mills,* 1996 U.S. Dist. LEXIS 14362 (S.D.N.Y. Sept. 30, 1996) ..............30

*Robinson v. Johnson*, 2002 U.S. App. LEXIS 3723, (3d Cir. Mar. 11, 2002)....................6

*Rodriguez v. MEBA Pension Trust*, 872 F.2d 69 (4th Cir. 1989) ....................................12

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 360 (3d
Cir. 1990) ..........................................................................................................20

*Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000) ..............................................20

*Schwartz v. Gregori*, 45 F.3d 1017 (6th Cir. 1995) ............................................................30

*Scott v. Administrative Committee of the Allstate Agents Pension Plan*, 113 F.3d
1193 (11th Cir. 1997)................................................................................... *passim*

*Scott v. Administrative Committee of the Allstate Agents Pension Plan*, 1995 U.S.
Dist. LEXIS 20564 (M.D. Fla. Sept. 15, 1995)...................................................... *passim*

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*,
181 F.3d 410 (3d. Cir. 1999).......................................................................................6

*Swain v. Allstate Insurance Co.*, No. 96-998 (S.D. Fla. Jan. 22, 1999) .....................................17

*Thomas v. Eastman Kodak Co.*, 183 F.3d 38 (1st Cir. 1999) .................................................8

*Union Pac. R.R. v. Beckham*, 138 F.3d 325, 330 (8th Cir, 1998) .........................8, 13, 14

*In re Unisys Corp. Retiree Medical Benefits "ERISA" Litigation*, 57 F.3d 1255
(3d Cir. 1995)..........................................................................................................26, 30

*United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) ...................16

*Zeigler v. Connecticut General Life Insurance Co.*, 916 F.2d 548 (9th Cir. 1990)..............9

## FEDERAL STATUTES

29 U.S.C. § 1001 *et seq.*.......................................................................................................1

29 U.S.C. § 1054(g) ...................................................................................... *passim*

29 U.S.C. § 1054(h) .........................................................................................................23

29 U.S.C. § 1104(a) ...........................................................................................................6

29 U.S.C. § 1113...............................................................................................................7, 9

29 U.S.C. § 1132................................................................................................................7

29 U.S.C. § 1132(a) ......................................................................................................10, 27

## MISCELLANEOUS

IRS Notice 88-131 § II.A.....................................................................................17

Restatement of Restitution § 1.........................................................................30

Restatement of Restitution § 1 (d) ..................................................................30

Restatement (Second) of Trusts § 197.............................................................29

Restatement (Second) of Trusts §§ 199(c), 201, 206(a) ..................................29

Restatement (Second) of Trusts § 205..............................................................30

In this action, plaintiffs seek relief from defendants Allstate Insurance Company, its parent, The Allstate Corporation (collectively, "Allstate"), the Agents Pension Plan ("Pension Plan" or "Plan") and the Administrative Committee of the Pension Plan ("Administrator") for their unlawful efforts to cut back early retirement benefits for approximately 15,000 insurance sales agents who were employed by Allstate during the 1990s.

The anti-cutback provision of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, prohibits any pension plan amendment that has the effect of "cutting back" early retirement benefits or subsidies. *See* 29 U.S.C. § 1054(g). Defendants violated that provision by phasing out a "beefed-up" early retirement benefit and by altering the eligibility requirements for receiving early retirement benefits. Defendants also breached their fiduciary duties to the plaintiffs when they made misrepresentations regarding the plaintiffs' rights to become eligible to receive early retirement benefits under the Plan.

### FACTUAL ALLEGATIONS

Prior to 1990, Allstate employed more than 15,000 "captive" insurance sales agents. (¶ 50.) [1] Allstate induced these employees to devote their careers to the company by promising them, among other things, a "superior" package of employee benefits, touted as the best the industry had to offer, including retirement benefits that Allstate promised would provide employee agents with a "guaranteed income" and long-term "financial security." (¶ 50.)

One of the most attractive features of the Pension Plan was its "early retirement" benefit. Agents who retired from the service of Allstate on or after age 63 were entitled

to receive a "normal" retirement benefit based on the annual eligible compensation earned by the agent. (¶ 51). The Plan also allowed agents with at least 20 years of continuous "credited service" to retire early, beginning at age 55. (¶¶ 1, 51). The Plan stated that "[a]ll service" with Allstate "shall count as Credited Service" for purposes of accruing benefits and attaining eligibility for early retirement. (¶ 51).

Allstate also provided agents a financial incentive for early retirement in the form of a "beefed-up" early retirement benefit. (¶ 52.) When an agent retired early, the Pension Plan increased the benefit payable to that agent by including in its calculations the amount of compensation that the agent would have earned (based on the amount earned in the calendar year preceding retirement) if he or she had worked until age 63. (¶ 52). For example, agents with twenty years of continuous "credited service" who retired at age 55 received a "beefed-up" early retirement benefit that assumed they continued to work for the next eight years, even though the agents had, in fact, retired and would have no earnings from Allstate during those future years. (¶ 52.)

Having concluded that the "superior package" of employee benefits was too costly, Allstate sought to reduce benefits payments in the early 1990s in three ways. (¶ 53.) First, it hired virtually all of its new agents under a contract (the R3001 contract) that classified them as so-called "independent contractors." (¶ 53.) Second, Allstate pressured its then existing employee agents to relinquish their employee benefits by "converting" to the R3001 contract. (¶ 53.) Finally, for those agents choosing to remain employees, Allstate cut back the early retirement benefits it had already promised them. (¶¶ 54-59, 70.)

---

[1] References to (¶ __) are to paragraphs in the Complaint, filed December 20, 2001.

In November 1991, Allstate purportedly amended the Pension Plan to phase out the "beefed-up" early retirement benefit over eight years. (¶ 55.) Defendants phased out the "beef-up" by adding a "sunset" provision that reduced "beefed-up" benefits for those employee agents who obtained eligibility on or after January 1, 1991, and eliminated the benefit entirely for employee agents who become eligible for early retirement after December 31, 1999. The following chart illustrates how the "beef-up" benefit was phased out and ultimately eliminated:

| Year of Retirement (assuming retirement at year end) | Maximum Number of "Beef Up" Years |
|---|---|
| 1991 | Up to 8 years |
| 1992 | Up to 7 years |
| 1993 | Up to 6 years |
| 1994 | Up to 5 years |
| 1995 | Up to 4 years |
| 1996 | Up to 3 years |
| 1997 | Up to 2 years |
| 1998 | 1 year |
| 1999 and later | None |

Under the amended Plan, an eligible employee agent who retired at age 55 on December 31, 1996 was eligible to receive only three years of "beefed up" credit (*i.e.*, through December 31, 1999), while an employee agent who retired at age 55 two years later was eligible only for one additional credited year of service. Any employee agent who took early retirement on or after December 31, 1999 received no "beef-up." In an amendment effective as of December 1994 ("the December 1994 Amendment"), Allstate "readopted" the November 1991 amendment (which appears to have been procedurally defective).

When the plaintiffs became participants in the Pension Plan, it provided that "[a]ll service" with Allstate "shall count as Credited Service" for purposes of accruing

3

retirement benefits, including early retirement. (¶ 51.) Allstate further took the position that agents who converted to exclusive agent status under the R3001 contract ("converted agent plaintiffs") remained "in the service" of Allstate.[2]

However, in the amendment adopted effective December 1994, Allstate purportedly altered the eligibility requirements for the early retirement program by stating that only "an Agent's employment [by Allstate] as an employee shall count as Credited Service." (¶ 56.) In a further 1996 amendment, Allstate added a new plan provision making "Employee" a defined term and excluding from that term any person who provides services to Allstate under an R3001 contract. (¶ 70.) Relying on these amendments, Allstate has taken the position that any service provided by employee agents who converted to the R3001 contract and became so-called "exclusive agents" did not count as "credited service" for purposes of obtaining early retirement benefits under the Pension Plan. (¶¶ 65-66.)

At the same time that it was cutting back on the ability of exclusive agents to provide service creditable to eligibility for early retirement benefits, Allstate increased pressure on existing employee agents to terminate their employment contracts and become so-called "exclusive agents." (¶¶ 62-65.) In 1996, Allstate announced that it was terminating the employment contracts of all of its 1,600 employee agents in California. (¶ 63.) Allstate's efforts culminated in the "Mass Termination Program" through which

---

[2] Allstate took this position in a case brought by a former employee agent alleging that Allstate had wrongfully denied him "beefed-up" early retirement benefits when he converted to so-called exclusive agent status under the R3001 contract. Allstate asserted that the agent's conversion to the R3001 contract did not constitute a "retirement" because the agent remained "in the service" of Allstate. *See Scott v. Administrative Comm. of the Allstate Agents Pension Plan*, 1995 U.S. Dist. LEXIS 20564 at *27 (M.D. Fla. Sept. 15, 1995), *rev'd on other grounds*, 113 F.3d 1193 (11th Cir. 1997).

4

Allstate forced substantially all remaining employee agents, except agents in three states and Canada, either to convert to exclusive agent status by June 30, 2000 or leave the company. (¶ 65.) Allstate exercised at least as much control over its agents after their conversion to exclusive agent status as it did when they enjoyed the status of "employees." (¶ 69.) The Plan amendments altering the eligibility requirements for early retirement, however, made it impossible for the employee agents who converted to exclusive agent contracts to accrue additional "credited service." (¶¶ 65-66.) Consequently, Allstate's implementation of the Mass Termination Program foreclosed all employee agents who did not already have twenty years of "continuous service" at Allstate from participating in the early retirement program.

When Allstate announced the termination of its California employee agents and later when it announced the Mass Termination Program, Allstate and the Administrator intentionally misrepresented to its agents that any service they would provide as exclusive agents would not count as "service" for purposes of determining eligibility for early retirement benefits, including the "beefed-up" benefits. (¶¶ 108, 110.) These representations were made to induce agents with less than twenty years of service to leave the service of Allstate completely. (¶ 108.) However, Allstate and the Administrator knew or should have known the cutback amendments were invalid and, hence, that employee agents who converted to exclusive agent status were, in fact, entitled under ERISA to continue to accumulate additional service for purposes of attaining eligibility for early retirement benefits. (¶¶ 109-110.)

Plaintiffs with less than twenty years of service who retired from Allstate rather than convert to the R3001 contract did so in reliance on the representations by defendants

5

that any compensated "service" to Allstate under the R3001 contract did not count as "service" for purposes of eligibility for early retirement benefits and "beefed-up" benefits under the Pension Plan. (¶ 113.) These plaintiffs would have continued providing service to the company if they had known that any service they provided to Allstate did, in fact, count for purposes of determining eligibility for early retirement benefits. (¶ 113.) Defendants' misrepresentations constitute a breach of their fiduciary obligations toward plan participants and beneficiaries under ERISA. 29 U.S.C. § 1104(a).

**ARGUMENT**

**I.     The Claims Are Not Time Barred As A Matter Of Law.**

The statute of limitations is an affirmative defense that may be raised on a motion under Rule 12(b)(6) only when it is "apparent on the face of the complaint" that the cause of action was not brought timely. *Robinson v. Johnson*, 2002 U.S. App. LEXIS 3723, at *13-14 (3d Cir. Mar. 11, 2002). The defendant bears a heavy burden in seeking to dismiss a claim as time barred because the issue of when a plaintiff's claim accrues is generally fact sensitive. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 425 (3d Cir. 1999). Nothing in the Complaint here would compel the conclusion that any of plaintiffs' claims are untimely as a matter of law.

**A.     Count I Is Not Time Barred.**

Although none of the converted agent plaintiffs was ever given notice of the content of the December 1994 amendment and although they could never have anticipated that their benefits would one day be reduced by that amendment even if they had known of its content, Allstate argues (at 12) that their anti-cutback claims based on

6

that amendment are time barred because plaintiffs did not bring them within six (or four) years of its effective date. Clearly, Allstate is wrong.

As Allstate correctly points out, the statute of limitations for "non-fiduciary claims" under 29 U.S.C. § 1132 is borrowed from "the statute of limitations for the state claim most analogous to the ERISA claim pursued." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992).[3] Allstate does not take a position on whether the most appropriate limitations period for a claim for denial of benefits based on violation of the anti-cutback rule embodied in section 204(g) of ERISA is Pennsylvania's four-year statute of limitations for claims based on breach of contract or its general six-year statute of limitations. That issue, however, was dispositively resolved in *Gluck*, wherein the Third Circuit expressly held that an ERISA claim for "improper reduction of early retirement benefits" in violation of section 204(g) "has no counterpart in Pennsylvania law," is "founded on complex issues of statutory interpretation" and, hence, is subject to Pennsylvania's six-year statute of limitations. *Id.* at 1181-82.

Allstate argues that, even under the six-year limitations period, the converted agent plaintiffs' anti-cutback claim based on the December 1994 amendment is time barred because that claim was not brought within six years of the effective date of that amendment. Allstate, however, fails to address the converted agent plaintiffs' anti-cutback claim based on the 1996 amendment, which alleges that: (a) Allstate's characterization of their present status notwithstanding, they are, in fact, still employees;

---

[3] By contrast, ERISA specifically provides that a claims for breach of fiduciary duty must be brought "after the earlier of (1) six years after . . . the date of the last act which constituted a part of the breach or violation . . . or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113.

7

and (b) by excluding these employees from the Plan's definition of employee and, thereby, excluding any service they provide to Allstate under the R3001 contract as "service" for purposes of determining eligibility for early retirement benefits, the 1996 amendment violates the anti-cutback rule. (¶¶ 68-70 & 100-101.) The complaint was brought within six years of the adoption of the 1996 amendment. Accordingly, even if Allstate is correct in its argument that the converted agent plaintiffs' anti-cutback claim based on the December 1994 amendment is time barred, Count I cannot be dismissed because their claim based on the 1996 amendment was plainly brought within the statute of limitations.

As for the converted agent plaintiffs' claim based on the December 1994 amendment, Allstate's argument that it is time barred reflects a fundamental misunderstanding of the time when a non-fiduciary claim accrues under ERISA. "[T]he general rule in an ERISA action is that a cause of action [for a non-fiduciary claim] accrues after a claim for benefits has been made and has been formally denied." *Union Pac. R.R. v. Beckham*, 138 F.3d 325, 330 (8th Cir, 1998).[4] In cases without a formal denial of benefits, the statute of limitations may begin to run under the discovery rule "'when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary.'" *Id.* at 330.[5]

---

[4] *See also Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 51-52 (1st Cir. 1999); *Laurenzano v. Blue Cross & Blue Shield of Mass. Inc. Retirement Income Trust*, 134 F. Supp. 2d 189, 208 (D. Mass. 2001); *Kiefer v. Ceridian Corp.*, 976 F. Supp. 829, 842 (D. Minn. 1997).

[5] *See also Frazier v. Hairston*, 2001 U.S. Dist. LEXIS 12848, at *7 (E.D. Pa. Aug. 23, 2001); *Laurenzano*, 134 F. Supp. 2d at 208-09 ("Under the discovery rule, a denial of benefits need not be formal, so long as the denial is clear."); *Devito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F. Supp. 258, 264 (S.D.N.Y. 1997).

In this case, the Complaint does not specify any date on which Allstate formally denied any claim for benefits on the part of the converted agent plaintiffs, nor does Allstate allege such a specific date of denial. Indeed, the Complaint does not allege that any formal denial of benefits has yet occurred or that the converted agent plaintiffs have yet made a claim for benefits. Accordingly, Allstate's argument that the statute of limitations has run in this case must be premised on the proposition that it clearly and unequivocally repudiated the converted agent plaintiffs' claim for benefits more than six years before the Complaint was filed. To make this argument, Allstate must maintain that the statute of limitations began to run when it adopted the unlawful December 1994 amendment. Allstate cannot, however, cite a single case in which a court has held that the limitations period for a non-fiduciary claim challenging the legality of a plan provision runs from the date the plan provision was adopted and, indeed, every court that has addressed the issue has rejected that proposition.[6] Even in cases involving a fiduciary claim in which the limitations period runs from the date of the "violation or breach" rather than from the date of injury, the courts have held that the limitations period runs from the time of "the wrongful application of the [anti-cutback] amendment," not from the time of "passage of the inoperative amendment" or from when the plaintiff "found out that the amendment was passed." [7]

---

[6] *See, e.g.,Devito*, 975 F. Supp. at 265 ("Defendants fail to cite a single case in which the statute of limitations for a non-fiduciary duty ERISA claim accrued at the date of the plan's amendment or enactment."); *Laurenzano*, 134 F. Supp. 2d at 209-10; *Kiefer*, 976 F. Supp at 843.

[7] *Meagher v. International Assoc. of Machinists & Aerospace Workers Pension Plan*, 856 F.2d 1418 (9th Cir. 1988) (holding that limitations period for anti-cutback claim cannot run before amendment is wrongfully applied, because under section 1054(g) no violation occurs until accrued benefits are "decreased by an amendment of the plan"); *see also Zeigler v. Connecticut General Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990). Defendants cite *International Union of Electrical, Salaried, Machine and Furniture Workers v. Murata Erie North American*, 980 F.2d

The decision in *Laurenzano v. Blue Cross & Blue Shield of Massachusetts Inc. Retirement Income Trust*, 134 F. Supp.2d 189, 207 (D. Mass. 2001), is squarely on point. In that case, plaintiffs brought a claim under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), seeking "appropriate equitable relief" to redress injuries resulting from a plan provision that excluded a cost-of-living adjustment from the calculation of lump-sum distribution benefits in violation of ERISA. The court acknowledged that, in the case of each class member who joined the plan before 1976, the claim "arose" when the unlawful plan provision was adopted in 1976 and, in the case of each member who joined after 1976, it arose "as soon as he joined the plan" because that was the point at which "he could have forced the Plan to conform with ERISA." *Id.* at 208. Nonetheless, the court rejected the notion that the statute of limitations on a section 502(a)(3) claim to bring a plan into conformity with the requirements of ERISA runs from the date when the wrong occurred, *i.e.* when the claim arose. The court explained that, "given the particular limitations" that the plan put on lump sum distributions, it was "totally speculative" whether a class member who was a participant when the illegal provision was adopted or who later joined the plan would ever become "eligible for, much less receive, a lump sum distribution." *Id.* at 209. Accordingly, the Court held that "the class members did not receive a clear denial of their benefits" and "their cause of action did not accrue," until they "received [their] lump sum distribution." *Id.* at 209-10.[8]

---

889 (3rd Cir. 1992), incorrectly for the proposition that the statute of limitations for a non-fiduciary ERISA claim based on an unlawful plan amendment runs from the date of the amendment. In reality, *Murata* involved a breach of fiduciary claim under § 1113 and held that the limitations period for such a claim accrues from the time when the breach occurred or when the plaintiff attained actual knowledge of the breach – not from the date of the plan provision at issue. 980 F.2d at 900-01.

[8] In support of this conclusion, the *Laurenzano* court further noted that though 29 U.S.C. §

Similarly, in *Devito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F. Supp. 258 (S.D.N.Y. 1997), defendants argued that a claim based upon a plan amendment that "backloaded" pension benefits in violation of ERISA was untimely because it had not been brought within six years of the effective date of that amendment. After noting that defendants had been unable "to cite a single case in which the statute of limitations for a non-fiduciary duty ERISA claim accrued at the date of the plan's amendment," the Court expressly refused "to adopt a new legal standard" that would run the limitations period from that date. *Id.* at 265.[9] As the court correctly noted, such a standard would require "participants and beneficiaries, likely unfamiliar with the intricacies of pension plan formulas and the technical requirements of ERISA, to become watchdogs over potential Plan errors and abuses." *Id.* Moreover, were a court to regard the date of plan amendment as the date of accrual, an individual who joined the plan years after the adoption of the unlawful amendment would be deprived of any opportunity to challenge that amendment - a scenario that the *DeVito* court properly characterized as "unacceptable." *Id.* at 265 n.8. Accordingly, the court held that the limitations period did not run until the date upon which the defendants notified the participants that they were

---

1132(a)(1)(B) specifically provides that "a participant may 'clarify his rights to future benefits under the terms of the plan,'" "no court has used this language to run the statute of limitations from the date that a participant joined his plan." 134 F. Supp. 2d at 209. The court reasoned that if a cause of action challenging a defendant's interpretation of a plan provision "does not accrue ... at the first moment a participant has a legal right to maintain an action, then neither should a cause of action" challenging the legality of a plan provision "under ERISA § 502(a)(3) accrue at the earliest possible date." *Id.* at 209-10.

[9] In its decision in *DeVito*, the district court noted that the decision in *Gluck*, 960 F.2d 1168, wherein the Third Circuit stated that certain non-fiduciary claims accrued "*at the earliest*" on the date of the plan's amendment, is not to the contrary. 975 F. Supp. at 265 n.8. As the *DeVito* court correctly pointed out, far from ruling that those claims, in fact, accrued on the date of the amendment, the Third Circuit expressly "declined to determine when the claims actually accrued because they were, in any event, interposed within six years after the adoption of the amendment." *Id.*

11

rejecting the plaintiffs' claim that the plan's formula for calculating benefits violated ERISA. *Id.* at 264; *see also Kiefer*, 976 F. Supp. at 843 (holding that non-fiduciary claim based on allegedly unlawful cutback amendment did not accrue until plaintiffs "were clearly told that the benefits had been correctly computed").

In this case, the argument against running the statute of limitations from the time the unlawful amendment was adopted is even stronger than it was in *Laurenzano* and *DeVito*. As in *Laurenzano*, it was "totally speculative" in December 1994 that the amendment's alteration of the definition of "credited service" would ever be applied to the converted agent plaintiffs. At that time, those plaintiffs had no intention of converting to exclusive agent status. Nor could those plaintiffs have possibly predicted that years after the amendment was adopted Allstate would coerce them to convert to such status. Thus, inasmuch as they had no reason to anticipate when the December 1994 amendment was adopted that it would ever be applied to them, the adoption of that amendment could not have constituted a clear and unequivocal repudiation of plaintiffs' present claim to credit for the service they are now giving Allstate as exclusive agents. To hold that the limitations period accrued when the December 1994 amendment was adopted would be to put "lay participants and beneficiaries" to a totally unrealistic burden of vigilance under which they would have to "be constantly alert for errors and abuses that might" conceivably one day "give rise to a claim and start the statute of limitations running." *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir. 1989); *see also Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1498 (9th Cir. 1984) (same); *Laurenzano*, 134 F. Supp.2d at 210; *Kiefer*, 976 F. Supp. at 843.

12

Moreover, even if the running of the limitations period for a non-fiduciary claim ever could be tied to the date of adoption of an unlawful plan provision, nothing in the Complaint would compel the conclusion that Count I is time barred. While the Complaint alleges that the amendment altering the definition of "credited service" was effective in December 1994, nowhere does it allege that the amendment was adopted in December 1994 and, in fact, plaintiffs do not know when it was adopted. Moreover, nowhere does the Complaint allege that the converted agent plaintiffs were notified of the substance of the amendment and, in fact, plaintiffs contend that the evidence will establish that Allstate never informed the converted agent plaintiffs that the December 1994 amendment included a provision relating to the definition of "credited service."[10] Accordingly, nothing in the Complaint compels the conclusion that, as of December 1994, the converted agent plaintiffs knew or had reason to know that Allstate had unlawfully amended the plan to cut back on their early retirements benefits and, hence, that the statute of limitations began to run from that date.[11]

Allstate contends that the Eighth Circuit's decision in *Beckham* somehow supports its view that the statute of limitations in a case challenging an unlawful plan amendment runs from the date of the amendment. In that case, which involved a

---

[10] In support of its argument that the converted agent plaintiffs knew of the unlawful plan amendment as of December 1994, Allstate relies on the allegation in paragraph 67 of the Complaint that "Allstate instructed its employee agents . . . service [under the R3001 contract] would not count under the Pension Plan." Nowhere in paragraph 67, however, is it alleged when Allstate issued this instruction and nowhere does that paragraph allege that Allstate ever informed the converted agent plaintiffs that the December 1994 amendment altered the definition of "credited service."

[11] *Cf. Murata*, 980 F.2d at 901 (holding that plaintiff did not have "actual knowledge of a potential breach of fiduciary duty claim" when defendant amended the plan documents because "the notice it provided to the plaintiffs . . . did not discuss the content of the amendment," but rather "simply stated, in general terms, that the Plans had been amended").

challenge to defendants' interpretation of a plan provision rather than to its legality, the defendants "clearly and unequivocally informed the claimants" at the time the company was acquired in August 1988 that "post-acquisition" service would not count as "credited service" under the acquired company's plan and that "pre-acquisition service" would not count as "credited service" under the acquiring company's plan. 138 F.3d at 331. The situation of the converted agent plaintiffs in this case bears no resemblance to that of the plaintiffs in *Beckham*. Unlike the converted agent plaintiffs in this case, all of the plaintiffs in *Beckham* knew as much as they would ever know about their injury at the time of the acquisition: they knew both how defendants were interpreting the plan and that they were imminently to be denied benefits under that interpretation. Here, by contrast, the converted agent plaintiffs were never notified about the content of the December 1994 amendment that altered the definition of "credited service" and, even if they had been aware of the amendment, they had no way of knowing that they would one day be forced to become exclusive agents and that the amendment would be used to cut back their early retirement benefits in violation of § 1054(g) of ERISA. Accordingly, the decision in *Beckham* neither compels nor even supports the conclusion that the anti-cutback claims of the converted agent plaintiffs are time barred as a matter of law.

B.    **Neither Count III Nor Count IV Is Time Barred.**

Allstate asserts (at 15) that Count III is time barred because the plaintiffs "knew of the change in early retirement benefits as far back as November 1991 when Allstate 'purported' to adopt plan amendments containing this provision." Likewise, Allstate asserts (at 16) that plaintiffs' claim based on failure to give notice of the November 1991

14

amendment is time barred because that claim was not brought within six years of the effective date of that amendment.

Allstate's argument that the limitations period has run on plaintiffs' claims relating to the unlawful amendment cutting back "beefed-up" early retirement benefits fares no better that Allstate's argument that the converted agent plaintiffs' anti-cutback claim based on its alteration of the definition of "credited service" is time barred. Again, the fundamental flaw in Allstate's argument is the assumption that the statute of limitations on both of plaintiffs' beef-up claims runs from November 1991. However, just as it was "totally speculative whether or not [any of the plaintiffs] would be eligible for, much less receive, a lump sum distribution" at the time the unlawful plan provision became effective in *Laurenzano*, 134 F. Supp.2d at 209, so too was it "totally speculative" whether or not any of the plaintiffs would ever become eligible for or seek beefed-up early retirement benefits at the time Allstate adopted the November 1991 amendment phasing out the beef-up. Thus, the limitations period on a plaintiff's anti-cutback claim based on the wrongful application of the amendment does not begin to run until that plaintiff becomes eligible for beefed-up early retirement benefits and, upon attaining such eligibility, is clearly notified that his or her claim for those benefits has been rejected. *See, e.g., Laurenzano*, 134 F. Supp.2d at 210; *DeVito*, 975 F. Supp. at 265. Similarly, the statute of limitations on a plaintiff's claim that the November 1991 amendment is inoperative because Allstate failed to give plaintiffs notice of that amendment does not begin to run until such time as a plaintiff attains eligibility for beefed-up benefits and is clearly notified that the amendment is being applied to reduce the amount of those benefits. As none of the plaintiffs was clearly notified of the denial

15

of their claims to beefed-up benefits after having met the eligibility requirements for those benefits, neither Count III nor Count IV is time barred.

## II.    The Doctrine Of *Res Judicata* Does Not Bar Counts III And IV.

Allstate's contention that *Scott v. Administrative Committee of the Allstate Agents Pension Plan*, 113 F.3d 1193 (11th Cir. 1997), bars plaintiffs from bringing Counts III and IV under the principles of *res judicata* is meritless. In order to establish that the claims asserted in this case are barred by the final judgment in *Scott*, Allstate must establish that this action involves the "same parties or their privies" and the "same causes of action." *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 983 (3d Cir. 1984). Allstate cannot meet either condition.

None of the plaintiffs in this case was a party in *Scott*. Relying entirely on decisions from outside the Third Circuit, Allstate argues that they are nonetheless bound by the *Scott* decision as "privies" under the doctrine of "virtual representation." The controlling principle in the Third Circuit, however, is that "virtual representation . . . requires a relationship by which the party in the [earlier] suit is the legally designated representative of the non-party." *Collins v. E.I. DuPont De Nemours & Co.*, 34 F.3d 172, 176-177 (3d Cir. 1994); *see also Philadelphia Fraternal Order of Correctional Officers v. Rendell*, 1996 U.S. Dist. LEXIS 7621, at **11-18 (E.D. Pa. May 31, 1996), *aff'd mem.,* 1997 U.S. App. LEXIS 33407 (3d Cir. Pa. Oct.21, 1997) (noting that the rule in the Third Circuit is that there must be "a legal relationship or duty between named and unnamed parties" and dismissing cases from outside the Circuit as "unpersuasive").

Allstate does not – and, indeed, cannot – contend that the parties in *Scott* were the legal representatives of the plaintiffs in this case. Rather, Allstate bases its "virtual

16

representation" argument solely upon its contention that "plaintiffs' interests are virtually identical to those of the *Scott* plaintiffs." (Def. Mem. at 18.) As the Third Circuit made clear in *Collins*, however, the mere fact that the parties may have "an identity of interests" is not sufficient to create privity. 34 F.3d at 177-78. Accordingly, the doctrine of *res judicata* does not bar plaintiffs from pursuing this action.[12]

Even if plaintiffs could somehow be regarded as in privity with the *Scott* plaintiffs, Counts III and IV would still not be barred because they do not involve the same causes of action as were at issue in *Scott*. The determination whether two suits are based on the same cause of action depends upon:

> (1) whether the acts complained of and the demand for relief are the same . . . ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . . ; and (4) whether the material facts are the same.

*Athlone*, 746 F.2d at 984; *see also Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991). Applying these factors, it is clear that this case involves causes of action that are wholly different from those at issue in *Scott*.

In *Scott*, three plaintiffs brought suit challenging certain amendments to the Pension Plan, which reduced the percentage rate of benefit accruals, eliminated a social security offset and raised the normal retirement age, on the ground that Allstate failed to provide prior notice of those amendments in accordance with § 204(h) and the procedures

---

[12] In further support of its meritless *res judicata* argument, Allstate cites *Swain v. Allstate Insurance Co.*, No. 96-998 (S.D. Fla. Jan. 22, 1999), wherein a Florida district court held that certain plaintiffs were bound by the judgment in *Scott* based on an expansive view of the doctrine of "virtual representation" that has been rejected by the Third Circuit. Moreover, even under that expansive view, the *Swain* court based its finding of virtual representation upon the fact that the *Swain* plaintiffs filed a motion to intervene in *Scott*, that they had expressed a willingness to be bound by the outcome in that case, and that they had engaged in tactical maneuvering – factors that do not exist in this case. Slip op. at 18.

17

set forth in the applicable IRS Guidelines (IRS Notice 88-131 and Revenue Proc. 89-65). 113 F.3d at 1198 & n.13. Apart from the fact that causes of action that are at issue in this case and those presented in *Scott* are based upon amendments that were adopted at the same time (November 1991), they bear absolutely no resemblance to one another.

The act complained of and theory of relief in Count III – that the beef-up amendment has been wrongfully applied to cutback plaintiffs' early retirement benefits in violation of § 1054(g) – is entirely different from the act complained of and theory of relief in *Scott* – that Allstate failed to give proper notice of other amendments that it had allegedly adopted to bring the Plan into compliance with the Tax Reform Act of 1986 ("the TRA amendments").[13] Moreover, the relief requested for Count III – invalidation of the unlawful beef-up amendment – was not and could not have been requested by the plaintiffs in *Scott* had they prevailed on their improper notice claim. Finally, and needless to say, the material facts that plaintiffs in this case will need to prove in order to establish that the beef-up amendment constituted an unlawful cutback of early retirement benefits are entirely different from the facts that the *Scott* plaintiffs needed to prove in order to establish that Allstate failed to give proper notice of the TRA amendments.

Similarly, the improper notice claim in Count IV of the complaint is entirely different from the improper notice claim at issue in *Scott*. Count IV alleges that Allstate failed to give plaintiffs prior notice of the content of the beef-up amendment. As set forth

---

[13] Indeed, Allstate concedes (at 5) that far from having anything to do with the beef-up amendments at issue in this case, the "amendments at issue in *Scott* were those that (i) changed the benefit formula from 2.5% compensation with a social security offset to 2.0% of compensation with no Social Security offset, and (ii) changed the normal retirement age under the Plan from age 63 to age 65." The same amendments were the subject of plaintiffs' challenge in *Swain*, which, like *Scott*, did not involve any issues relating to the validity of the beef-up amendment.

above, the claims at issue in *Scott* did not involve the beef-up amendment at all and the notice challenge that was made in that case involved the more difficult and technical issue of whether Allstate gave notice of the TRA amendments in accordance with the applicable IRS guidelines. As Count IV involves the adoption of a different amendment, a different theory of recovery, different relief and different material facts than were at issue in *Scott*, there is no sense in which the causes of action in the two cases could be regarded as the same.

The only claim in *Scott* that had anything to do with the beef-up provisions of the Pension Plan was a claim brought only by the lead plaintiff, Ben A. Scott, alleging that he was entitled to beefed-up early retirement benefits because he was over 55 years of age and had more than twenty years of continuous service at the time he took up Allstate on its offer to convert to NEA status in 1992. The district court rejected that claim based on its acceptance of Allstate's argument that Scott had not fulfilled the requirements for the beef-up because, as a converted agent, he remained "in the service" of Allstate and, hence, had not retired within the meaning of the Plan. *Scott*, 1995 U.S. Dist. LEXIS 20564 at *27. While his claim was based upon allegations that he had been wrongfully denied benefits under the Plan's beef-up provision, Scott did not challenge the November 1991 amendment to that provision phasing out the beef-up. Nor could he have. At the time Scott converted to exclusive agent status in 1992, he was already 62 years of age. *Id.* at *6. Accordingly, had he retired early in accordance with the Plan, he would only have been entitled to one year of beefed-up benefits and, hence, the amount of his accrued beef-up benefits would have been unaffected by the November 1991 amendment phasing

out the "beef-up."[14]

As the parties and the causes of action in this case are entirely different from those in *Scott*, none of plaintiffs' claims is barred under the doctrine of *res judicata*.[15]

### III.    Plaintiffs Have Alleged A Reduction In Accrued Benefits Within The Meaning Of Section 204 Of ERISA.

Allstate maintains (at 20) that Counts I and III must be dismissed because "plaintiffs do not allege a reduction in accrued benefits." Allstate is wrong.

ERISA § 204(g) expressly prohibits "a plan amendment which has the effect of - (A) eliminating or reducing an early retirement benefit or retirement-type subsidy . . . with respect to benefits attributable to service before the amendment." 29 U.S.C. § 1054(g)(2). By virtue of this provision, any plan amendment which reduces early retirement benefits is to be treated as an amendment prohibited by the anti-cutback rule, "i.e., as a plan amendment which reduces accrued benefits." *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1144 (3rd Cir. 1993).[16] Section 204(g) not only protects against amendments that reduce the amount of early retirement benefits, but also against

---

[14] Since the beef-up was gradually phased out over an eight-year period between 1991 and 1999, an agent who retired with twenty years of continuous service in 1992 would only be affected by the beef-up if he were then eligible for more than seven years of beefed-up benefits. *See supra.*, at 3.

[15] On the other hand, in view of the successful position it took in *Scott* that its agents remain "in the service" of Allstate following their conversion to exclusive agent status, Allstate is itself judicially estopped from arguing that the converted agent plaintiffs have not been providing "service" to Allstate since their conversion to such status. *See Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 360 (3d Cir. 1990) (stating that judicial estoppel, which is intended to prevent parties from playing "fast and loose" with courts by asserting inconsistent positions, does not require privity).

[16] *See also Bellas v. CBS, Inc.*, 221 F.3d 517, 524 (3d Cir. 2000) ("There is no question but that a standard early retirement benefit, provided exclusively upon the satisfaction of certain age and/or service requirements, is an accrued benefit that is protected by section 204(g)."); *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 984 (6th Cir. 2000); *Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1036 (7th Cir. 1996).

amendments that alter the conditions for attaining eligibility for early retirement benefits. *See, e.g.*, *Michael v. Riverside Cement Co. Pension Plan*, 266 F.3d 1023, 1028 (9th Cir. 2001) ("that provision precludes an amendment that nullifies the condition on which the early retirement benefits were paid"); *Angh v. Allsteel, Inc.*, 96 F.3d 1033, 1036-37 (7th Cir. 1996) (holding that plaintiffs state a claim under section 204(g) where amendments changed conditions for receipt of early retirement benefits); *Abels v. Titan Int'l*, 85 F. Supp. 2d 924, 938 (S.D. Iowa 2000) (holding that an amendment to a plan's credited service provisions that does not allow participants to "grow into" early retirement benefits is a "clear-cut violation of section 204(g)").

Citing *Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990), Allstate argues (at 20-21) that anyone who has not, as of the time of a plan amendment, met the pre-amendment requirements to receive the benefit has "no protected interest in the early retirement benefit." How Allstate discerns this principle from *Berger* is a mystery.

In *Berger,* the Third Circuit recognized that, as reflected in the legislative history, the anti-cutback rule

> generally protects the accrual of benefits with respect to participants who have met the requirements for a benefit as of the time a plan is amended *and participants who subsequently meet the preamendment requirements.* The bill does not, however, prevent the reduction of a subsidy in the case of a participant who, *at the time of separation from service* (whether before or after the plan amendment) has not met the preamendment requirements.

911 F.2d at 918 (emphasis added) (quoting S. Rep. No. 575, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N. 2547, 2574)). In *Berger*, none of the employees had met the eligibility requirements for early retirement benefits at the time of their "separation from service" and, hence, the Third Circuit held that section 204(g) was inapplicable. *Id.*

21

Here, by contrast, the plaintiffs allege that, under Allstate's own interpretation of the Plan, they have not been "separated from service" and, hence, that they are still able to meet or "grow into" the pre-amendment eligibility requirements for early retirement benefits.

In its decisions since *Berger*, the Third Circuit has made it crystal clear that section 204(g) protects the right of an employee who has not fulfilled the eligibility requirements for early retirement at the time of a plan amendment to "grow into" those benefits after the effective date of the amendment. *See Bellas v. CBS, Inc.*, 221 F.3d 517, 524 (3d Cir. 2000) ("if . . . amendments reduced or eliminated early retirement benefit or subsidies, the amendments would have had to allow employees who remained employed by [the company] to 'grow into' the benefit"); *Gillis*, 4 F.3d at 1147 (concluding that § 204(g) protects rights of plaintiffs who "were not separated from service" to "continue to accumulate years of service" for purposes of attaining eligibility for early retirement benefits).[17]  Accordingly, "employees . . . who complain about a cut-back of early retirement benefits have stated a claim under § 204(g), as long as each employee satisfies (either before or after the plan amendment) the relevant eligibility requirements in place at the time of the amendment." *Gillis*, 4 F.3d at 1037.

Plaintiffs have alleged that converted agents remain in the service of Allstate.  (¶¶ 60, 61, 95.)  Indeed, Allstate took this very same position in the *Scott* case that it relies

---

[17]  *See also Ahng*, 96 F.3d at 1036 ("The courts of appeals . . . have uniformly held that as long as an employee satisfies, or will be able to satisfy, the eligibility requirements of the early retirement benefit in effect prior to the amendment, § 204(g) protects the benefit."); *Corcoran v. Bell Atlantic Corp.*, 1997 U.S. Dist. LEXIS 14662, at * 11 (E.D. Pa. Sept. 23, 1997) (holding that plaintiffs who are entitled to qualify for benefits under the terms of the pre-amendment plan *must be allowed to do so by providing years of post-amendment service*) (emphasis added), *aff'd*, 159 F.3d 1350 (3d Cir. 1998).

on so heavily. *See* notes 2 and 15 *supra*. The Complaint also alleges that a number of the named plaintiffs who are still in the service of Allstate have already provided 20 years of continuous service. (¶¶ 14, 16, 21, 26, 43.) Other named plaintiffs who remain in the service of Allstate (¶¶ 17-18, 22-23, 26-29, 31-32, 34, 41-42, 44) could in the future satisfy the Plan's pre-amendment service requirements for early retirement benefits. (¶¶ 51-52.) Plaintiffs, therefore, have alleged all that is necessary to invoke the protections afforded under § 204(g).

**IV.   Plaintiffs Need Not Allege That They Suffered Substantive Harm In Order To Assert A Claim For Failure To Give Prior Notice In Accordance With Section 204(h).**

Allstate insists (at 23) that the claims in Count IV should be dismissed because plaintiffs cannot "show" that they have suffered a substantive harm from the lack of notice. Allstate's contention does not conform with the plain language of section 204(h), which expresses no such condition on the revocation of a purported amendment cutting back benefits for which the required notice is not provided.[18]

Allstate's argument rests solely on the district court's decision on summary judgment in *Allred v. First Nationwide Financial Corp.*, 1994 U.S. Dist. LEXIS 21538 (N.D. Cal., May 2, 1994). In *Allred*, the district court relied exclusively on prior Ninth Circuit decisions focusing on other reporting and notice provisions in ERISA and

---

[18]  Section 204(h)(1) states that

> [a] plan may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after the adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date.

29. U.S.C. §1054(h)(1).

23

concluded that "w[h]ile these cases do not specifically consider § 204, as modified by IRS requirements, they create an atmosphere in which these ERISA notice violations should be remedied equitably." *Id.* at *15-16. The district court determined that because invalidation of the amendments at issue "would have the likely effect of disqualifying the Plan under the Internal Revenue Code . . . [which] would have the drastic tax consequences for other plan participants, as well as for plaintiffs," the plaintiffs would be required to "show substantive harm from lack of § 204 notice . . . in order to be entitled to remedial relief." *Id.* at *16-17.

Given the plain language of § 204(h), the *Allred* court's finding that substantive harm must be shown in order to invalidate an amendment based on failure to provide prior notice is dubious at best.[19] Where, as here, however, the amendment at issue is not necessary to bring a plan into compliance with tax qualification requirements, the courts have consistently applied the unambiguous language of section 204(h) to invalidate plan

---

[19] The legislative history of section 204(h) reveals that Congress was well aware of the tax qualifications provisions but nevertheless chose to provide a flat rule invalidating amendments reducing benefit accruals that are implemented without prior notice:

> The conference agreement provides that an amendment to reduce significantly future benefit accruals under a plan is not effective unless, subsequent to the adoption of the amendment and at least 15 days prior to the effective date of the amendment, the plan administrator gives written notice of the reduction of each participant in the plan . . . . The conference agreement does not affect the requirements for qualification under the Code.

H.R. Conf. Rep. No. 99-453 (1985) (cited in *Production and Maintenance Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp.*, 1989 U.S. Dist. LEXIS 8282, at *14 (S.D.Ill. Feb. 2, 1989). Perhaps recognizing the shaky ground upon which the district court's decision in *Allred* stood, the Ninth Circuit based its affirmance solely upon its finding that the notice provided in that case did, in fact, conform to the requirements of § 204(h). *See Allred v. First Nationwide Fin. Corp.*, 1996 U.S. App. LEXIS 25695 (9th Cir. Sept. 27, 1996).

24

amendments without requiring plaintiffs to allege or show any substantive harm.[20]  For

instance, in *Koenig v. Intercontinental Life Corp.*, 880 F. Supp. 372  (E.D. Pa. 1995), this

Court held that it had no choice but to grant plaintiffs' motion seeking an order

invalidating a plan amendment altering the formula for calculating benefits "because the

purported amendment did not comply with the notice" requirements of section 204(h).

*Id.* at 376.  Similarly, in the present case, plaintiffs are not required to prove that they

suffered substantive harm in order to prevail on their claim that the beef-up amendment

must be invalidated for failure to give prior notice in accordance with section 204(h).

## V.   Plaintiffs Have Adequately Alleged A Claim For Breach Of Fiduciary Duty.

### A.   Plaintiffs Have Alleged Actionable Misrepresentations And Omissions.

In seeking to dismiss plaintiffs' breach of fiduciary duty claim under Count II,

Allstate chooses to ignore plaintiffs' allegations and miscomprehends the nature of their

claims.  Quoting portions of this Court's decision in *Bunnion v. Consolidated Rail Corp.*,

108 F. Supp.2d 403 (E.D. Pa. 1999), *aff'd mem.*, 230 F. 3d 1348 (3d Cir. 2000), Allstate

maintains (at 23-24) that only claims of "affirmative misrepresentations" about the terms

of the Plan are cognizable under ERISA's fiduciary duty provisions.  In *Bunnion,* this

Court did state that "[a] fiduciary breaches [its fiduciary obligations] if it makes

---

[20] *See Davidson v. Canteen Corp.*, 957 F.2d 1404, 1409 (7th Cir. 1992) ("The amendment of a retirement plan to deprive some of the plan's participants of a benefit they were promised, when advance notice would have allowed them to prevent injury from the amendment, is exactly what § 204(h) clearly outlaws."); *Production and Maintenance Employees' Local 504, Laborers' Int'l Union v. Roadmaster Corp.*, 954 F.2d 1397, 1404 (7th Cir. 1992) ("Section 204(h)'s language is also clear and imperative:  a plan 'may not be amended' absent proper notice.  [Defendant's] violations of §§ 204 (g) and (h) rendered the . . . amendment ineffective."); *Abels,* 85 F. Supp. 2d at 935, 937*; Copeland v. Geddes Ass'n. Retirement Income Plan,* 62 F. Supp. 2d 673, 678-79 (N.D.N.Y. 1999); *DiCioccio v. Duquesne Light Co.*, 911 F. Supp. 880, 894-95, 899 (W.D. Pa. 1995); *Pickering v. USX Corp.*, 809 F. Supp. 1501, 1564-65 (D. Utah 1992).

affirmative material misrepresentations to plan participants or beneficiaries about the terms of the plan." 108 F. Supp.2d 403, 411-12 (E.D. Pa. 1999). However, Allstate ignores the ensuing comment that "[a] fiduciary may also breach its duties if it fails to provide material information to plan participants or beneficiaries when it knows its silence might cause them harm." *Id.* at 412 (*citing In re Unisys Corp. Retiree Medical Benefits "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995)).[21] In this case, plaintiffs have pled sufficiently both affirmative misrepresentations and omissions on the part of Allstate and the Administrator.

Allstate construes the Complaint (at 24) to allege misrepresentations only with regard to the content of the December 1994 amendment and seeks dismissal solely on the grounds that its representations were true. Whether Allstate's representations accurately described the December 1994 amendment to the Plan, however, is entirely irrelevant to plaintiffs' breach of fiduciary claim. That claim is based not on Allstate's misrepresentations concerning the language of that amendment, but upon Allstate's misrepresentations and omissions concerning plaintiffs' entitlement to benefits under the Plan.

In particular, the Complaint alleges that when Allstate altered the definition of "credited service" in 1994 and added a new provision defining "employee" in 1996, Allstate and the Administrator knew or should have known that, notwithstanding those amendments, all agents who at that time were participants in the Plan were entitled under

---

[21] *See also Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 174 (3d Cir. 1997) ("if the fiduciary has reason to believe that a beneficiary is eligible for benefits that are not the precise subject of his or her request, the fiduciary may violate its duties if it fails to provide information about those benefits"); *Bixler v. Central Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993).

26

ERISA to "grow into" their early retirement benefits if they continued to provide service to Allstate. (¶¶ 109-110.) The Complaint alleges not simply that Allstate and the Administrator neglected to inform plaintiffs of this right under ERISA but, rather, that Allstate intentionally misled plaintiffs into believing that they had nothing to gain (with respect to the Plan) by remaining with Allstate all with the goal of inducing them to leave (¶ 108), and that the Administrator perpetuated this misrepresentation by failing to correct it and by taking actions that were consistent with the misrepresentation. (¶ 112.) And, finally, the Complaint alleges that, in reliance upon these representations, retired agents left the service of Allstate completely, thereby foregoing their opportunity to become eligible for valuable early retirement benefits. (¶¶ 113-114.) In sum, the plaintiffs have more than adequately alleged facts to support their claims of misrepresentation.

**B.      The Relief Plaintiffs Seek Is Equitable In Nature.**

Allstate argues (at 26) that plaintiffs' breach of fiduciary duty claim must be dismissed because they seek monetary damages as a remedy for that breach. That argument might be persuasive if the relief plaintiffs were seeking was, in fact, legal in nature. It is not.

Under section 502(a)(3) of ERISA, an action may be brought:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this [Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of [Title I of ERISA].

29 U.S.C. § 1132(a)(3). Allstate posits that in *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), the United States Supreme Court concluded that "equitable relief" available under this section does not include monetary damages. But, as the Third Circuit

27

recognized in *Hein v. Federal Deposit Ins. Corp.*, 88 F.3d 210 (3d Cir. 1996), "*Mertens* does not necessarily bar all forms of monetary damages." *Id.* at 223-24 & n.11; *see also Ream v. Frey*, 107 F.3d 147, 153 n.5 (3d Cir. 1997) ("§ 502(a)(3) does not necessarily bar all forms of money damages.").

The only issue the Supreme Court decided in *Mertens* was "whether a nonfiduciary who knowingly participates in the breach of a fiduciary duty imposed by ERISA is liable for losses that an employee benefit plan suffers as a result of the breach." 508 U.S. at 249. The Supreme Court contemplated the possibility that monetary relief could be made available under section 502(a)(3), but doubted that such an award would be appropriate in an action against a nonfiduciary. *Id.* at 253. The Court recognized, however, that the forms of relief typically available in equity included restitution and that such relief was available under section 502(a)(3) in an action against a fiduciary. *Id.* at 256 & 262. The Complaint alleges that Allstate and the Administrator are fiduciaries. (¶¶ 103-105.)

The Supreme Court's more recent decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 122 S.Ct. 708 (2002), examined the issue of restitution in greater detail. In *Great-West*, an insurance company that was obligated to pay medical expenses under a plan brought suit under section 502(a)(3) against a participant in order to enforce a provision in the plan that required participants to reimburse the plan from any settlement proceeds. In analyzing whether the company was entitled to recover money from the participant, the Supreme Court distinguished legal and equitable forms of restitution:

28

> Restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case, and whether it is legal or equitable depends on the basis for the [plaintiff's] claim and the nature of the underlying remedies sought.

*Id.* at 714 (quoting *Reich v. Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994)).[22]

The Supreme Court rejected the insurance company's claim, construing it as one that "seek[s], in essence, to impose personal liability . . . for a contractual obligation to pay money – relief that was not typically available in equity." *Great-West,* 122 S.Ct. at 712-13. The Court, however, made clear that restitution is a remedy that is available for claims that traditionally lie in equity, including, for instance, where a plaintiff seeks to recover from a defendant money or property belonging "in good conscience" to the plaintiff through the enforcement of a constructive trust or equitable lien. *Id.*

Unlike the claims in *Great-West*, the underlying breach of fiduciary duty claims contained in Count II are precisely the kind of claims that would lie in equity. As stated unequivocally in the Restatement of Trusts, "the remedies of the beneficiary against the trustee are exclusively equitable." Restatement (Second) of Trusts § 197. The Restatement also provides that the equitable remedies of a beneficiary include a suit "to compel the trustee to redress a breach of trust," such as a violation of the trustee's duty of loyalty. *Id.* §§ 199(c), 201, 206(a).

---

[22] *See Reich,* 33 F.3d at 756 ("If the beneficiary of a trust sought an accounting for the profits of a defalcating trustee – a form of restitutionary relief – the accounting if ordered would be ordered in a suit in equity, and the remedy thus would be equitable, while a suit seeking identical relief against a nonfiduciary would normally be a suit at law and the relief sought therefore legal.")

29

The remedies that plaintiffs seek in order to redress the breaches of fiduciary duty that are at issue in this case are, thus, necessarily equitable. Indeed, the relief requested by plaintiffs in this case – the payment of benefits to which they are entitled under the terms of the trust – is just the kind of equitable restitution that would ordinarily give rise to a constructive trust and that may be awarded under section 502(a)(3). *See* Restatement of Restitution §§ 1 (d), 197 (when a fiduciary in violation of his duty to the beneficiary receives or retains a profit, he holds what he receives under a constructive trust for the beneficiary and can be compelled to surrender the profit).[23] The Third Circuit has concluded that these types of remedies are appropriate under section 502(a)(3) and nothing in *Mertens or Great-West* compels a different conclusion. *See In re Unisys Corp.,* 57 F.3d at 1269 (holding that reimbursement of back benefits and "restoration of status" are equitable remedies); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 238-39 (3d Cir. 1994) (noting that allegations that defendant breached its fiduciary duty provides support for award of lost benefits.).[24]

---

[23] *See also* The Restatement of Restitution § 1 ("A person who has been unjustly enriched at the expense of another is requires to make restitution to the other."); The Restatement (Second) of Trusts § 205 ("The trustee is subject to such liability as necessary to prevent the trustee from benefiting personally from the breach of trust.")

[24] Courts outside of the Third Circuit have similarly concluded that forms of relief Plaintiffs seek here may be awarded under ERISA. *See, e.g., Howe,* 36 F.3d at 756 (8th Cir. 1994) (payments of money that plaintiffs would have received if they had *remained* members of the plan as restitution) *aff'd* 516 U.S. 489 (1993); *Schwartz v. Gregori,* 45 F.3d 1017, 1022-23 (6th Cir. 1995) (holding that back pay and front pay are equitable remedies under ERISA); *Laurenzano,* 134 F. Supp.2d at 196 (noting that courts have awarded monetary damages as restitution for fiduciary breach violations under ERISA); *Resner v. ARC Mills,* 1996 U.S. Dist. LEXIS 14362 (S.D.N.Y. Sept. 30, 1996) (recognizing that monetary awards may be equitable if they are restitutionary, incidental to or intertwined with injunctive relief).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted,

Steven H. Doto

Steven H. Doto (PA Bar No. 48486)
ZEVNIK HORTON LLP
620 Chestnut Street
Tenth Floor
Philadelphia, Pennsylvania 19106
Telephone: (215) 440-8450
Facsimile: (215) 440-8459

Michael Lieder (DC Bar No. 412029)
Daniel Wolf (DC Bar No. 429697)
Susan Coler (MN Bar No. 217621)
Mark Amadeo (WI Bar No. 1026975)
SPRENGER & LANG, PLLC
1614 Twentieth Street, N.W.
Washington, D.C. 20009
Telephone: (202) 265-8010
Facsimile: (202) 332-6652

Paul Anton Zevnik (PA Bar No. 140986)
Michael J. Wilson (DC Bar No. 421274)
ZEVNIK HORTON LLP
Ninth Floor
Washington, D.C. 20004
Telephone: (202) 824-0950
Facsimile: (202) 824-0955

Thomas W. Osborne (DC Bar No. 428164)
Mary Ellen Signorille (DC Bar No. 942474)
AARP Foundation Litigation
601 E Street, N.W.
Washington, D.C. 20049
Telephone: (202) 434-2060
Facsimile: (202) 434-6424

*Counsel for Plaintiffs and the Class*

31

## CERTIFICATE OF SERVICE

I, Steven H. Doto, hereby certify that on April 10, 2002, I caused a copy of the foregoing *Plaintiffs' Memorandum In Opposition To Defendants Motion To Dismiss Complaint* to be served upon the following via hand delivery:

Edward F. Mannino, Esquire
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
One Commerce Square
2005 Market Street
Suite 2200
Philadelphia, PA 19103

John B. Langel, Esq.
Ballard, Spahr, Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103-7599

FILED

APR 1 0 2002

MICHAEL E. KUNZ, Clerk

_____ Dep. Clerk

And upon the following via Federal Express 2-Day Service:

Donald R. Livingston, Esq.
Akin, Gump, Strauss, Hauer & Feld, L.L.P.
1333 New Hampshire Avenue, NW, Suite 400
Washington, DC 20008

Sallie G. Smylie, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

ZEVNIK HORTON LLP

By: _____

Steven H. Doto, Esquire, ID No. 48486
Zevnik Horton LLP
620 Chestnut Street, Suite 1056
Philadelphia, PA 19106
215-440-8000

*Attorneys for Plaintiffs*