## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE R. ROMERO, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 01-3894 |
| | : | |
| | : | CONSOLIDATED WITH |
| ALLSTATE INSURANCE COMPANY, | : | |
| et al., | : | NO. 01-6764 |
| Defendants. | : | NO. 01-7042 |

## <u>MEMORANDUM</u>

BUCKWALTER, S.J.                                                       April 7, 2014

Currently pending are (1) the Motion of Defendants Allstate Insurance Company, et al.

(collectively "Allstate") for Reconsideration of the Court's February 27, 2014 Summary

Judgment Order and (2) the Motion of Plaintiffs Gene R. Romero, et al. (collectively "Plaintiffs")

for Clarification or, in the Alternative, for Reconsideration.  For the following reasons, Allstate's

Motion is denied and Plaintiffs' Motion for Clarification is granted.

## I.    FACTUAL BACKGROUND

As repeatedly noted in the Court's prior opinions, the factual history of this case is long

and convoluted.  In lieu of repeating, yet again, the history underlying the present dispute, the

Court incorporates by reference the lengthy summary of facts set forth in the Court's opinion of

February 27, 2014.  <u>Romero v. Allstate Ins. Co.</u>, ___ F. Supp. 2d ___, 2014 WL 796005, at *1–27

(E.D. Pa. Feb. 27, 2014.)

On February 27, 2014, the Court issued a more than 150-page opinion ruling on the

parties' Cross-Motions for Summary Judgment as to the Validity of the Release.  <u>Id.</u>  In that

Memorandum, the Court found that although the Release at issue satisfied the statutory prerequisites of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1), a genuine issue of material fact existed as to whether Plaintiffs knowingly and voluntarily signed the Release under a totality of the circumstances test.  Id. at *81.  Accordingly, the Court denied both parties' Motions and directed that the issue be decided by a jury.

On March 14, 2013, Allstate filed a Motion for Reconsideration and Plaintiffs filed a Motion for Clarification or, in the Alternative, for Reconsideration.  The Court received both parties' responses on March 31, 2014, making both Motions ripe for judicial review.

## II.    STANDARD OF REVIEW

A motion for reconsideration may be granted if the moving party shows:  (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  Moreover, motions for reconsideration are granted sparingly.  Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).  The grant of such a motion is not proper where it simply asks the court to "rethink what [it] had already thought through – rightly or wrongly."  Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal quotations omitted).  Motions for reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided."  Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990).  "Nor may a motion for reconsideration be used to revisit or raise new issues with the benefit of 'the hindsight provided by the court's analysis.'"  Marshak v. Treadwell, No. Civ.A.95-3794,

2008 WL 413312, at *7 (D.N.J. Feb. 13, 2008) (quoting United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994)), aff'd in part and remanded by 595 F.3d 478 (3d Cir. 2009). A motion for reconsideration, however, may be used to clarify an existing order. Resolution Trust Co. v. KPMG Peat Marwick, No. Civ.A.92-1373, 1993 WL 21555, at *2 (E.D. Pa. June 8, 1993). "[T]he general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." Id.

## III.   ALLSTATE'S MOTION FOR RECONSIDERATION

Notwithstanding the detailed explanations and legal reasoning set forth in this Court's Memorandum Opinion of February 27, 2014, Allstate now seeks reconsideration of several issues. First, Allstate asserts that the Court failed to consider Allstate's state law defenses to any claims of duress and fraud. Second, Allstate contends that the Court relied upon certain incorrect factual assertions in concluding that Plaintiffs may not have voluntarily signed the Release. Finally, Allstate claims that the Court erred in finding a genuine issue of material fact as to both its procedural and substantive unconscionability arguments. The Court addresses each argument individually.

### A.   Alleged Failure to Consider State Law Defenses

In its original Motion for Summary Judgment and Response to Plaintiffs' Motion for Summary Judgment, Allstate claimed that Plaintiffs sought to invalidate the Release using the state law theories of fraud and duress. To defend against these purported fraud and duress claims, Allstate contended that the state law elements of fraud and/or duress were not satisfied and, thus, could not be used to invalidate the Release. This Court expressly acknowledged Allstate's contentions, but found them irrelevant as follows:

3

> Allstate's response to this portion of Plaintiffs' argument consists almost entirely of an argument about why state law contract defenses of duress and fraud fail. As Plaintiffs note—and as this Court clearly recognizes—Plaintiffs are not moving for summary judgment based on allegations of fraud or duress. Rather, Plaintiffs seek to invalidate the Release under a federal totality of the circumstances standard. Thus, to the extent Allstate relies on state law defenses to a duress theory—*i.e.*, alternative legal remedy and ability to consult an attorney—in an effort to defeat Plaintiffs' claim as a matter of law, the Court disregards these arguments. See Long, 105 F.3d at 1539 ("We are convinced that in enacting the OWBPA, Congress intended to occupy the area of ADEA releases and, in doing so, to supplant the common law."); O'Hare v. Global Natural Res., Inc., 898 F.2d 1015, 1017 (5th Cir. 1990) (rejecting use of state law regarding duress and holding that a determination of whether a waiver of federal rights is knowing and voluntary should be determined under a federal common law totality of the circumstances test "because . . . the policies embedded in the federal statute should not be frustrated by state law.").

Romero, 2014 WL 796005, at *69 n.43. Arguing that this reasoning was in error, Allstate now

contends that the federal totality of the circumstances test, as defined by the Third Circuit,

requires that state fraud and duress law must be "followed to test the sufficiency of Plaintiffs'

arguments and to properly evaluate the 'circumstances' of the alleged Hobson's choice and

claimed misrepresentations." (Allstate's Mot. Reconsideration 11.) It goes on to conclude that

"the Court's decision to apply 'the federal common law totality of the circumstances test' without

also considering the state law duress and fraud requirements reflects a novel analysis inconsistent

with the authorities." (Id.)

Based on a thorough review of controlling Third Circuit jurisprudence, this Court finds its

approach far from "novel" or "inconsistent with judicial authority." In an effort to rebut the

Court's reliance on Coventry v. U.S. Steel Corporation, 856 F.2d 514 (3d Cir. 1988)—a case

which introduced the concept that a release creating a "Hobson's choice" could not be voluntarily

signed—Allstate relies heavily on Cirillo v. Arco Chemical Co., 862 F.2d 448 (3d Cir. 1988).

By way of a footnote in that opinion, the Third Circuit seemingly stepped back from the notion

4

that the existence of financial pressure alone could invalidate a release, and remarked that the

release in Coventry was actually invalidated on the state law ground of duress, as follows:

> Moreover, as Cirillo concedes, economic pressure alone is insufficient to establish
> a claim of duress that would void an otherwise valid release. . . .  Rather, the rule
> followed by this court is that "one asserting duress must establish a wrongful act or
> threat which prevented a party from exercising his free will and judgment." . . .
> Consistent with that precedent, the court in Coventry held that the waiver was
> executed under duress because it had been a product of a termination policy that
> contravened the ADEA.  In the court's view, the employer's policy which denied
> severance benefits to all who were qualified for a retirement pension constituted "a
> wrongful act" sufficient to support a claim of duress.  Thus, Coventry's economic
> dilemma was not the sole basis for the court's finding that the release was not
> voluntarily executed.

Id. at 452 n.2.  Based on that holding, Allstate now argues that "Coventry . . . analyzed the

employee's 'Hobson's choice' under the legal standard of duress supplied by state law, and that

economic duress alone will not invalidate a release of claims."  (Allstate's Mot. Reconsideration

11.)  Allstate goes on to reason that state fraud and duress law should be followed to test the

sufficiency of Plaintiffs' arguments and to properly evaluate the circumstances of the alleged

Hobson's choice and claimed misrepresentations.

Allstate's argument, however, fails to consider the series of interpretive jurisprudence set

forth by the Third Circuit on this precise issue.  Crucially, after Cirillo, Congress enacted

OWBPA, which set forth basic statutory requirements that must be satisfied by a release that

purports to waive ADEA claims.  In the post-OWBPA case of Long v. Sears Roebuck & Co.,

105 F.3d 1529 (3d Cir. 1992), the Third Circuit addressed the state of the law prior to OWBPA:

> Prior to the OWBPA, it was generally recognized that employees could waive federal
> ADEA rights in private settlements with their employees so long as the employees'
> consent to the settlement was knowing and voluntary.  Even during this pre-OWBPA
> period, however, there was disagreement over the standard to be applied in assessing
> whether a waiver was, in fact, knowing and voluntary.  The Courts of Appeals for the

> Fourth, Sixth and Eighth Circuits held that ordinary state contract law principles controlled.
>
> We, however, elected to apply a more stringent federal "totality of the circumstances test," reasoning that "in recognition of the important interests involved . . . careful evaluation of the release form itself as well as the complete circumstances in which it was executed [is] warranted." Cirillo v. Arco Chemical Co., 862 F.2d 448, 450 (3d Cir. 1988).

Long, 105 F.3d at 1538 (footnote omitted).  Remarking that this totality of the circumstances test, which was also adopted by the Second and Fifth Circuits, was based in federal common law, the Third Circuit went on to observe that "[i]t is significant that even prior to enactment of the OWBPA, we concluded that ***ordinary contract principles were not sufficient to vindicate the protective purpose of the ADEA.*** . . . It is difficult, therefore, to understand the dissent's 'urging' that we retreat to traditional common law principles in order to decide this case."  Id. at 1538 n.15 (citing Cirillo, 862 F.2d at 450) (emphasis added).  The Third Circuit then remarked that "[i]n enacting the OWBPA, Congress resolved this dispute regarding the standard to be applied in determining whether a release is 'knowing and voluntary.  Congress rejected the applicability of common law contract principles . . ."[1]  Id.  It concluded that, "in enacting the OWBPA, Congress intended to occupy the area of ADEA releases and in doing so to supplant the common law [of contract]; the OWBPA was intended to 'establish[] a floor, not a ceiling.'"  Id. at 139 (quotation omitted).

    Subsequently, in Lehigh v. Wastak Valley Health Network, 342 F.3d 281 (3d Cir. 2003),

---

[1]  Allstate attempts to distinguish Long by arguing that it merely rejected application of the common law "ratification" and "tender back" doctrines to ADEA waivers.  This argument misreads the Third Circuit's ruling.  The Long court specifically noted that OWBPA intended to completely supplant any ordinary state law contract principle.  The mere fact that the only contract defenses at issue in that case were "tender back" and "ratification" does not undermine its broader finding that state law was not relevant.  Id.

6

the Third Circuit clarified that its ruling in <u>Long</u> only meant to preempt any use of state contract

common law principles, but left intact the federal common law doctrine of "totality of the

circumstances" to ensure that a release was enacted knowingly and voluntarily.  <u>Id.</u> at 295.

Specifically, it stated:

> Neither party has raised the issue of the proper standard under which we should evaluate Wastak's general claim that the Release was not knowing and voluntary apart from the requirements of the OWBPA. The statute provides that its requirements set only a "minimum," 29 U.S.C. § 626(f)(1), which, the legislative history states, "must be satisfied before a court may proceed to determine factually whether the execution of a waiver was 'knowing and voluntary.'"  S. Rep. No. 101–263, at 32 (1990), reprinted in 1990 U.S.C.C.A.N. 1509, 1537; <u>see also</u> H.R. Rep. No. 101–664, at 51 (1990).  Notably, with regard to that factual inquiry, the legislative history explicitly endorses the "totality of circumstances" approach we employed prior to the passage of the statute.  <u>See</u> S. Rep. No. 101–263, at 32, <u>reprinted in</u> 1990 U.S.C.C.A.N. 1509, 1537; H.R. Rep. No. 101–664, at 51; <u>see also</u> <u>Cirillo v. Arco Chem. Co.</u>, 862 F.2d 448, 451–52 (3d Cir. 1988) (analyzing waiver under a totality of the circumstances test); <u>Coventry v. U.S. Steel</u>, 856 F.2d 514 (3d Cir. 1988) (same).  ***In <u>Long v. Sears Roebuck & Co., 105 F.3d 1529 (3d Cir. 1997),</u> to which some courts have cited for the proposition that the OWBPA completely preempts application of the pre-OWBPA totality of the circumstances analysis, we held only that the OWBPA precludes application of the common law doctrines of ratification and tender-back, and specifically stated that "the OWBPA was enacted to 'establish[ ] a floor, not a ceiling.'"***  <u>Id.</u> at 1539 (quoting <u>Soliman v. Digital Equip. Corp.</u>, 869 F. Supp. 65, 69 n.13 (D. Mass. 1994)); <u>see also</u> <u>Bennett v. Coors Brewing Co.</u>, 189 F.3d 1221, 1229 (10th Cir. 1999) (holding that satisfaction of the OWBPA's statutory requirements is not sufficient to establish knowing and voluntary waiver and that courts must inquire into the totality of the circumstances); <u>Griffin v. Kraft General Foods, Inc.</u>, 62 F.3d 368, 373–74 (11th Cir. 1995) (same); <u>EEOC v. Johnson & Higgins</u>, 5 F. Supp. 2d 181, 186 (S.D.N.Y. 1998) (same).  ***We conclude, therefore, that general considerations that bear on the issue, apart from the statutory prerequisites, are relevant.***

<u>Wastak</u>, 342 F.3d at 295 n.8 (emphasis added).

The majority of other circuits have followed suit.  <u>See, e.g.</u>, <u>American Airlines, Inc. v.</u>

<u>Cardoza-Rodriguez</u>, 133 F.3d 111, 120 (1st Cir. 1998) ("We reject the view adopted by the

Fourth and Fifth Circuits and adopt the majority position.  At common law, a waiver of rights

was simply a contract, subject to defenses like duress or mistake.  When Congress enacted the

OWBPA, however, it specifically rejected using ordinary contract principles to govern the

validity of ADEA waivers. . . . Instead, Congress enacted a "floor" of specific procedures an

employer must follow before an employee's waiver is effective."); O'Hare v. Global Natural

Res., 898 F.2d 1015 (5th Cir. 1990)[2] ("Although there is universal recognition that a waiver of

federal rights must be knowing and voluntary, there is some disagreement as to the proper source

of law for determining the validity of the waiver. . . . The better rule is to fashion a federal

common law to determine this issue because the policies embedded in the federal statute should

not be frustrated by state law.").[3]

    In short, it is well settled in the Third Circuit that state contract law plays no role in a

totality of the circumstances test to determine whether a release was knowingly and voluntarily

---

[2]  Allstate attempts to distinguish O'Hare by arguing that the Fifth Circuit only declined to apply state law because it refused to consider undue influence and fraud *at all* beyond the enumerated "totality" factors.  This argument misses the gist of the Fifth Circuit's ruling.  The court determined that the totality of the circumstances test was governed by federal common law and that state law played no rule.  Id. at 1017.  Applying that test, the court found that it was clear that the plaintiff had knowingly and voluntarily signed the release and that his claim of stress and anxiety did not create a genuine issue of material fact.  Id. at 1017–18.  The court *did not*, as presumed by Allstate, limit the totality of the circumstances test to only the eight enumerated factors.

[3]  Defendants cite a string of Third Circuit and Eastern District of Pennsylvania cases applying state law in assessing totality of the circumstances arguments.  None of them are persuasive.  Two of those cases—Three Rivers Motor Co. v. Motor Co., 522 F.2d 885 (3d Cir. 1975) and Plechner v. Widener College, 569 F.2d 1250 (3d Cir. 1977)—did not involve releases of federal anti-discrimination claims under the ADEA and, in any event, predated both the enactment of OWBPA and the ensuing Third Circuit jurisprudence.  Further, in both Easton v. Bristol-Mers Squibb, 289 F. Supp. 2d 604 (E.D. Pa. 2003) and Ponzoni v. Kraft General Foods, Inc., 774 F. Supp. 299, 311 (D.N.J. 1991), the ruling courts considered the plaintiffs' claims of "pressure" under a state law duress theory and, *separately*, under the general "totality of the circumstances" test.  Neither case held that state law controlled the totality of the circumstances analysis.  As such, the Court is not swayed by any of these citations.

signed.[4]  Rather, a court must look to the eight enumerated factors, as well as any other

circumstances which may affect the knowing and voluntary analysis.  As Plaintiffs alleged that

the Release in the present case was not knowingly and voluntarily signed, this Court turned to

those eight factors, plus the general federal common law, to analyze, under the totality of the

circumstances, whether the requisite knowledge and voluntariness was present.  To the extent

Allstate raised state law defenses to allegations of fraud and misrepresentation—claims that were

never made by Plaintiffs on summary judgment—the merits of such defenses were irrelevant to

the issue at hand.  As such, the Court finds no error that requires reconsideration of the February

27, 2014 Memorandum and Order.

        In a last-ditch effort to undercut the Court's totality of the circumstances analysis, Allstate

makes a plea to practicality by arguing that the Court has set forth "no legal framework against

which the Court, or the parties, can test the sufficiency of Plaintiffs' fraud and duress evidence,

either at the summary judgment stage or at trial."  (Allstate's Mot. Reconsideration 11.)

According to Allstate, "the parties are left with no guidance going forward as to what properly

---

        [4]  Allstate also tries to distinguish Torrez v. Public Service Co. of New Mexico, 908 F.2d
687 (10th Cir. 1990), another case on which the Court relied for the proposition that the
existence of a "Hobson's choice" can affect whether a contract was voluntarily signed.  Allstate
argues that this case was limited by the subsequent Tenth Circuit decision in Rutledge v.
International Business Machines Corp., 972 F.2d 357 (10th Cir. 1992).  Rutledge, however, did
not bring about any retreat from the well-settled notion that federal common law principles—not
state contract law principles—control a totality of the circumstances test.  Rather, the Rutledge
court stated that "[u]nder the Torrez totality of the circumstances test, we conclude that any
economic pressure on Plaintiff, even coupled with the lack of opportunity to negotiate the terms
of the release, does not entitle Plaintiff to a trial, in light of the numerous factors supporting a
determination that Plaintiff executed the release knowingly and voluntarily."  Id. at *4.  In other
words, the court merely found that, under the totality of the circumstances *in that particular case
and under those particular facts*, it was clear that the release was knowingly and voluntarily
signed, even despite some economic pressure.  Accordingly, the Court finds Rutledge inapposite
to Allstate's current argument.

constitutes fraud or duress or how the 'circumstances' of an alleged Hobson's choice and claimed misrepresentations are to be evaluated by the jury in determining the validity of the Release contracts."  (Id.)

The Court does not share Allstate's fears.  The totality of the circumstances test is a well-known and frequently used legal doctrine applied successfully in many contexts before judges and juries.  Using that approach in this case, Plaintiffs shall not be not tasked with proving duress or misrepresentation under a particular state law, which Allstate would then have to rebut under the same state law.  Nor will the Release be automatically invalidated by the mere existence of some financial pressure or misstatements by Allstate.  Rather, the totality of all relevant circumstances will placed into a proverbial "pot" to be considered and weighed by a trier of fact in determining whether the Plaintiffs acted knowingly and voluntarily when executing the Release at issue.  The Court anticipates none of the logistical problems that Allstate now raises.  Accordingly, Defendant's request for clarification of this issue is denied.

### B.    Alleged Reliance on Incorrect Factual Assertions

Alternatively, Allstate argues that even if the possible "Hobson's choice" identified by the Court were a legally sufficient basis to invalidate the Release, the Court's opinion relied on three incorrect factual conclusions to find the existence of a genuine issue of material fact.  The Court now considers each alleged error individually.

First, Allstate takes issue with the following statement by the Court in the discussion of voluntariness:

> Moreover, even though the Program effectively terminated agents' employment with Allstate in a manner similar to a reduction in force, Allstate labeled the Program a "group reorganization."  By doing so, it invoked the exception of the Allstate

> Severance Payment Plan—an exception that was included in an amended version of the Plan only *two days* prior to the Program's announcement—that precluded terminated employees from receiving severance pay if they were part of a group reorganization plan, and deprived agents of the enhanced severance of up to fifty-two weeks' pay that they would have otherwise received under that Plan.

Romero, 2014 WL 796005, at *72 (emphasis in original).  Allstate, however, argues that for years prior to the Program, the Allstate Severance Payment Plan excluded employees whose employment was involuntarily terminated "under the terms of any form of group reorganization/restructuring benefit plan or program."  (Allstate's Opp'n Pls.' Mot. Summ. J. 12 (citing Zolner Decl., Ex. 38, at A046690).)  The amendments to the Plan made just prior to the announcement of the program were ministerial in nature and did not introduce participation in group reorganization program as a new eligibility factor.

The Court does not find that this statement requires reconsideration for two reasons.  As a primary matter, it was Allstate itself that represented that, as of October 1999, the Allstate Severance Payment Plan "did not specifically exclude terminees of group reorganizations" and that the November amendments to the Plan "made clear that agents terminated as part of the Program were ineligible for benefits."  (Allstate's Reply Br. Supp. Mot. Summ. J. 17–18.)  Thus, as aptly noted by Plaintiffs, any confusion on this factual issue was created by Allstate itself.  Moreover, and more importantly, the Court did not find that the Plan's exception, or any amendment to that exception, was problematic.  Rather, the Court took issue with Allstate's *characterization of the Program as a "group reorganization"* in order to fit within the Plan's exception, despite the fact that the Program was functionally equivalent to a reduction in force.  See Romero, 2014 WL 796005, at *72 ("[E]ven though the Program effectively terminated agents' employment with Allstate in a manner similar to a reduction in force, Allstate labeled the

11

Program a 'group reorganization.' . . . By doing so, it . . . deprived agents of the enhanced

severance of up to fifty-two weeks' pay that they would have otherwise received under that

Plan."); Id. at *72 n.47 ("While the Court does not make any ruling as to whether Allstate's

characterization of the Program as a 'group reorganization' was legally wrongful, the Court notes

that this amendment was conveniently self-serving and, from most perspectives, underhanded.");

Id. at *67 n.40  ("As noted later on [in] this Memorandum, the Court does take issue with

Allstate's decision to characterize the Program as a 'group reorganization,' thereby depriving

employee agents of benefits under the Allstate Severance Plan.").  Thus, regardless of whether

the Court misstated when Allstate's Severance Plan first included the "group reorganization"

exception, it was Allstate's apparently deliberate characterization of the Program to fit within

that exception that raised a question as to the voluntariness of the Release.

Second, Allstate challenges this Court's statement that the "base severance option

(thirteen weeks' pay, payable over six [months][5]) made agents worse off than if they had been

terminated for poor performance under Allstate's Service Allowance Plan (thirteen weeks' pay,

payable in one lump sum)."  Romero, 2014 WL 796005, at *72.  Allstate now argues that the

record is "undeniably to the contrary" because both the base severance option and the Service

Allowance Plan gave thirteen weeks' pay and the base severance option required *fewer* years of

service than what was required under the Service Allowance Plan.  Allstate goes on to note that,

based on the record evidence, twenty-six of the thirty-one Plaintiffs under the Program would

have received a *higher* amount of base severance under the Program's Option Number Three as

---

[5]  The Memorandum inadvertently said "six weeks" instead of "six months."  Romero,
2014 WL 796005, at *72.

12

compared to lesser amounts that they would have received had they been terminated for poor performance under the Service Allowance Plan.

Allstate's argument misses the basic import of the Court's discussion.  First, it remains undisputed that, as a *general* rule, Allstate employee agents—even those with less than twenty years of service—may have been better off being terminated for poor performance than being forced into the base severance option of the Program because: (1) they would receive all of their severance up front, thereby allowing them to capitalize on the time value of the money; and (2) they were not subject to the additional non-solicitation and non-compete restrictions attached to the base severance option.  Next, even taking as true Allstate's representation that some of the Plaintiffs would have received slightly more money (up to seven weeks of pay) under the base severance option than under the Allstate Service Allowance Plan, this fact says little about the voluntariness of the Program.  The Court highlighted this comparison to demonstrate the coercive nature of the Program and Release: a poor-performing employee with twenty years' experience, who was fired for an inability to produce, was given a better or only *slightly* less lucrative severance package than a strong-performing, loyal, and productive employee agent who was terminated under the Program.  Under a more relevant comparison between well-performing employees—one of whom was terminated pursuant to a reduction in force and one of whom was terminated under the Program and opted not to sign the Release—the one terminated under the Program would be *substantially* worse off.  Allstate's splitting of hairs to show an insignificant discrepancy in the Court's opinion does not warrant a grant of the Motion for Reconsideration.

Third and finally, Allstate questions the Court's statement that "those who did not sign the Release and opted for the base severance were subject to the additional non-compete

obligations in the Agent Transition Severance Plan, which were more stringent than those in the

original R830 and R1500 contracts.  Failure to comply with those more stringent non-compete

arrangements resulted in the loss of even the minimal severance pay."  Romero, 2014 WL

796005, at *72.  Allstate contends that the non-compete restrictions in the Agent Transition

Severance Plan ("ATSP") were less stringent than those in the original R830 and R100 contracts

and were only eligibility requirements for receipt of severance payments.

Again, however, Allstate's argument does not convince this Court to grant

reconsideration.  Primarily, Allstate fails to note that the ATSP restrictions were, in several

respects, more stringent than those in the R830/R1500 Agreements.  For example, the R1500

Agreement had only a one-year restriction on soliciting products or services in competition with

those sold by Allstate to former customers, whereas the ATSP imposed a *two*-year restriction on

soliciting products or services in competition with those sold by Allstate to former customers.

Moreover, although the R830 contract had a confidentiality provision, that provision did not

include restrictions on competition or attach penalties for violation.  (See Heinz Decl., Ex. 10

("R830 Agreement"), Part Four ¶ VII ("All supplies furnished to you and all records which you

have pertaining to Allstate policyholders are the property of the Company and will upon demand

be promptly returned to us.")  The ATSP, on the other hand, expressly stated as follows:

> Recognizing that the disclosure or improper use of such Confidential Information
> will cause serious and irreparable injury to Allstate, eligible Employee Agents with
> such access acknowledge that (i) they will not at any time, directly or indirectly,
> disclose Confidential Information to any third party or otherwise use such
> Confidential Information for their own benefit or the benefit of others, and (ii)
> ***payment of severance pay under the Plan shall cease if an eligible Employee Agent
> discloses or improperly uses such information.***

(Meehan Decl., Ex. 212, at ARI 034917 (emphasis added).)  As such, unlike the R830 contract,

14

the ATSP confidentiality provision made clear that a breach results in the loss of the already minimal severance pay.  Finally, Allstate disregards the fact that the ATSP restrictions were *in addition* to those in the R830 and R1500 contracts.  (Meehan Decl., Ex. 212, at ARI 034919.) As such, while everyone terminated under the Program was subject to the non-competition and non-solicitation provisions of their contracts, only those who opted to not sign the Release and to take the base severance option faced the added penalty of losing the only severance money they received from Allstate if they violated the ATSP restrictions.

In sum, Allstate's identification of minor factual inconsistencies (some of which are not inconsistencies at all) ignores the forest for the trees.  Allstate attempts to poke diminutive holes in the Court's general finding of a potential "Hobson's choice" scenario created by the Program and Release while never addressing the broader and more crucial question of whether, under the totality of the circumstances, Plaintiffs actually signed the Release both knowingly and voluntarily.  Accordingly, the Motion for Reconsideration is denied on this ground.

## C.    Failure to Grant Summary Judgment on Unconscionability Claims

Allstate's third and final basis for seeking reconsideration contends that the Court's ruling on Plaintiffs' unconscionability arguments was flawed.  Specifically, with respect to procedural unconscionability, the Court found that Plaintiffs' arguments "together with Allstate's denials, bear striking similarity to the arguments raised with respect to Plaintiffs' contention that the Release was not voluntarily signed. . . . [T]hese arguments give rise to numerous issues of material fact that are improper for resolution on a motion for summary judgment."  Romero, 2014 WL 796005, at *80.  As to substantive unconscionability, the Court remarked:

Plaintiffs'  claim  of  substantive  unconscionability  is,  like  its  procedural[]

15

> unconscionability claim, marked with disputes of fact.  The Court has no doubt that
> the Plaintiffs lost substantial benefits, to Allstate's gain, when they signed the
> Release.  The Court also notes, however, that Plaintiffs gained in other ways through
> various options they received in the Program.  The question of whether those gains
> and benefits satisfied the concept of mutuality of obligation cannot be resolved at this
> juncture.  Moreover, any conclusions regarding the import of public policy are
> necessarily intertwined with the resolution of the multitude of factual issues.

Id. at *81.  Allstate now argues that these findings were flawed because "[t]he Release contracts

at issue fail to give rise to any issue of material disputed fact that could support a finding of

either procedural or substantive unconscionability."  (Allstate's Mot. Reconsideration 20.)

        The Court declines to consider the substance of this argument for two reasons.  First, as

noted by Plaintiffs, Allstate did not seek summary judgment on Plaintiffs' claim of

unconscionability.  Rather, only Plaintiffs raised unconscionability in their opening brief and

sought to have the Release invalidated on that ground.  Allstate responded to that argument and

contended that it was not a basis for invalidating the Release, but never separately sought a

summary judgment ruling on that issue.  (See Allstate's Resp. Opp'n Pls.' Mot. Summ. J. 102

("Plaintiffs *cannot* demonstrate as a matter of law that they lacked meaningful choice in deciding

to sign the Release, nor can they show that the benefits of the bargain were grossly unfavorable to

them.  Therefore, as a matter of law, *summary judgment cannot be granted in Plaintiffs' favor* on

this claim." (emphasis added) (footnote omitted).)  For all practical purposes, the Court sided

with Allstate by denying Plaintiffs their requested relief on the unconscionability issue.  Allstate

may not now seek for the first time, through its current Motion for Reconsideration, a summary

judgment ruling that the Release is not unconscionable.  See Bhatnagar v. Surrendra Overseas

Ltd. 52 F.3d 1220, 1231 (3d Cir. 1995) (holding that reargument "should not be used as a means

to argue new facts or issues that inexcusably were not presented to the court in the matter

previously decided.") (quoting Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990)).

Moreover, even had Allstate presented the same argument from its Response in its own Motion for Summary Judgment, the Court would still decline to reconsider the issue.  Allstate's current Motion does nothing more than rehash its contention that the Release was neither procedurally nor substantively unconscionable.  A motion for reconsideration may not, however, be used to give a litigant a "second bite at the apple" as to an argument on which it previously did not succeed.  See Bhatnagar, 52 F.3d at 1231.  "A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one."  Kennedy Indus., Inc. v. Aparo, No. Civ.A.04-5967, 2006 WL 1892685, at *1 (E.D. Pa. July 6, 2006); see also Rosario v. Chamberlain, No. Civ.A.08-1484, 2009 WL 2707536, at *1 (M.D. Pa. Aug. 25, 2009) ("A losing party may not use a motion for reconsideration to raise new arguments or supporting facts that it could have raised previously, but did not.").  Given this standard, together with the well-settled principle that motions for reconsideration should be granted "sparingly," DeMaio v. Bed, Bath & Beyond of King of Prussia, Inc., No. Civ.A.03-5957, 2005 WL 465175, at *1 (E.D. Pa. Feb. 23, 2005) (quotations omitted), the Court declines to reconsider Allstate's substantive argument as to unconscionability.

### D.    Conclusion as to Allstate's Motion

In sum, the Court finds no merit to any of the arguments raised in Allstate's Motion for Reconsideration.  First, as explained in the February 27th Memorandum Opinion, and again in this opinion, state contract law has no part in a federal totality of the circumstances test on the

issue of whether a release waiving federal discrimination claims was knowingly and voluntarily signed.  As such, the Court did not err in declining to consider Allstate's state law defenses to state law claims of duress and misrepresentation when such claims were never raised by Plaintiffs.  Second, to the extent the Court made any factual errors in the Memorandum, such errors were minute and immaterial to the ultimate finding that a genuine issue of fact remained on the issue of voluntariness.  Finally, the Court declines to consider Allstate's argument that summary judgment should have been granted in its favor on Plaintiffs' claim of unconscionability because: (1) Allstate never previously sought summary judgment on this argument; and (2) the arguments raised in Allstate's Motion for Reconsideration are simply a rehash of the arguments raised in its Response to Plaintiffs' Motion for Summary Judgment.  For all of these reasons, Allstate's Motion for Reconsideration is denied.

## IV.    PLAINTIFFS' MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, FOR RECONSIDERATION

Plaintiffs' Motion for Clarification or, in the Alternative, for Reconsideration focuses exclusively on the Court's statement in the February 27, 2014 Memorandum that "the R830 and R1500, by their express terms, were at-will contracts."  <u>Romero</u>, 2014 WL 796005, at *63. Plaintiffs now ask this Court to clarify that this Memorandum is not read to preclude Plaintiffs from arguing, at the merits-stage of litigation, that Allstate could not terminate the R830 or R1500 contract at will.

Undoubtedly, Plaintiffs are responsible for the Court's opining on whether the R830/R1500 Agreements were at-will contracts.  Plaintiffs repeatedly dangled the "at-will" question before the Court.  On frequent occasions both in support of their Motion for Summary

Judgment and in response to Allstate's Motion for Summary Judgment, Plaintiffs argued that the R830 and R1500 contracts were not at-will contracts and protected agents under those contracts against termination pursuant to the Program. Certainly, having made such vigorous and repeated arguments, Plaintiffs should have anticipated that the Court would opine on their merits—resulting in a ruling that could subsequently have a profound impact on their substantive breach of contract claims.

Nonetheless, several considerations of fairness compel the Court to find that clarification is warranted. First, the record is clear, and neither party disputes, that the substantive breach of contract claim was not before the Court during summary judgment motions. Indeed, all parties understood that the only issue permissible on summary judgment review was the scope and validity of the Release. To that end, neither Plaintiffs nor Allstate expressly sought a specific ruling on whether the R830/R1500 contracts were at-will, such that Allstate would have breached the contracts by terminating Plaintiffs pursuant to the Program.

Second, the Court's statement that the R830/R1500 contracts were at-will agreements was not necessary to the Court's conclusion on the questions before it. The primary issue was whether the Release was supported by adequate consideration sufficient to satisfy one of the OWBPA requirements. In support of their position that it was not, Plaintiffs asserted that: (1) they were not at-will employees and therefore were entitled to continued commissions and benefits without having to sign a release; and (2) even if they were at-will employees, a reasonable factfinder could conclude that nothing received by those who signed the Release exceeded that to which they were already entitled. As to the first point, the Court cited both the R830 and R1500 Agreements and determined that, by their express terms, they were at-will

contracts and that numerous courts had interpreted them to provide only for at-will employment. Romero, 2014 WL 796005, at *63. Nevertheless, and "more importantly," however, the Court recognized that "even if the R830 and R1500 contracts were not at-will contracts, that fact would not lend support to Plaintiffs' consideration argument." (Id.) Specifically, the Court found that "Plaintiffs' contention that the termination of R830 and R1500 contracts was unlawful because Allstate did not comply with certain notification and review procedures does not bear on whether adequate consideration was given in return for the Release. Rather, it gives rise to a separate breach of contract claim regarding whether Allstate complied with its obligation under the R830 or R1500 contracts prior to the termination." Id. at *64. Finally, the Court held that even assuming Plaintiffs were at-will employees, Allstate offered other forms of consideration to which Plaintiffs were not otherwise entitled in exchange for executing the Release. Id at *65–68. At the core of this analysis lies the fact that the Court could have reached the same conclusion—that adequate consideration supported the Release—without discussing the issue of whether the R830/R1500 contracts were at-will agreements.

Third, the Court expressly recognized that a breach of contract claim still exists. Plaintiffs contended that the termination of R830 and R1500 contracts was unlawful because Allstate did not comply with certain notification and review procedures. The Court held that this argument "[gave] rise to a separate breach of contract claim regarding whether Allstate complied with its obligation under the R830 or R1500 contracts prior to the termination." Id. at *64. At no point did the Court issue a specific ruling on whether Allstate committed a breach of contract through their conduct under the Program.

Fourth, notwithstanding the fact that Plaintiffs placed the nature of the contracts at issue,

this Court's ruling on that question was premature for two reasons.  Primarily, as Plaintiffs correctly note, discovery has not yet been permitted on the substantive issues in this case.  While Allstate now questions what additional discovery would be relevant to a breach of contract issue, that decision is not proper for the Court to make at this time.  Without Plaintiffs at least having the opportunity to take discovery on this issue and fully brief it, the matter cannot be given thorough judicial review.  Moreover, based on the parties' concessions, the Court assumed—for purposes of summary judgment only—that Pennsylvania law governed the Agreements.  The Court conducted no choice of law analysis and did not consider the nuances of any of the potentially applicable state laws.  Absent a firm holding as to which state's law governs the contracts, the Court would be misguided in blindly determining that Allstate's termination of the R830 and R1500 contracts was not a state law breach of contract in some manner.

Finally, it is well-established that the law of the case doctrine does not apply to dicta. United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 397 n.4 (3d Cir. 2003).  The Third Circuit has been clear that "[s]imply labeling a statement in an opinion as a 'holding' does not necessarily make it so.  Gratuitous statements in an opinion that do not implicate the adjudicative facts of the case's specific holding do not have the bite of precedent. They bind neither coordinate nor inferior courts in the judicial hierarchy.  They are classic obiter dicta: 'statement[s] of law in the opinion which could not logically be a major premise of the selected facts of the decision.'"  U.S. v. Warren, 338 F.3d 258, 265 (3d Cir. 2003) (quotation omitted).  This Court remains acutely aware that the issue of interpreting the R830/R1500 contracts was not at issue in the pending summary judgment motions, making any ruling on that issue dicta.

Case 2:01-cv-06764-MAK   Document 196   Filed 04/07/14   Page 22 of 22



In short, the Court did not intend to foreclose further consideration of the breach of contract question.  Therefore, the Court shall grant Plaintiffs' Motion and clarify that the February 27, 2014 Memorandum does not operate to adjudicate any aspect of Plaintiffs' underlying breach of contract claims on the merits, or to bar Plaintiffs from raising each of their breach of contract legal theories at the merits-stage of this litigation.

## V.	CONCLUSION

For all of the foregoing reasons the Court shall deny Allstate's Motion for Reconsideration or, in the Alternative, for Clarification and shall grant Plaintiffs' Motion for Clarification.  An appropriate Order follows.