# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENE R. ROMERO, et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 01-3894 |
| | : | |
| | : | CONSOLIDATED WITH |
| ALLSTATE INSURANCE COMPANY, | : | |
| et al., | : | NO. 01-6764 |
| Defendants. | : | |

## MEMORANDUM

PAPPERT,  J.                                                        March 17, 2016


Before the Court are (1) the Romero Plaintiffs' Motion for Reconsideration of the Court's November 12, 2015 Order, or Alternatively, for Certification of the Order for Immediate Appeal[1] and (2) the McLaughlin and Harris Plaintiffs-Intervenors' Motion for Reconsideration of the Court's November 12, 2015 Order, or Alternatively, for Certification of the Order for Immediate Appeal.[2]  The Court grants both motions for reconsideration.

---

[1]  These Plaintiffs' include the original thirty Romero Plaintiffs, as well as the additional Plaintiffs added by way of the Third Amended Complaint.

[2]  These Plaintiffs include the following: James Archer, John Cherup, William Cotton, Bruce Denlinger, Mary Digiulio, Maryalice Doyle, Kenneth Franck, Janet Haggerty, Ann W. Harris, John Junkniewitz, William Lee, Leonard Lichty, Victoria Lichty, Paul Long, Robert McCarrel, William McLaughlin, Warren Miller, Lawrence O'Hara, William Quairoli, Robert Rebb, Joseph Rosati, William Shover, Gary Sigler, Phillip Singer, Deborah L. Spedding, Bradley Steckel, Paul, Trimborn, Athena Wagner, Eugene Weller, Robert Weller, and Gail Wolfe.

## I.      FACTUAL BACKGROUND

The underlying facts are well known to the parties, have been repeatedly summarized, and will not be restated at length here.  The Court will focus on the facts most relevant to consideration of the current Motions.

On August 1, 2001, following the Allstate Defendants' ("Allstate" or "Defendants") implementation of the Preparing for the Future Group Reorganization Program (the "Program"), thirty-two Allstate employee agents (the "Romero Plaintiffs") filed a lawsuit against Allstate and its CEO Edward M. Liddy ("Liddy").  After several years of litigation before Judge John R. Fullam in our Court and an appeal to the Third Circuit Court of Appeals, the case was remanded to the District Court in January 2010, and re-assigned to Judge Ronald L. Buckwalter.  In its remand opinion, the Third Circuit instructed the District Court to resolve the validity of a release (the "Release") signed by most of the Plaintiffs in connection with the Program.  If that Release was deemed to be invalid, the District Court was directed to then allow discovery on the merits of the substantive claims raised in the First Amended Complaint.

The Romero Plaintiffs subsequently filed a Second Amended Complaint on July 28, 2010.  The parties proceeded through an extensive and litigious period of discovery on the issue of the validity of the Release, culminating in cross-motions for summary judgment at the end of 2013.  On February 27, 2014, Judge Buckwalter ruled on those motions, holding that a genuine issue of fact remained as to whether the Release was knowingly and voluntarily signed. Plaintiffs thereafter sought class certification solely as to Release-related issues.  Following denial of that motion, the Court determined that the statute of limitations for the non-named Plaintiffs had resumed running, and that any non-named Plaintiffs who had signed the Release

were required to file a lawsuit or join the existing one in order to challenge the Release and pursue their substantive claims.

On February 26, 2015, the original <u>Romero</u> Plaintiffs moved for leave to file a Third Amended Complaint in order to add as Plaintiffs 368 former employee-agents who signed the Release as part of the Program.  The following day, the same 368 agents filed their own complaint, but did not move to intervene.  (<u>See</u> Compl., <u>Abell v. Allstate Ins. Co.</u>, No. Civ.A.15-1049.)  Shortly thereafter, thirty other Release-signers ("<u>McLaughlin</u> Plaintiffs" and "<u>Harris</u> Plaintiffs"), filed two separate complaints containing factual and legal allegations identical to those in the Third Amended Complaint, and subsequently moved to intervene in the <u>Romero</u> litigation.  (<u>See</u> Compl., <u>McLaughlin v. Allstate Ins. Co.</u>, No. Civ.A.15-1017 ("<u>McLaughlin</u> Compl."); Compl., <u>Harris v. Allstate Ins. Co.</u>, No. Civ.A.15-1190 ("<u>Harris</u> Compl.").)  All of these complaints alleged (1) the invalidity of the Releases signed by each Plaintiff and Intervenor; (2) violation of section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, <u>et seq.</u>; (3) violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, <u>et seq.</u>; (4) breach of contract; and (5) breach of fiduciary duty.  On April 21, 2015, the Court granted Plaintiffs' Motion for Leave to File a Third Amended Complaint, as well as both Motions to Intervene.

On July 28, 2015, Defendants Allstate and Liddy filed Motions to Dismiss the <u>Romero</u> Plaintiffs' Third Amended Complaint and the <u>Harris</u> and <u>McLaughlin</u> Plaintiffs' Intervenor Complaints.  On November 12, 2015, Judge Buckwalter held that these Plaintiffs' state law claims were barred by the doctrines of tender-back and ratification.  The <u>Romero</u> Plaintiffs immediately filed the current Motion for Reconsideration, or Alternatively, for Certification for

Immediate Appeal on November 27, 2015, and the <u>Harris</u> and <u>McLaughlin</u> Plaintiffs filed an identical Motion on November 30, 2015.  Defendants responded to both Motions on December 14, 2015, and the <u>Romero</u>, <u>Harris</u>, and <u>McLaughlin</u> Plaintiffs (collectively, "Plaintiffs") filed their Reply Briefs on December 30, 2015.  This case was reassigned to this Court on February 1, 2015.

## II.     STANDARD OF REVIEW

A motion for reconsideration may be granted if the moving party shows:  (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.  <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999).  Motions for reconsideration are granted sparingly.  <u>Cont'l Cas. Co. v. Diversified Indus., Inc.</u>, 884 F. Supp. 937, 943 (E.D. Pa. 1995).  The grant of such a motion is not proper where it simply asks the court to "rethink what [it] had already thought through—rightly or wrongly." <u>Glendon Energy Co. v. Borough of Glendon</u>, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal quotations omitted).  Motions for reconsideration may not be used "as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." <u>Brambles USA, Inc. v. Blocker</u>, 735 F. Supp. 1239, 1240 (D. Del. 1990).  "Nor may a motion for reconsideration be used to revisit or raise new issues with the benefit of 'the hindsight provided by the court's analysis.'"  <u>Marshak v. Treadwell</u>, No. Civ.A.95-3794, 2008 WL 413312, at *7 (D.N.J. Feb. 13, 2008) (quoting <u>United States v. Jones</u>, 158 F.R.D. 309, 314 (D.N.J. 1994)), <u>aff'd in part and remanded by</u> 595 F.3d 478 (3d Cir. 2009).

III.    **DISCUSSION**

The current Motions for Reconsideration present a somewhat unique set of circumstances.  Plaintiffs' Motions improperly raise new arguments that were never previously submitted for the Court's consideration.  The Motions, however, also identify new facts that bear on the arguments previously raised in response to Allstate's Motion to Dismiss—facts which compel the Court to rethink the original ruling as to the state law claims.

A.      **Whether Plaintiffs' Request for Reconsideration is Procedurally Improper**

Allstate first asserts that the Motions are procedurally improper.  In particular, it alleges that none of the allegations in the Motions fit within the allowable parameters of a motion for reconsideration as defined by Third Circuit jurisprudence.

The Court agrees in large part.  Allstate originally filed a broad Motion to Dismiss alleging, *inter alia*, that all of Plaintiffs' state law claims were barred under the state law tender-back and ratification doctrines.  In response, Plaintiffs contended that: (1) Allstate waived the ratification defense; (2) the tender-back/ratification principles are inapplicable to Plaintiffs' challenges to the Release on the grounds of unconscionability, unclean hands, and the part and parcel doctrine; (3) dismissing Plaintiffs' claims pursuant to the tender-back rule would be inequitable under the circumstances of this case; and (4) since at least 2003, Plaintiffs have been offering to return the consideration received for the Release through an offset to any damage award.  The Court considered and discussed each of these arguments, but ultimately disagreed.

Faced with an unfavorable decision on that Motion, Plaintiffs' Motions for Reconsideration now advance new arguments as to why dismissal based on tender-back/ratification principles is improper, including that: (1) the facts of record establish that

multiple Plaintiffs offered to tender back consideration prior to and during the course of this litigation; (2) the Court disregarded the well-established exceptions to the tender-back rule found in the various states' laws; (3) Plaintiffs should be allowed to amend their Complaints to plead an offer to tender back; (4) Allstate waived ratification by its post-2010 conduct;[3] and (5) the parties' stipulation as to the duress argument during the first Release trial precludes ratification of the eight Releases the jury found not knowing and voluntary.

The Court will not address either these new arguments or any attempts to re-argue issues already decided. Two issues in the Motions, however, warrant further discussion. First, Plaintiffs assert that in dismissing their state law claims, the Court improperly looked outside the Third Amended Complaint and presumed that Plaintiffs never offered to tender back consideration. Second, Plaintiffs raise the possibility of a clear error of fact in the Court's holding that Plaintiffs' failed to preserve the issue of the "consideration conundrum." In doing so, Plaintiffs have presented many new facts—facts not raised in their Response to the Motion to Dismiss—which suggest that reconsideration may be warranted. As a general rule, "new evidence" for purposes of reconsideration "does not refer to evidence that a party obtains or submits to the court after an adverse ruling," but rather means "evidence that a party could not earlier submit to the court because that evidence was not previously available." Howard Hess Dental Labs. Inc. v. Dentsply Int'l Inc., 602 F.3d 237, 251 (3d Cir. 2000). The new facts now offered by Plaintiffs undoubtedly were available and could have been presented earlier.

---

[3] Plaintiffs fault the Court for not addressing whether Allstate waived the issue of tender-back/ratification through its post-2010 conduct. Notably, however, the only issue before the Court in connection with the Motion to Dismiss was whether Allstate waived its ratification defense by not raising it in its appeal of the June 2007 Order.

6

Nonetheless, the combination of both the complex procedural background and the multiple reassignments of this case require that this Court address this portion of the Motions.

**B.**     <u>Whether the Court's Decision Erroneously Presumed that None of the Plaintiffs Ever Offered to Tender Back Any Portion of the Consideration</u>

Plaintiffs contend that the Court erred in finding that each Plaintiff failed to return or offer to return the consideration they received in exchange for signing the Release.  They claim that nothing in the Third Amended Complaint indicates that they failed to tender back the proper consideration prior to or during the course of this litigation.  They accordingly assert that the Court must have looked outside the corners of the Third Amended Complaint, contrary to the well-settled Rule 12(b)(6) principle that a court may consider only "the facts alleged in the complaint and its attachments without reference to other parts of the record." <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  According to Plaintiffs, the Court should have treated the motion as one for summary judgment under Rule 56 after giving Plaintiffs "a reasonable opportunity to present" all pertinent material.  Fed. R. Civ. P. 12(d).  Had the Court allowed that opportunity, they would have offered trial testimony to demonstrate that they offered to tender back the consideration received, but that Allstate rejected such offers.

Plaintiffs' theory disregards the general rule that tender or offer of tender is a condition precedent to initiation, if not maintenance, of a lawsuit otherwise barred by a Release.[4]  <u>See</u> 76 C.J.S. <u>Release</u> § 39 (2015).[5]  A plaintiff may not maintain an attack on a release in the absence of

---

[4]  In light of the vast number of Plaintiffs from multiple states, the Court relies on general principles of law common to the various states and samplings of cases from those states.

[5]  "A person who executes a release and afterward seeks to avoid its effect on any ground which will entitle him or her to avoid it generally must first restore the status quo by restoring, tendering, or offering to restore what he or she has received in return for the release, at least

proper allegations in the complaint and/or an offer prior to the commencement of the suit to tender back consideration.  See Gascho v. Scheurer Hosp., 589 F. Supp. 2d 884, 890 (E.D. Mich. 2008) ("Before a plaintiff may proceed with litigation, the plaintiff must tender back 'the amount paid,' so as to return the parties to the pre-settlement agreement status quo. . . . A plaintiff does not have a 'grace period' in which to tender back the consideration . . . and an offer of tender in an amended complaint does not 'relate back to the filing of [the] original complaint.'"); Roberts v. S. Ry. Co., 38 S.E.2d 48, 50 (Ga. Ct. App. 1946) ("It has been held that in no event could a plaintiff maintain an attack on a release pleaded as an accord and satisfaction by the defendant, in the absence of proper allegations in his petition, and an offer on his part *prior to the commencement of the suit*, to rescind, and a tender back to the defendant of the amount which it had paid in order to obtain such release." (emphasis in original)); see also Callahan v. Fluhr, 103 S.W.2d 109, 110 (Ky. Ct. App. 1937); Rue v. Helmkampf, 657 S.W.2d 76, 78 (Mo. Ct. App. 1983); Kamerman v. Curtis, 33 N.E.2d 530, 532–33 (N.Y. 1941); Haller v. Borror Corp., 552 N.E.2d 207, 210 (Ohio 1990).

Here, Plaintiffs never affirmatively pled tender-back or offer of tender-back despite the fact that both the Release and the issue of tender-back have been at the forefront of this case since its inception.  Repeatedly, Allstate has asserted that Plaintiffs' claims are barred by the Release, and Plaintiffs have responded, in part, that the Release is voidable on fraud and misrepresentation grounds.  Such arguments triggered Plaintiffs' tender-back obligations.  In

---

where it appears that it is of value.  Otherwise, such a person cannot challenge the validity of the release, and suit on the underlying claim will be barred.  In other words, the releasor must place the parties in their former position, or as near such position as the circumstances of the case will permit, unless this primary duty is excused for reasons recognized by law."  76 C.J.S. Release § 39 (2015).

addition, through at least 2007, Allstate explicitly sought tender-back of consideration.

Nonetheless, over the course of three amendments to the Complaint, Plaintiffs never pled that

any employee-agent has tendered or offered to tender back consideration.  Plaintiffs now attempt

to rely on testimony, from the June 2015 trial and from depositions never previously presented to

this Court, that some Plaintiffs offered to return the consideration given.  To acknowledge such

testimony would have required the Court to go beyond the four corners of the pleadings, which is

not permitted on a motion to dismiss.[6]  The Motions for Reconsideration on this ground are

denied.

### C.    Whether the Court Improperly Found that Plaintiffs Failed to Previously Raise the "Consideration Conundrum"

In originally opposing Allstate's Motion to Dismiss, Plaintiffs argued that the tender-back

rule presented a "consideration conundrum" that deprived them of their ability to tender back or

---

[6]  In a short footnote, Plaintiffs argue that they were not required to plead tender-back because the Third Circuit has recognized "the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense."  Schmidt v. Skolas, 770 F.3d 241, 251 (3d Cir. 2014).  That case, however, has consistently been cited in the sole context of statute of limitations defenses, wherein the courts have not required the plaintiff to anticipate such a defense and plead facts that demonstrate why the complaint was within the requisite statute of limitations.  See, e.g., Stephens v. Clash, 796 F.3d 281, 288 (3d Cir. 2015); Pruco Life Ins. Co. v. Koslowsky, No. Civ.A.14-03976, 2015 WL 4606985, at *5 (D.N.J. July 31, 2015); Germinaro v. Fid. Nat'l Title Ins. Co., 107 F. Supp. 3d 439, 452 (W.D. Pa. 2015); Clark v. Phila. Hous. Auth., No. Civ.A.14-5460, 2015 WL 1822528, at *2 (E.D. Pa. Apr. 21, 2015), appeal docketed No.15-2311 (3d Cir. May 28, 2015); Tate v. City of Phila., No. Civ.A.13-5404, 2015 WL 437432, at *6 n.2 (E.D. Pa. Feb. 3, 2015).

This case falls outside that rule for two reasons.  First, this involves a Release of which Plaintiffs were well aware prior to filing suit.  The general rule is that a plaintiff, as a condition precedent to bringing or maintaining suit, must tender back or offer to tender back the consideration.  Second, this case began in 2001, and the tender-back issue was raised at the outset of litigation.  Even assuming Plaintiffs could not have possibly anticipated the Release and ratification defenses when filing their initial Complaint, Plaintiffs have since filed three more versions of the Complaint, with the latest occurring on April 21, 2015.

offer to tender back consideration, since there was no available method of getting the parties to

agree on the appropriate amount of tender-back.  For the terminated agents who took the

Enhanced Severance Option, the severance pay they received was consideration not just for the

Release, but also for the new restrictive covenants contained in the Agent Transition Severance

Plan.  Moreover, for the other Release options, the consideration included the ability of the agent

to convert to the R3001 contract and the right of the agent to sell the agency to an Allstate-

approved third party.  Such consideration, according to Plaintiffs, was incapable of being

tendered back and made it impossible to restore the parties to the status quo ante.

The Court found that this argument had been effectively waived at this late stage of the

litigation.  Specifically, the Court held as follows:

> While this argument would have had significantly more merit had it been
> raised previously, it does not hold muster at this juncture.  This case clearly raises
> complex issues of consideration.  Depending on which Program option a Plaintiff
> took, he or she received consideration in one or more of the following forms:
> enhanced severance payments, conversion bonuses, an economic interest in a book
> of business which could be sold, an opportunity to convert to an R3001 contract, and
> forgiveness of OEA advances.  Nonetheless, "[w]hether the tender must always
> precede the institution of the suit, or whether, as courts now hold in equity cases . .
> . it is enough that the complaint contains an offer to restore the consideration, an
> offer that the court could enforce by a conditional judgment,[ . . . is a detail of no
> importance in this case."]  Fleming v. U.S. Postal Serv. AMF O'Hare, 27 F.3d 259,
> 261 (7th Cir. 1994)  (citing 1 E. Allan Farnsworth, Farnsworth on Contracts § 4.15,
> 429–30 (1990)). . . . [A]t no point did Plaintiffs make any offer to tender back any
> portion of the consideration.  Had they done so, the Court could have either obtained
> an agreement between the parties regarding what portion of the foregoing
> consideration would be sufficient to satisfy tender-back or, alternatively, determined
> that pre-judgment tender-back was unworkable in the context of the case.  Plaintiffs,
> however, deprived both Defendants and the Court of that opportunity.

Romero v. Allstate Ins. Co., ___ F. Supp. 3d ___, 2015 WL 7014578, at *13 (E.D. Pa. Nov. 12,

2015).  This conclusion rested, in large part, on the fact that Plaintiffs never identified any

pleading where they acknowledged their obligation to tender back consideration or questioned

how to accomplish tender-back given the unusual interaction between the Release and the Program.  As the Court understood that Plaintiffs were first offering tender-back in response to the Motion to Dismiss—an offer occurring almost fifteen years into the litigation—the Court was unwilling to allow either such a belated offer, or a fourth amendment of the Complaint to plead such an offer.  In turn, having waited so long before raising this "consideration conundrum," Plaintiffs were deemed to have ratified the Release.

Plaintiffs now argue that they raised the "consideration conundrum" years earlier—while the case was pending before a different judge—but were thwarted in their efforts to have it resolved.[7]  Specifically, right after initiation of the litigation in 2001, Allstate made the same tender-back/ratification argument.  (See Mem. Supp. Defs.' Mot. to Dismiss Am. Compl., ECF No. 13, at 25 n.14 (Nov. 1, 2001).)  In response, Plaintiffs disputed the applicability of the tender-back rule and further argued that a complete tender-back that returned the parties to status quo ante was not possible because of the consideration conundrum.  (See Pls.' Opp'n to Defs.' Mot. to Dismiss Am. Compl., ECF No. 23, at 50–51 (Dec. 18, 2001).)  Judge Fullam denied the motion to dismiss without prejudice to the filing of a subsequent motion for summary judgment, but offered no explanation of his ruling, thereby allowing Plaintiffs to plausibly infer that tender-back was not required at that time.  (Order, ECF No. 48 (Feb. 28, 2002).)  Subsequently, in its 2003 motion for summary judgment, Allstate again argued that the Release had been ratified by

---

[7]  This case has been proceeding for almost fifteen years, almost nine of which were before Judge Fullam and the Third Circuit, and almost six of which were before Judge Buckwalter.  In addition, the case has over 800 docket entries, many of which are not readily accessible on the electronic docketing system in light of their age.  In ruling on the Motion to Dismiss, the Court could not be expected to comb through briefs filed years before in order to sua sponte identify arguments that Plaintiffs may or may not have previously raised.

Plaintiffs' failure to tender back the consideration they received.  (Mem. Supp. Defs.' Mot.

Summ. J. as to Released Claims, ECF No. 113, at 24–25 (Aug. 1, 2003).)  Plaintiffs repeated

their argument that compliance with the tender-back rule was impossible due to the nature of the

consideration most plaintiffs received, and offered tender-back as an offset to judgment.  (Pls.'

Opp'n Defs.' Mot. Summ. J. as to Released Claims, ECF No. 121, at 70–71 (Sept. 5, 2003).)  On

March 30, 2004, Judge Fullam issued a Memorandum and Order indicating, in part, that the

Releases were voidable at the option of the Release-signer, for violation of § 626 of the Older

Workers Benefit Protection Act.[8]  The Memorandum stated that the Court would "certify a class

under 23(b)(2) with respect to the voidable releases, so that any former employee-agent who

signed such a release may, by notifying Allstate in writing within 90 days, effectively rescind the

release (including, of course, repayment of all sums received in exchange for the release)."

(Mem. & Order, ECF No. 135, at 9 (Mar. 30, 2004).)  The Memorandum did not address the

substance of any of Plaintiffs' claims regarding tender-back and its "impossibility."

On April 15, 2004, Plaintiffs filed a motion for reconsideration of the repayment

requirement, again arguing that they could not return the alleged consideration given in exchange

for the Release, and thus could not restore Allstate to status quo ante.  Alternatively, Plaintiffs

requested, in the event their motion was denied, that the Court provide guidance on how to

inform potential class members what benefits should be tendered back in order to rescind the

Release.  Specifically, Plaintiffs asserted as follows:

> The Court directed plaintiffs' counsel to submit a proposed form of notice informing
> each class member of his or her right to notify Allstate "in writing, of his or her wish

---

[8]  The Memorandum also dismissed Plaintiffs' ADEA and ERISA claims, but left intact
the breach of contract claims.

> to rescind the release, and, within 30 days thereafter, tendering to Allstate Insurance Company repayment of any and all benefits received by the signer in exchange for signing the release." (Declaratory Judgment ¶ 2.) Plaintiffs believe that any such notice must as precisely and accurately as possible inform prospective class members as to what benefits, if any, they would have to repay in order to permit them to make an informed decision about rescinding the Release. Until the Court clarifies what "benefits," if any, must be repaid to Allstate, plaintiffs may not be able to prepare a notice satisfactory to the Court because, even under common law principles, they believe there is nothing to tender back.

(Pls.' Mem. Supp. Mot. for Reconsideration, ECF No. 136, at 7 (Apr. 15, 2004).) Plaintiffs thus expressly raised the consideration conundrum and asked for guidance on what must be tendered back in order to rescind the Release.

That request somehow went unanswered for an extended period of time, during which Allstate sought summary judgment on the remaining claims. On January 16, 2007, the Court denied the motion for reconsideration without explanation. (Order, ECF No. 169 (Jan. 16, 2007).) On June 20, 2007, the Court granted summary judgment. (Mem. & Order, ECF No. 183 (June 20, 2007).) The Court also held that the March 3, 2004 Order declaring the releases voidable was incorrect and should be vacated. Id. At that juncture, it was not unreasonable for the Plaintiffs to interpret the Order as vacating any requirement of tender-back. Plaintiffs then re-raised this issue on appeal, but the Third Circuit stated that, "[a]fter the District Court issued its declaratory judgment, the plaintiffs filed a motion for reconsideration, arguing that the tender-back requirement was inappropriate. They raise this argument on appeal, but we need not address that issue here." Romero v. Allstate Ins. Co., 344 F. App'x 785, 792 n.10 (3d Cir. 2009).

Plaintiffs' prior failure to explain this history would normally be grounds for denying their Motions for Reconsideration, but the Court should not disregard the clear mistake in the previous ruling. The record shows that when faced with a court order in 2004 requiring them to

13

tender back consideration, Plaintiffs sought guidance on how to do so in order to satisfy their legal obligations.  The subsequent procedural twists in this case thwarted their efforts, leaving them unable to tender back consideration and avoid ratification of the Release.

This conclusion creates a new dilemma:  how to handle the tender-back issue going forward, particularly since eight Plaintiffs have already voided their Releases following a jury trial.  Rescission of a contract by tender-back generally requires that the parties be restored to the status quo ante, *i.e.*, their positions existing when the contract was made.  See, e.g., Putnam Constr. & Realty Co., Inc. v. Byrd, 632 So.2d 961, 967 (Ala. 1992); Jennings v. Lee, 461 P.2d 161, 166 (Ariz. 1969); EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc., 900 P.2d 113, 118 (Colo. 1995); Hegarty v. Am. Commwealths Power Corp., 163 A. 616, 619 (Del. Ch. 1932); 2010-1 SFG Venture LLC v. Lee Bank & Trust Co., 775 S.E.2d 243, 252 (Ga. App. 2015); Int'l Ins. Co. v. Sargent & Lundy, 609 N.E.2d 842, 852 (Ill. App. Ct. 1993); Ledbetter v. Webb, 711 P.2d 874, 877–78 (N.M. 1985); Ellie, Inc. v. Micchichi, 594 S.E.2d 485, 494 (S.C. Ct. App. 2004); Sabbagh v. Prof'l & Bus. Men's Life Ins. Co., 116 N.W.2d 513, 520 (S.D. 1962).  This restoration of status quo ante is the foundation of Allstate's tender-back argument; it contends that even if Plaintiffs had offered to tender back some consideration, "it *does not matter* because a partial tender is inadequate as a matter of law to avoid ratification."  (Defs.' Resp. Opp'n Mot. for Reconsideration 13 (emphasis added).)

The Court cannot disregard the impracticability, if not impossibility, of restoring the parties to the status quo ante.  Depending on which Program option a Plaintiff took, he or she received consideration in one or more of the following forms: enhanced severance payments, conversion bonuses, an economic interest in a book of business which could eventually be sold,

14

an opportunity to convert to an R3001 contract and forgiveness of OEA advances.  For the large number of Plaintiffs who converted to independent contractors and spent additional years working for Allstate in that capacity, it would be nearly impossible for them to return that consideration.  As for those Plaintiffs who accepted the sale option and sold their books of business to an approved third-party buyer, the agreements of sale cannot be undone so that their interest in their books of business is ultimately returned to Allstate.  Finally, for those Plaintiffs who took the enhanced severance, they cannot erase the years of being subject to the restrictive covenants in the Agent Transition Severance Plan in connection with that severance payment.  While some of the monetary aspects of the consideration could have been tendered back, Allstate has made it abundantly clear that it will accept nothing less than full return to the status quo ante.

Where tender-back is impractical or impossible, the various states' laws generally recognize an exception to the rule that tender-back must be made prior to or at the outset of litigation.  See, e.g., Jennings, 461 P.2d at 166 ("Patently, rescission appears harsh in the case at bar inasmuch as the defendant cannot possibly be returned to the position occupied by him prior to the agreement in question.") (quotations omitted); Braman Dodge, Inc. v. Smith, 515 So. 2d 1053, 1054 (Fl. Dist. Ct. App. 1987) ("Where restoration to the status quo is impossible, however, a court may still grant rescission, provided the equities between the parties can be balanced."); 2010-1 SFG Venture LLC, 775 S.E.2d at 252 (same); Int'l Ins. Co., 609 N.E.2d at 853 (same); Burke v. Grand Mobile Home Sales, Inc., 149 N.W.2d 236, 239 (Mich. Ct. App. 1967) (same); Register v. Roberson Constr. Co., Inc., 741 P.2d 1364, 1367 (N.M. 1987) (same).

Given the parties' divergent positions on what must be tendered back for Plaintiffs to continue challenging the Release, not to mention the torturous and convoluted history of this

15

litigation, the Court should determine now the form of tender-back.  Allstate wants nothing less than the full amount of consideration paid for the Release, while Plaintiffs contend that return of the full consideration—as opposed to just the concrete monetary aspects—is impossible.  The Court concludes that Plaintiffs' current offer of tender-back is sufficient[9] to avoid ratification.  Tender-back will operate as a set-off to any monetary damages that Plaintiffs may receive.  This ruling applies not only to the eight Plaintiffs whose Releases have already been invalidated, but also to the remaining Plaintiffs who have not yet had the opportunity to individually challenge the validity of their Releases.[10]  In turn, all state law claims dismissed under the ratification and tender-back doctrines are reinstated.[11]

### D.      Unaddressed Claims in Allstate's Original Motion to Dismiss

In its original Motion to Dismiss, Allstate raised several other substantive challenges to Plaintiffs' state law claims.  As those state law claims were dismissed on the tender-back and ratification doctrines, the Court did not address those arguments at the time.  Having now reinstated Plaintiffs' state law claims, the Court will consider Allstate's remaining challenges.

---

[9]  Plaintiffs need not file a fourth Amended Complaint simply to place their offer of tender-back into the pleadings.

[10]  The Court previously dismissed Plaintiffs' state law claims, including those of the few Plaintiffs who did not sign the Release.  Having not signed the Release and accepted any consideration, those Plaintiffs have nothing to tender back.  Accordingly, dismissal of the state law claims of those non-signing Plaintiffs was erroneous.  Should the non-signing Plaintiffs obtain a final monetary judgment on their state law claims, that judgment will not be subject to any set-off to satisfy the tender-back obligations.

[11]  Having granted Plaintiffs' Motions for Reconsideration, the Court need not address Plaintiffs' Motions for Certification of Order for Immediate Appeal.

1.    **Whether Plaintiffs' Breach-of-Contract Claims Fail Because Plaintiffs Were At-Will Employees**

Allstate first contends that under all relevant states' laws, Plaintiffs' breach of contract claims must fail because the Plaintiffs were at-will employees.  Allstate cites the plain language of the R830 and R1500 agreements, as well as to cases from within and outside the Third Circuit holding that similar contracts are terminable at will.  Plaintiffs respond that (1) the law-of-the-case doctrine bars reconsideration of the legal sufficiency of Plaintiffs' breach of contract claims; (2) contrary to Allstate's assertion, the Third Circuit never explicitly held that the R830 and R1500 contracts were terminable at-will; and (3) the breach of contract claims cannot be disposed of on a motion to dismiss.

a.    **The Law of the Case Doctrine**

Plaintiffs assert that Allstate previously argued—both in support of its 2001 motion to dismiss, and again before the Third Circuit in 2008—that the terms of the R830 and R1500 contracts allowed Allstate to terminate the employee agents at will.  Although the Third Circuit did not expressly address the argument, Plaintiffs claim that it was rejected by "implication," thus barring that issue from being re-argued at this juncture.

"The 'law of the case' doctrine reflects courts' general reluctance to reconsider matters soundly decided."  Falor v. G & S Billboard, No. Civ.A.04-2373, 2008 WL 5190860, at *2 (D.N.J. Dec. 10, 2008).  "The doctrine is designed to protect traditional ideals such as finality, judicial economy and jurisprudential integrity."  In re City of Phila. Litig., 158 F.3d 711, 717–18 (3d Cir. 1998).  It provides that "when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the litigation."  In the Matter of Resyn Corp., 945 F.2d 1279, 1281 (3d Cir. 1991) (quotations omitted).  In other words, "once an issue

17

has been decided, parties may not relitigate that issue in the same case." Waldorf v. Shuta, 142

F.3d 601, 616 n.4 (3d Cir. 1998).

A trial court, however, "may consider, as a matter of first impression, those issues not

expressly or implicitly disposed of by the appellate decision." Bankers Trust Co. v. Bethlehem

Steel Corp., 761 F.2d 943, 950 (3d Cir. 1985).  Thus, the trial court is "free to make any order or

direction in further progress of the case, not inconsistent with the decision of the appellate court,

as to any question not settled by the decision." Id.; see also Resyn Corp., 945 F.2d at 1282

(noting that issues raised but not reached on a prior appeal are not within the law of the case

doctrine).  Moreover, it is abundantly clear that "[t]he doctrine does not apply to dicta." United

Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa., 316 F.3d 392, 397 n.4 (3d Cir.), reh'g

denied, 324 F.3d 133 (3d Cir. 2003).  "Gratuitous statements in an opinion that do not implicate

the adjudicative facts of the case's specific holding do not have the bite of precedent.  They bind

neither coordinate nor inferior courts in the judicial hierarchy.  They are classic *obiter dicta*:

'statement[s] of law in the opinion which could not logically be a major premise of the selected

facts of the decision.'" U.S. v. Warren, 338 F.3d 258, 265 (3d Cir. 2003) (quotations omitted).

The law of the case is inapplicable here.  First, as to the Third Circuit's decision in 2008,

that opinion did not include any implied rejection of Allstate's argument.  The entire case,

including the state law claims of breach of contract, was originally dismissed on summary

judgment in a cursory and ambiguous order by Judge Fullam.  Allstate raised the same arguments

regarding the breach of contract claims on appeal to the Third Circuit in 2008.  Plaintiffs now

contend that although the Third Circuit did not expressly address these arguments, it rejected

them "by implication" because "if Plaintiffs' contract claims were legally insufficient on the face

18

of the Complaint, the court 'could not have reversed the judgment granted' in Defendants' favor

on those particular claims, as the court did." (Pls.' Resp. Opp. Mot. to Dismiss 18–19

(quotations omitted).) The Court of Appeals, however, explicitly deferred ruling on the merits of

any of the substantive claims as follows:

> We believe the District Court should reexamine the validity of the release, after
> allowing further discovery into the facts surrounding the signing of the releases. The
> plaintiffs had a relatively short period of class discovery, and approximately half of
> the documents Allstate produced were documents from the <u>Isbell</u> litigation. While
> <u>Isbell</u> is certainly relevant to the plaintiffs' cases here, the plaintiffs are entitled to
> discovery that is responsive to their requests related to the specific release-related
> issues the plaintiffs raised with the District Court in their response to its March 21,
> 2007, Order: that the releases were part of an illegal scheme; that they were not
> signed knowingly or voluntarily; and that they were unconscionable.
>
> If, after discovery and briefing on these issues, the District Court determines that the
> releases are valid, then the claims in <u>Romero I</u>, Count II of <u>Romero II</u>, and <u>EEOC</u> are
> barred. If, however, the District Court determines that the releases are not valid, the
> District Court needs to ***address all of the underlying claims*** and issues that it did not
> decide in its June 20, 2007, Order, some of which we referred to above, ***namely, the
> common law claims of breach of contract and breach of fiduciary duty*** and all the
> claims in <u>Romero II</u>. We are confident that on remand the parties can spell these out
> for the District Court, as they have done for us on appeal, including the plaintiffs'
> claim that discovery as to these issues and the release should be permitted.

<u>Romero v. Allstate Ins. Co.</u>, 344 F. App'x 785, 793–94 (3d Cir. 2009) (emphasis added). The

Third Circuit did not decide the validity of the breach of contract claims to which the law-of-the-

case doctrine would apply.

The same holds true with Judge Buckwalter's ruling in 2014. In deciding the parties'

cross-motions for summary judgment on the validity of the Release, the Court stated that "the

R830 and R1500, by their express terms, were at-will contracts." <u>Romero v. Allstate Ins. Co.</u>, 1

F. Supp. 3d 319, 397 (E.D. Pa. 2014). Plaintiffs subsequently moved for clarification of the

Court's ruling, requesting that that statement be deemed to not foreclose further consideration of

19

the breach of contract issue at the merits stage.  The Court granted that motion, noting that the statement was nothing more than dicta for several reasons: (1) the substantive breach of contract claim was not before the Court; (2) the statement that the R830/R1500 contracts were at-will agreements was not necessary to the Court's conclusion on the questions before it; (3) the Court expressly recognized that a breach of contract claim still exists; and (4) the Court's ruling was premature because there had been no discovery on the matter or choice of law analysis.  Id. at 431–32.  The Court's ruling that the Memorandum did not "operate to adjudicate any aspect of Plaintiffs' underlying breach of contract claims on the merits," id. at 432, indicated that a motion to dismiss, such as the one brought by Allstate in 2015, was not improper.

The law of the case doctrine is therefore inapplicable on this issue and the Court may consider Allstate's current argument that the breach of contract claims fail as a matter of law.

### b.   The Third Circuit's Characterization of the R1500 and R830 Contracts

The parties next dispute the applicability of the Third Circuit's characterization of the R1500 and R830 contracts in its opinion in EEOC v. Allstate, 778 F.3d 444 (3d Cir. 2015).  The Court finds that opinion not controlling on the at-will issue.

That case involved an appeal from this Court's rejection of the EEOC's theories that: (a) Allstate's requirement that agents choosing the Conversion Option waive their claims was facially retaliatory and (b) Allstate specifically retaliated against agents who spurned the Release. In the course of affirming the District Court's decision, the Third Circuit used the term "at-will" on three separate occasions.  First, it stated that "[i]n 1999, Allstate decided to reorganize its business and terminate the at-will employment contracts of some 6,200 sales agents, offering them the opportunity to work as independent contractors."  Id. at 446.  In reciting the facts of the

case, the Third Circuit stated that "[u]nder both the R830 and R1500 contracts, Allstate agents were at-will employees and were not entitled to any severance pay in the event that they were 'terminated under the terms of any group reorganization/restructuring benefit plan or program[.]'" Id. (quoting Romero v. Allstate Ins. Co., 1 F. Supp. 3d 319, 397–98 (E.D. Pa. 2014)).  Finally, in discussing whether Allstate offered sufficient consideration for the Release, the Third Circuit made the singular remark that "[t]he agents were entitled to neither continued employment (because they were at-will employees under the R830 and R1500 contracts) nor severance pay (because they were terminated pursuant to a group reorganization program)." Id. at 450.

These statements are nothing more than dicta for purposes of the present motions. "[D]ictum [is] 'a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.'" In re McDonald, 205 F.3d 606, 612 (3d Cir. 2000) (quoting Sarnoff v. Am. Home Prods. Corp., 798 F.2d 1075, 1084 (7th Cir. 1986)).  Dicta in a decision of the court of appeals is not binding on lower courts or on a subsequent panel of the court of appeals.  See, e.g., Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 355 (3d Cir. 2002); U.S. v. Outram, 445 F. App'x 509, 514 n.6 (3d Cir. 2011).  As one court has explained:

> Though stare decisis is fundamental to our jurisprudence, and the governing power of precedent is absolute, not every rumination of a higher court is to be awarded equal weight by a lower court.  The doctrine of stare decisis focuses on the decision of the court and the rule the decision adopts . . . .  "[A] case is important only for what it decides: for 'the what,' not for 'the why,' and not for 'the how.'  It is important only for the decision not for the detailed legal consequence following a detailed set of facts." . . . "[S]tare decisis means what the court did, not what it said."

Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, 186 F. Supp. 2d 567, 573 (E.D. Pa. 2002) (quotations and citations omitted).  The Third Circuit has clarified that "[l]itigants should not totally disregard dicta, of course, because it indicates the direction or framework of an opinion writer's thought, and thereby serves as a tool for predicting what the court might do when the issue is properly presented."  Chowdury v. Reading Hosp. & Med. Ctr., 677 F.2d 317, 324 (3d Cir. 1982).  Nonetheless, "dictum, unlike holding, does not have the strength of a decision 'forged from actual experience by the hammer and anvil of litigation,' a fact to be considered when assessing its utility in the context of an actual controversy.  Similarly, appellate courts must be cautious to avoid promulgating unnecessarily broad rules of law."  Id. (quotations omitted).

Here, the Third Circuit's comments about the R830 and R1500 contracts are dicta for two reasons.  First, the Third Circuit never actually reviewed the language of the contracts before concluding they were at-will.  The Circuit Court simply cited to the District Court's statement in the Romero v. Allstate opinion that the contracts were at-will.  See EEOC, 778 F.3d at 446 (citing Romero, 1 F. Supp. 3d at 336, 397–98).  The District Court, however, subsequently clarified that its own statement about the at-will nature of the contracts was dicta that was not meant to foreclose further litigation on the breach of contract claims.  The Third Circuit never referenced that clarifying statement.

Second, the issue before the Third Circuit was whether the requirement of the Release constituted a form of retaliation.  The EEOC argued that the Conversion Option of the Program (which allowed terminated employee-agents to convert to independent contractors in exchange for signing the Release) offered insufficient consideration.  Again, without reviewing the specific contractual language, the Third Circuit held that because the employees could be terminated at

any time under their at-will contracts, the Conversion Option provided sufficient consideration for the Release.  In doing so, however, the court relied not only on the fact that this Option allowed the employee agents to convert to independent contractor status, but also on the fact that the Option came with a host of other forms of consideration, including guaranteed conversion, bonus, excused repayment of outstanding office expense advances, and the right to a transferable interest in the business after two years.  The at-will reference could have been deleted from the opinion without impairing the holding's foundation.

The Third Circuit's comments about the at-will nature of the contracts were peripheral to the court's holding and do not require this Court to conclude that Plaintiff's breach of contract claims must be dismissed.

**c.   Whether the Breach of Contract Claims Must Be Dismissed on Their Merits**

Finally, the parties dispute whether the employment contracts at issue are, on their face, terminable at-will.  Under Allstate's theory, the obvious at-will nature of these contracts requires that any breach of contract claim based on Plaintiffs' termination from Allstate's employment must be dismissed.

An employment contract that does not specify the term of employment is terminable at-will, and the employer may terminate the employee at any time without incurring liability.  See, e.g., Foley v. Interactive Data Corp., 765 P.2d 373, 385 (Cal. 1988) (holding that there is a presumption of at-will employment if the parties have made no express oral or written agreement specifying the length of employment or the grounds for termination); Jenkins v. Boise Cascade Corp., 108 P.3d 380, 387 (Idaho 2005) ("Unless an employee is hired pursuant to a contract that specifies the duration of the employment or limits the reasons for which an employee may be

23

discharged, the employment is at the will of either party and the employer may terminate the relationship at any time for any reason without incurring liability."); Ross v. May Co., 880 N.E.2d 210, 213 (Ill. App. Ct. 2007) (same); Whitley v. Rite Aid of Kentucky, Inc., No. 2014-0167, 2015 WL 1303639, at *2 (Ky. Ct. App. Mar. 20, 2015) (same); Vancheri v. GNLV Corp., 777 P.2d 366, 369 (Nev. 1989); Sabetay v. Sterling Drug, Inc., 497 N.Y.S.2d 655, 656, 114 A.D.2d 6, 8 (N.Y. App. Div. 1986) (same); Ford v. Trendwest Resorts, Inc., 43 P.3d 1223, 1226 (Wash. 2002) (same).

The two employment contracts at issue in this case—the R830 and the R1500—were fully integrated contracts that stated as follows:

**R830:** This agreement will automatically terminate upon your death. Either you or Allstate have the right to terminate this agreement upon mailing to the other, at his or its last known address, written notice of termination. After such termination you agree not to act or represent yourself in any way as our agent. The Company will not terminate your employment because of unsatisfactory work unless you have been notified that your work is unsatisfactory and that your job is in jeopardy and unless you have been given a reasonable opportunity to bring your performance up to satisfactory standards. . . . In no event shall an employee be released for any reason without the following review and approval procedure having been adhered to . . . [defining procedure for termination]

**R1500:** Your employment and this Agreement will automatically terminate upon your death, retirement, loss or relinquishment of your insurance agent license, or failure to return to work upon expiration of a leave of absence. In addition, your employment and this Agreement may be terminated at will by either party, subject only to such limitations and restrictions as may be imposed by law, and in accordance with Company rules and procedures. Termination shall be effective upon giving notice of termination orally or in writing, delivered personally or mailed to the last known address of the other. Upon termination, you agree not to act or represent yourself in any way as an employee, agent or representative of the Company, except as otherwise agreed to in writing by you and the Company.

Allstate now argues that (1) all courts which have considered the R1500 contract and most of the courts which have considered the R830 contract have deemed them terminable at-will; and (2) the plain language of these contracts mandates that this Court do the same.

While many courts have found that the contracts at issue here are at-will, almost all of decisions were at summary judgment after a full consideration of the factual background.  See Parrish v. Allstate Ins. Co., 46 F.3d 1143 (9th Cir. 1995) (affirming grant of summary judgment); Hudson v. Allstate Ins. Co., 93 F.3d 296 (7th Cir. 1996) (affirming grant of summary judgment); Szot v. Allstate Ins. Co., 161 F. Supp. 2d 596 (D. Md. 2001) (summary judgment motion); Almada v. Allstate Ins. Co., 153 F. Supp. 2d 1108 (D. Ariz. 2000) (summary judgment motion), aff'd, 285 F.3d 798 (9th Cir. 2002); Olsen v. Allstate Ins. Co., 759 F. Supp. 782 (M.D. Fla. 1991) (summary judgment motion); Stack v. Allstate Ins. Co., 606 F. Supp. 472 (S.D. Ind. 1985) (summary judgment motion).  Here, Plaintiffs have had no opportunity to take discovery on their substantive claims, including the breach of contract claim, let alone fully brief the issue for the Court.

Second, other courts have decided this issue differently.  For example, in Morales v. Allstate Ins. Co., No. Civ.A.95-2308, 1995 WL 616654 (N.D. Cal. Oct. 13, 1995), the plaintiff was party to a contract identical to the R830.  Id. at *3.  The court found that the language of that contract "indicates that Allstate may not terminate an employee for any reason, at any time. There must be unsatisfactory work, notice and opportunity to cure.  Hence, good cause is required to terminate an employee."  Id. at *3.  Under the contract, the plaintiff was "entitled to the highest level of review" prior to termination, and the procedure specified in the contract was more than a rubber stamp and must protect an employee from wrongful discharge.  Id. at *4.

Similarly, in <u>Linker v. Allstate Ins. Co.</u>, 794 N.E.2d 945 (Ill. App. Ct. 2003), the court construed

the R830 contract and found that "[i]f the contract was truly at will, all defendant would have to

say is, 'There's the door, you're gone.'  However, the contract does not allow this.  Defendant

has provided for a review procedure; in fact, it appears that there may be two different forms of

review procedures.  In any event, based on the fact that employees are given some sort of review

for termination for *'any reason,'* it must therefore be concluded that the contract is not an at-will

contract."  <u>Id.</u> at 956–57  (emphasis in original).

Third, even where courts have construed the R830 and R1500 contracts to be at-will,

many of those courts recognized that the contracts contained other provisions, including

limitations on the parties' right to terminate the contract at will, that required further factual

inquiry.  <u>See</u> <u>Hudson</u>, 93 F.3d at 300 ("[T]he contract gives extra protection for employees who

are charged with unsatisfactory work, [so] it would be possible in a different case to have a

genuine issue of fact relating to the ground of dismissal, where the employee argued it was

actually for unsatisfactory work and the company claimed it was for another reason."); <u>Szot</u>, 161

F. Supp. 2d at 603 (holding that the contracts were subject only to such limitations and

restrictions as may be imposed by law, and in accordance with Company rules and procedures,

but finding, on the facts of the case, that there was no indication that any of those limitations

applied); <u>Almada</u>, 153 F. Supp. 2d at 1111 ("Policy manuals, oral representations, and employee

handbooks may transform an at-will employment contract by adding implied-in-fact contract

terms. . . . Determining whether an employment contract is transformed by an employee

handbook or policy manual from an at-will arrangement is generally a question of fact."); <u>Stack</u>,

606 F. Supp. at 477 (stating that because "Allstate's right to discharge Stack was restricted by the

26

prior notice and opportunity to improve performance clause," genuine issues of material fact remained on breach of contract claim).

Finally, the Court cannot conclude at this juncture that the contracts here did not impose some type of limitation on Allstate's ability to terminate the Plaintiffs.  Allstate contends that: (1) the job-in-jeopardy notices and opportunity to cure were only in the R830 contract; (2) the notices and opportunity to cure provisions were only applicable to agents terminated for unsatisfactory work, which did not apply to the agents here; and (3) any review and approval procedures required by the contracts were met or rendered superfluous by the approval of the terminations by individuals at the highest levels at Allstate.

Under many states' laws, "[p]olicy manuals, oral representations, and employee handbooks may transform an at-will employment contract by adding implied-in-fact contract terms."[12]  See, e.g., Almada, 153 F. Supp. 2d at 1111; Pine River State Bank v. Mettile, 333 N.W.2d 622, 629–30 (Minn. 1983) (holding that where employee was at-will, but employee handbook contained procedural restraints on termination of employees, breach of contract claim presented a factual issue for jury); Morris v. Lutheran Med. Ctr., 340 N.W.2d 388, 391 (Neb. 1983) ("[W]here an employment contract is for an indefinite duration, such indefiniteness by itself does not preclude job security provisions in an employee handbook from becoming part of the employment contract."); Sowards v. Norbar, Inc., 605 N.E.2d 468, 471 (Ohio Ct. App. 1992) ("As an exception to the general [at-will] rule, employee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence

---

[12]  Plaintiffs invite the Court to engage in a choice of law analysis without a full briefing of this issue.  The Court declines to do so.

of employment contracts."); <u>Johnson v. Morton Thiokol, Inc.</u>, 818 P.2d 997, 1000 (Utah 1991)

("[T]he terms of an employee manual can operate as implied-in-fact contract terms rebutting the

presumption of at-will employment and fixing the terms of the employee relationship."); <u>Worley</u>

<u>v. Wyoming Bottling Co., Inc.</u>, 1 P.3d 615, 620 (Wyo. 2000) ("Although employment for an

indefinite period of time is presumed to be at will, that presumption can be overcome by either an

implied-in-fact contract or an express contract.").

In the present case, the Third Amended Complaint alleges, in pertinent part, as follows:

553. The employment relationship between Allstate and the R830 subclass members is governed by Allstate's standardized R830 contracts, all or almost all of which were entered into on or before September 30, 1984.

554. The R830 subclass members fully performed all of their obligations under their R830 contracts with Allstate.

555. Under the express and implied terms of the R830 contract, Allstate could not terminate the R830 subclass members except for "good cause" and in accordance with the procedures governing termination that are set forth in the R830 contract.

556. In order to minimize its costs and maximize its profits, Allstate compelled, encouraged and otherwise induced the R830 subclass members to invest substantial personal resources in Allstate's insurance business since at least October 1, 1984, and continuing for the duration of their employment relationship.

557. In accepting the financial and other benefits of such investments, Allstate obligated itself, as a matter of law, to continue its employment relationship with the R830 subclass members for at least a reasonable period of time for them to make good on their continuing investment in light of all the circumstances. These circumstances include, but are not limited to, the amount of the investments the R830 subclass members made in Allstate's insurance business and the duration of the period over which such investments were made.

558. In implementing the Mass Termination Program, *Allstate terminated the employment status of each of the R830 subclass members without "good cause," without regard to the procedural safeguards set forth in the R830 contract, and without affording them a reasonable period of time to make good on their investments.* Such termination was in material breach of Allstate's express and implied obligations under the R830 agreement.

28

. . .

561. The employment relationship between Allstate and the R1500 subclass members is governed by Allstate's standardized R1500 contracts, which were entered into between the approximate dates of October 1, 1984 through September 30, 1990.

562. The R1500 subclass members fully performed all of their obligations under their R1500 contracts with Allstate.

563. Under the express and implied terms of the R1500 contract, Allstate could not terminate the R1500 subclass members except for "good cause" and in accordance with the procedures governing termination that are expressly or impliedly incorporated into the R1500 contract.

564. In order to minimize its costs and maximize its profits, Allstate compelled, encouraged and otherwise induced the R1500 subclass members to invest substantial personal resources in Allstate's insurance business throughout the duration of the existence of their employment relationship.

565. In accepting the financial and other benefits of such investments, Allstate obligated itself, as a matter of law, to continue its employment relationship with the R1500 subclass members for at least a reasonable period of time for them to make good on their continuing investments in light of all the circumstances. These circumstances include, but are not limited to, the amount of the investments made by the R1500 subclass members and the duration of the period over which such investments were made.

566. In implementing the Mass Termination Program, *Allstate terminated the employment status of each of the R1500 subclass members without "good cause," without regard to the procedural safeguards governing termination that are expressly or impliedly incorporated into the R1500 contract, and without affording them a reasonable period of time to make good on their continuing investments.* Such termination was in material breach of Allstate's express and implied obligations under the R1500 contract.

(Third Am. Compl. ¶¶ 553–58, 561–66 (emphasis added).)  In other words, the Third Amended

Complaint alleges an express employment contract, as well as "procedures governing termination

that are expressly or impliedly incorporated" into the two contracts.   Moreover, Plaintiffs allege

that their investments of personal resources into Allstate's insurance business constitutes

additional consideration which supports those added procedures.  Whether or not Plaintiffs have

rebutted the presumption of an at-will contract is a question of fact not appropriate for resolution on a motion to dismiss.

Plaintiffs have not yet had the opportunity to conduct any discovery on these issues due to this litigation's focus on the validity of the Release.  Dismissing these claims at this stage is unwarranted and Allstate's motion is denied.

**2.      Whether the Arizona Statute of Limitations Bars the Arizona Plaintiffs' Breach of Contract Claims**

Allstate contends that the breach of contract claims of the new Arizona Plaintiffs should be dismissed because they are barred by that state's one-year statute of limitations.

Four of the newly-added Plaintiffs in this case allege that they are residents of Arizona.[13] Federal courts exercising supplemental jurisdiction over state law claims must look to the forum state's choice-of-law principles to determine the applicable statute of limitations for such claims. Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008).  Pursuant to Pennsylvania's borrowing statute, "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim."  42 Pa. Const. Stat. § 5521(b) (1978).  Under Arizona law, breach of oral or written employment contract claims must be filed within one year of the alleged breach.  Ariz Rev. Stat. Ann. § 12-541 (1996).  As this period is shorter than the four-year limitations period under Pennsylvania law, 42 Pa.C.S. § 5525, Arizona law would govern the breach of contract claims for the four new Arizona Plaintiffs.

According to the Third Amended Complaint, Allstate breached Plaintiffs' R830 and

_____

[13]  These individuals are Dwight Bondy, John Heasley, Rick Jahns, and Barbara Oxner. (Third Am. Compl. 4, 15, 17, 24.)

R1500 employment contracts when it notified them about the Preparing for the Future Program and terminated the contracts on November 10, 1999.  (Third Am. Compl. ¶¶ 558, 566.)  Allstate argues that in the ensuing time period, the statute of limitations tolled, if at all, on two separate occasions: (1) from the filing of the initial Romero Complaint on August 1, 2001, to the denial of class certification on October 6, 2014; and (2) from December 22, 2014 to March 2, 2015, when the Court explicitly tolled the statute of limitations.  Taking out these two periods of tolling, a total of one year and 342 days elapsed between the notification of termination on November 10, 1999, and the filing of the Abell Complaint on February 27, 2015, which included the four Arizona Plaintiffs.  As such, according to Allstate, the Arizona plaintiffs' breach of contract claims are time-barred.

Plaintiffs respond that Allstate issued its notification of termination on November 10, 1999 from its headquarters in Illinois and that the breach of contract claims accrued in Illinois, which has a ten-year statute of limitations.  735 Ill. Compl. Stat. ILCS 5/13-206 (2007).  Under Pennsylvania law, however, a cause of action arises and the statute of limitations begins to run "as determined by the final significant event necessary to make the claim suable."  Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1967) (citations omitted).  The Pennsylvania Supreme Court has explained that "a right of action accrues only when injury is sustained by the plaintiff—not when the causes are set in motion which ultimately produce injury as a consequence."  Foley v. Pittsburgh–Des Moines Co., 68 A.2d 517, 535 (Pa. 1949); see also Hamid v. Stock & Grimes, LLP, No. Civ.A.11-2349, 2011 WL 3803792, at *2 (E.D. Pa. Aug. 26, 2011) (holding that breach of contract claim accrued in Delaware when the plaintiff did not receive the payment due on August 12, 2006 at its post office

in Delaware, not when the defendant failed to mail the payment from Pennsylvania).  In this case,

the final significant event arose when each Plaintiff received his or her notification of

termination, not when the termination was mailed.  Prior to that time, Plaintiffs would not have

known about any alleged breach and would not have sustained any injury.  See Lincoln Gen. Ins.

Co. v. Kingsway Am. Agency, Inc., No. Civ.A.11-1195, 2012 WL 1598120, at *6 (M.D. Pa. May

7, 2012) (holding that final significant event in breach of contract claim was when the plaintiff

learned of the breach).  Illinois law therefore does not apply unless the Plaintiff received his or

her notice in that state.

Alternatively, Plaintiffs argue that Defendants have not demonstrated that any of

Plaintiffs' breach of contract claims accrued in Arizona since the Third Amended Complaint only

lists the current residences of each of the Plaintiffs without revealing where each worked as an

employee-agent or where each received their notices of termination.  Allstate, in turn, asserts that

because the Complaint is deficient insofar as it fails to clarify where each Plaintiff received

notice of the Program, the Court may presume that the Plaintiffs who now reside in Arizona also

operated their agencies in Arizona.

The Court declines to assume facts which may or may not be true.  The absence of these

facts precludes any ruling on this issue in the context of a motion to dismiss.  In lieu of allowing

yet another amendment of the Complaint, the Court will permit Allstate to make this argument

again at summary judgment.

### 3.   Whether the Tennessee Statute of Limitations Bars the Tennessee Plaintiffs' Breach of Fiduciary Duty Claims

Finally, Allstate asserts that the Tennessee statute of limitations bars the breach of

fiduciary duty claims brought by the nine Plaintiffs who reside in Tennessee.[14] Tennessee

requires breach of fiduciary duty claims to be filed within one year of the alleged breach.  (Defs.'

Mem. Supp. Mot. Dismiss. 19 (citing Tenn. Code Ann. § 48-18-601 (2013)).)[15]  Under the

Pennsylvania borrowing statute, this shorter statute of limitations—as opposed to Pennsylvania's

two-year limitations period under 42 Pa.C.S. § 5524(7)—governs.  Relying on the same accrual

and tolling calculations described above, Allstate now asserts that the breach of fiduciary duty

claims were filed well outside the one-year period and are thus time-barred.

     Plaintiffs contend that the Tennessee statute applies only to claims against corporate

"directors and officers," not to corporations like Allstate, and therefore the limitations period for

Plaintiffs' breach of fiduciary duty claims against Allstate would not be one year, but either three

or six years.  (Pls.' Resp. Opp'n Mot. Dismiss 6–7.)  Plaintiffs also re-assert that the Third

Amended Complaint does not clearly indicate where these causes of action accrued because the

states listed for the Plaintiffs only represent their current residences, not where they operated

---

   [14]  Gary Baumgardner, Richard Earl, Larry Gentry, Coni Heidle, Steve Howell, Sandra
Inman, Thomas O'Dell, Dennis Powers, and Woodrow Shelton.  (Third Am. Compl. 3, 11, 13,
15–17, 23, 25, 28.)

   [15]  Any action alleging breach of fiduciary duties by directors or officers, including alleged
violations of the standards established in § 48-18-301, § 48-18-403 or part 7 of this chapter, must
be brought within one (1) year from the date of such breach or violation; provided, that in the
event the alleged breach or violation is not discovered nor reasonably should have been
discovered within the one-year period, the period of limitation shall be one (1) year from the date
such was discovered or reasonably should have been discovered.  In no event shall any such
action be brought more than three (3) years after the date on which the breach or violation
occurred, except where there is fraudulent concealment on the part of the defendant, in which
case the action shall be commenced within one (1) year after the alleged breach or violation is, or
should have been, discovered.

Tenn. Code Ann. § 48-18-601 (2013).

their Allstate agencies.

While these claims may end up being be time-barred against both Allstate and Defendant Liddy,[16] the Court need not resolve the issue at this time.  As noted above, the Third Amended Complaint does not yet disclose the precise location of each Plaintiff's Allstate insurance agency or where the claims for breach of fiduciary duty accrued.  Allstate may seek dismissal of these claims, if appropriate, at summary judgment.

## IV.  CONCLUSION

The Court grants Plaintiffs' Motions for Reconsideration and reverses the dismissal of Plaintiffs' state law claims on the grounds of tender-back/ratification.  In doing so, the Court re-emphasizes that, due to the convoluted history of this case, the parties must timely raise all relevant arguments and identify all pertinent procedural background and facts.  Moreover, the Court finds that Allstate's remaining arguments for dismissal of the state law claims cannot be decided on the comparatively limited standard of review governing motions to dismiss.  Accordingly, the Court will reinstate Plaintiffs' state law claims and deny the remainder of

---

[16]  The three-year statute of limitations, as found in Tenn. Code Ann. § 28-3-105, applies if the suit seeks to recover damages for injuries to the plaintiff's property.  Keller v. Colgems EMI Music, Inc., 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996).  Plaintiffs allege no such injury to property in this case.  The six-year statute of limitations, as found in Tenn. Code Ann. § 28-3-109, applies for breach of contract actions not otherwise provided for in another statute.  Kirby Farms Homeowners Ass'n v. Citicorp, Citibank, N.A., 773 S.W.2d 249, 250 (Tenn. Ct. App. 1989).  The breach of fiduciary duty claim in this case, however, appears to be clearly provided for by Tenn. Code Ann. § 48-18-601, which sets forth a one-year limitations period.  At a minimum, it would cover the breach of fiduciary claims against Defendant Liddy since he was a "director[] or officer[]" within the meaning of that statute.  Moreover, it appears that Tennessee courts would apply Section 48-18-601 to breach of fiduciary duty actions against corporations. See Fite ex. rel. H&M Constr. v. Fite, No. 02A01-9710-00266, 1999 WL 317102, at *7 (Tenn. Ct. App. May 19, 1999) (applying one-year statute of limitations to breach of fiduciary claims against officer and director of corporation, corporation itself, and majority shareholders as an alter ego of the corporation).

Allstate's previously-filed Motion to Dismiss.  An appropriate Order follows.


                                        */s/ Gerald J. Pappert*
                                        GERALD J. PAPPERT, J.